UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BLOOMBERG L.P., :

                Plaintiff, : Case No. 08 CV 9595

                - against - : AMENDED AND
                 SUPPLEMENTAL COMPLAINT
BOARD OF GOVERNORS OF THE : FOR DECLARATORY AND
FEDERAL RESERVE SYSTEM, INJUNCTIVE RELIEF

                Defendant. :
------------------------------------------------------------x

## INTRODUCTION

1. This is an action by a news organization, Bloomberg L.P. ("Bloomberg"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, seeking to vindicate the public's right to obtain government records maintained by the Board of Governors of the Federal Reserve System (the "Fed" or the "Board"), an agency of the United States government, concerning the Fed's lending of public money to private financial institutions and its contribution of financing for the JPMorgan acquisition of Bear Stearns.

2. The government documents that Bloomberg seeks are central to understanding and assessing the government's response to the most cataclysmic financial crisis in America since the Great Depression. The effect of that crisis on the American public has been and will continue to be devastating. Major employers are facing bankruptcy, being acquired, and announcing thousands of layoffs. The resulting anxiety was among the most decisive factors in the 2008 elections.

3. In response to the crisis, the Fed's use of taxpayers' money has entered unprecedented territory. Two examples are the vast expansion of the Fed's lending programs to

private financial institutions and the Fed's contribution of financing to the JPMorgan acquisition of Bear Stearns.

4. As part of the Fed's lending programs, to obtain access to the public money and to safeguard the taxpayers' interests, borrowers are required to post collateral. Despite the manifest public interest in such matters, however, none of the programs themselves refers to any public disclosure of the posted collateral or of the Fed's methods in valuing it. Thus, while the taxpayers are the ultimate counterparty for the collateral, they have not been given any information regarding the kind of collateral received, how it was valued, or by whom.

5. As part of the Bear Stearns acquisition, the Fed took control of a portfolio of assets valued at $30 billion. Those assets were pledged as security for $29 billion in financing for the acquisition. Under this arrangement, JPMorgan absorbs the first $1.15 billion of losses in value of the assets, and the remaining losses belong to the taxpayers. So far, the assets have decreased in value by almost $3 billion.

6. To discharge its obligation as the eyes and ears of the public, Bloomberg submitted two separate FOIA requests seeking access to information relating to these two matters. To date, the Fed has failed to produce the requested documents; it has not even responded to one of the requests, and has denied the other. Consequently, Bloomberg brings this suit to compel the Fed to discharge its obligations under FOIA, so that the public can be informed of how the Fed is safeguarding the public's money.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, in particular, 5 U.S.C. § 552. In addition, this Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B), under which, "the

district court of the United States in the district in which the complainant resides, or has his principal place of business . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant," because, among other things, Plaintiff Bloomberg maintains its principal place of business in this District.

8. Of the two FOIA requests referenced above, Bloomberg never received a response to one (the Loan Request), and Bloomberg's October 14, 2008 appeal of the denial of the other (the Bear Request) was denied by the Fed in a letter dated November 7, 2008. Under FOIA, both requests are ripe for judicial review.

9. Venue is proper in this District pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391 because, among other things, Plaintiff Bloomberg's principal place of business is in this District.

## PARTIES

10. Plaintiff Bloomberg is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business at 731 Lexington Avenue, New York, New York. Bloomberg operates Bloomberg News, a 24-hour global news service with more than 1,800 journalists in 108 bureaus around the world. Bloomberg supplies real-time business, financial, and legal news to more than 200,000 subscribers worldwide. As a wire service, Bloomberg provides news to more than 400 newspapers globally. Bloomberg provides radio and television programming throughout the world through its 750 radio affiliates and its eleven 24-hour news television stations. Bloomberg publishes two monthly magazines and more than 50 books each year. Bloomberg's website receives 3.5 million visits each month. In total,

Bloomberg distributes news, information, and commentary to millions of readers and listeners each day, and has published over one hundred million stories.

11. Defendant Fed is an agency of the United States of America, and has possession and control of the records that Bloomberg seeks. According to the Fed, it is charged with supervising and regulating banking institutions to ensure the safety and soundness of the nation's banking and financial system and to protect the credit rights of consumers, and with providing financial services to depository institutions, the U.S. government, and foreign official institutions, including playing a major role in operating the nation's payments system.

## FACTS CONCERNING FOIA REQUEST FOR LOAN RECORDS

### The Fed's Lending Facilities

12. The Fed uses a number of methods to regulate the banking and financial system in the United States. One method is the lending of money to private financial institutions.

13. As of August 2007, the Fed would lend money to private financial institutions primarily through its discount window. The discount window allowed the Fed to lend money, on an overnight basis, to so-called "depository institutions," which are financial institutions that obtain their funds mainly through deposits from the public. Depository institutions include commercial banks, savings and loan associations, savings banks, and credit unions.

14. Starting in or around August 2007, to improve market functioning, the Fed expanded the lending from the discount window, by extending the loans from overnight to as long as 90 days. In addition, the Fed added three new lending facilities: the Primary Dealer Credit Facility, the Term Securities Lending Facility, and the Term Auction Facility.

15. The changes to the discount window lending, and the three new facilities, were designed to enhance the Fed's ability to lend to depository institutions, and also created the

ability to lend to so-called "primary dealers," which are banks and securities broker-dealers that trade in U.S. government securities with the Federal Reserve Bank of New York. During 2008, the Fed has included on its list of primary dealers Bear, Stearns & Co., Lehman Brothers Inc., Banc of America Securities LLC, Barclays Capital Inc., Goldman, Sachs & Co., HSBC Securities (USA) Inc., J. P. Morgan Securities Inc., Merrill Lynch Government Securities Inc., and Morgan Stanley & Co. Inc.

16. According to the Fed, the discount window for depository institutions and the Primary Dealer Credit Facility for primary dealers are effectively "standing" facilities that provide daily access to funding for eligible institutions. Access to funds through these facilities occurs at the initiative of the borrowing institution, in an amount determined by the borrowing institution's needs and collateral. The Fed charges a fixed interest rate set at a premium to market rates on this kind of facility to discourage institutions from unnecessary use of Fed lending.

17. Also according to the Fed, the Term Auction Facility for depository institutions and the Term Securities Lending Facility for primary dealers constitute a second kind of facility in which a pre-determined amount of longer-term funding is made available at auction on pre-announced dates for settlement on a later date. These facilities are designed to improve overall liquidity conditions in term and secured funding markets, rather than to satisfy the needs of a particular institution on a particular day. The interest rate and the distribution of the awards across institutions in this second kind of facility are determined by an auction.

18. Before these changes to the Fed's lending programs, during the week ending August 8, 2007, the Fed had average outstanding lending through the discount window of around

$1 million. After these changes to the Fed's lending programs, during the week ending October 8, 2008, the Fed had average outstanding lending of over $400 billion.

19. Private institutions that seek to avail themselves of these lending facilities must post collateral to the Fed in exchange for the loans of government money. The amount of the loan corresponds with the value assigned to the collateral.

20. The public has a significant and legitimate interest in the Fed's conduct with respect to these lending facilities because the Fed's assets are public assets. Taxpayers are entitled to understand and assess the decisions by the Fed on the valuation of the collateral it accepts as security for public money being lent to private institutions. The public's interest is particularly pronounced in light of the new expansive powers of the Fed, the new risks that the Fed is taking with public money, and the ongoing financial crisis and its effects on the American economy.

The Loan Request

21. On May 20, 2008, Bloomberg reporter Mark Pittman submitted to the Fed, through the Fed's website at www.federalreserve.gov/generalinfo/foia/EFOIA/EFOIAForm.cfm, an electronic FOIA request (the "Loan Request") seeking certain records (the "Loan Records").

22. The Loan Request stated: "For all securities posted between April 4, 2008 and May 20, 2008 as collateral to the Primary Dealer Credit Facility, the discount window, the Term Securities Lending Facility, and the Term Auction Facility (the 'Relevant Securities'), we request copies of:

> "1. all forms and other documents submitted by the party posting the Relevant Securities as part of the application for the loan;
>
> "2. all receipts and other documents given to the party posting the Relevant Securities as part of the application for the loan;
>
> "3. records sufficient to show the names of the Relevant Securities;

"4. records sufficient to show the dates that the Relevant Securities were accepted and the dates that the Relevant Securities were redeemed;

"5. records sufficient to show the amount of borrowing permitted as compared to the face value, also known as the 'haircut';

"6. records sufficient to describe whether valuations or 'haircuts' for the Relevant Securities changed over time;

"7. records sufficient to show the terms of the loans and the rates that the borrowers must pay;

"8. records sufficient to show the amount that the Federal Reserve has accepted of each of the Relevant Securities;

"9. records sufficient to show which, if any, Relevant Securities have been rejected as collateral and the reasons for the rejections;

"10. all databases and spreadsheets that list or summarize the Relevant Securities; and

"11. records, including contracts with outside entities, that show the employees or entities being used to price the Relevant Securities and to conduct the process the lending."

23. On information and belief, the Fed possesses the Loan Records.

24. The Fed is obligated to release the Loan Records under FOIA unless it can show that the records are exempt from disclosure.

To Date, The Fed Has Failed to Respond to the Loan Request.

25. Under FOIA, the Fed was required to respond to the Loan Request by June 18, 2008, which is 20 business days after the date on which Bloomberg submitted the Loan Request.

26. One day after a response was due, in a letter dated June 19, 2008, the Fed acknowledged that it had received the Loan Request, and invoked its right to extend its response time until July 3, 2008, 10 business days after June 19, 2008.

27. By telephone, on or around July 8, 2008, Alison Thro, Senior Counsel and FOIA Public Liaison of the Fed, informed Bloomberg that the Fed was processing the Loan Request.

28. By telephone, on or around August 15, 2008, two Fed employees, Ms. Thro and Pam Wilson, informed Bloomberg that the Fed expected that it would provide a formal denial of the Loan Request by the end of September 2008.

29. To date, more than five months after submitting the Loan Request, Bloomberg has not received a response.

30. Bloomberg has exhausted its administrative remedies.

31. Bloomberg has a statutory right to the Loan Records.

## FACTS CONCERNING FOIA REQUEST FOR BEAR RECORDS

### The JPMorgan Acquisition of Bear Stearns

32. In March 2008, JPMorgan Chase & Co. agreed to acquire Bear Stearns Cos.

33. According to the Fed, as part of the acquisition, the Federal Reserve Bank of New York (the "NY Fed"), through a limited liability company, took control of a portfolio of assets valued at $30 billion as of March 14, 2008. The assets were pledged as security for $29 billion in term financing from the NY Fed at its primary credit rate. The NY Fed retained BlackRock Financial Management Inc. to manage and liquidate the assets.

34. Under this arrangement, JPMorgan absorbs the first $1.15 billion of losses in value of the assets, and the remaining losses belong to the taxpayers.

35. The Fed announced that as of October 22, 2008, the value of the portfolio had decreased by almost $3 billion.

36. The taxpayers have a right to know about this investment and its associated risks.

The Bear Request

37. On April 7, 2008, Bloomberg reporter Craig Torres submitted to the Fed, through the Fed's website at www.federalreserve.gov/generalinfo/foia/EFOIA/EFOIAForm.cfm, an electronic FOIA request (the "Bear Request") seeking certain records (the "Bear Records").

38. The Bear Request sought "[a]ll documents reflecting or concerning the portfolio of securities (listed on a security-by-security basis, with CUSIP numbers if available), supporting the loan extended by the Federal Reserve in connection with the proposed acquisition of Bear Stearns Cos. by JP Morgan Chase & Co."

39. Following the submission of the Bear Request, phone calls were exchanged between Mr. Torres and Ms. Thro, and between Bloomberg's outside counsel and Ms. Thro.

40. The Fed finally responded to the Bear Request in a letter dated September 30, 2008. In that response, the Fed stated: "Staff searched Board records and made suitable inquires, but found no documents that are responsive to your request." In the footnote to that sentence, however, the Fed stated:

> Staff has confirmed that documents responsive to your request are located at the Federal Reserve Bank of New York. I have determined that these documents are not 'records of the Board' under the Act. Nevertheless, even if they were deemed to be 'records of the Board,' I have confirmed that the documents would be exempt in full from disclosure under exemption 4 of the Act.

41. In a letter dated October 14, 2008, Bloomberg appealed the denial. In that appeal, Bloomberg argued that under 12 C.F.R. §§ 261.10-12, even if the records were in the possession of the NY Fed, the Fed was still required to produce the records in response to the Bear Request. Bloomberg also argued that exemption 4 did not apply.

42. In a letter dated November 7, 2008, the Fed denied Bloomberg's appeal.

43. In the appeal denial, the Fed conceded that some records in the possession of the NY Fed were Board records, but still claimed that the Bear Records were not Board records, stating:

> [The NY Fed] obtained the [Bear Records] as part of its administration of a loan extended by the [NY Fed] to facilitate the acquisition of Bear Stearns by J.P. Morgan Chase & Co. (JPMC). Although the loan was made under emergency and other circumstances necessitating Board involvement, these circumstances did not convert an otherwise commercial action into a Board (agency) function. At no time did the Board or Board staff obtain, review, or rely upon these documents. Accordingly, I conclude that the documents are not 'records of the Board' subject to [FOIA].

44. The Fed went on to claim that even if the Bear Records were Board records, the Bear Records would be exempt from disclosure under exemption 4.

45. In addition, for the first time, the Fed added exemption 5 as a new reason for denying the Bear Request.

46. Bloomberg has exhausted its administrative remedies.

47. Bloomberg has a statutory right to the Bear Records.

FIRST CAUSE OF ACTION
(Loan Request: Request for declaratory judgment under 28 U.S.C. § 2201)

48. Bloomberg repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

49. FOIA mandates public disclosure by the Fed of the Loan Records.

50. The Fed has not provided to Bloomberg the Loan Records.

51. An actual and justiciable controversy exists as to whether the Fed has violated FOIA.

52. Bloomberg seeks declaratory judgment that FOIA entitles Bloomberg to the Loan Records and that the Fed should produce those records immediately.

## SECOND CAUSE OF ACTION
(Loan Request: Request for records improperly withheld in violation of FOIA)

53. Bloomberg repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

54. Bloomberg seeks disclosure of, and access to, the Loan Records.

55. The Fed was required to respond to the Loan Request no later than June 18, 2008 or July 3, 2008, but to date, has still failed to respond.

56. Bloomberg has exhausted its administrative remedies with respect to receiving a response to the Loan Request.

57. FOIA mandates public disclosure by the Fed of the Loan Records.

58. The Fed's failure to make the Loan Records promptly available to Bloomberg violates 5 U.S.C. § 552(a)(3)(A).

## THIRD CAUSE OF ACTION
(Bear Request: Request for declaratory judgment under 28 U.S.C. § 2201)

59. Bloomberg repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

60. FOIA mandates public disclosure by the Fed of the Bear Records.

61. The Fed has not provided to Bloomberg the Bear Records.

62. An actual and justiciable controversy exists as to whether the Fed has violated FOIA.

63. Bloomberg seeks declaratory judgment that FOIA entitles Bloomberg to the Bear Records and that the Fed should produce those records immediately.

## FOURTH CAUSE OF ACTION
(Bear Request: Request for records improperly withheld in violation of FOIA)

64. Bloomberg repeats, realleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

65. Bloomberg seeks disclosure of, and access to, the Bear Records.

66. The Fed denied the Bear Request.

67. Bloomberg appealed the denial.

68. The Fed denied the appeal.

69. Bloomberg has exhausted its administrative remedies with respect to receiving a response to the Bear Request.

70. FOIA mandates public disclosure by the Fed of the Bear Records.

71. The Fed's failure to make the Requested Records promptly available to Bloomberg violates 5 U.S.C. § 552(a)(3)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, Bloomberg requests that this Court:

72. Declare that the Fed's constructive denial of the Loan Request was unlawful;

73. Declare that the Fed's actual denial of the Bear Request was unlawful;

74. Order the Fed to make the Loan Records immediately available to Bloomberg;

75. Order the Fed to make the Bear Records immediately available to Bloomberg; and

76. Grant such other and further relief as this Court may deem just and proper.

Dated: New York, New York
November 25, 2008

WILLKIE FARR & GALLAGHER LLP

By: /s/ Thomas H. Golden
Thomas H. Golden
Jared E. Cohen

787 Seventh Avenue
New York, New York 10019
(212) 728-8000
tgolden@willkie.com
jcohen@willkie.com

Attorneys for Plaintiff Bloomberg L.P.

Of Counsel:

Charles J. Glasser, Jr., Esq.
Global Media Counsel, Bloomberg News
731 Lexington Avenue
New York, New York 10022
(212) 617-4529
cglasser@bloomberg.net

# CERTIFICATE OF SERVICE

The undersigned, a member in good standing of the bar of this Court, certifies that on November 25, 2008, he has caused to be served on the parties listed below a copy of Plaintiff's AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF:

By hand delivery to:

Department of Justice
U.S. Attorney's Office, S.D.N.Y.
86 Chambers Street
New York, NY 10007

By U.S. mail and certified mail to:

United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

and

Board of Governors of the Federal Reserve System
20th & Constitution Avenue, NW
Washington, DC 20551

Jared E. Cohen
jcohen@willkie.com