## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BLOOMBERG L.P. | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civ. No. 08 CV 9595 (LAP) ) |
| BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, Defendant. | ) ) ) ) ) ) |

## DECLARATION OF ALISON M. THRO

I, Alison M. Thro, hereby affirm the following as my testimony in the above-captioned case:

1.  I have been employed as an attorney with the Board of Governors of the Federal Reserve System ("Board") from March 31, 1998, to the present. I was responsible for processing a request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") made by reporter Mark Pittman of plaintiff Bloomberg L.P. ("plaintiff") to the Board by e-mail dated May 21, 2008, and a FOIA request made by reporter Craig Torres of Bloomberg News by letter dated April 7, 2008. Accordingly, I have personal knowledge of the facts herein.

2.  I commenced my employment with the Board's Legal Division as an Attorney on March 30, 1998. In 1999, I became a Senior Attorney; in 2000, I was promoted to Counsel. I

1

was promoted to Senior Counsel in 2004, which is the position that I presently hold.
Immediately prior to joining the Board, I received an LL.M. degree, specializing in
administrative law, from Yale Law School. Prior to that, I was employed as a law clerk
to Judge Emmett R. Cox with the United States Court of Appeals for the Eleventh Circuit
and served for approximately six years as a permanent law clerk to Judge Richard W.
Vollmer, Jr. with the United States District Court for the Southern District of Alabama.
Prior to my work as a law clerk and between my clerkships, I was an attorney with
Miller, Hamilton, Snider, and Odom, specializing in banking law during the savings and
loan industry crisis. I received a Bachelors' degree from Emory University in 1985 and a
J.D. from the University of Alabama in 1988.

3.      I have been involved with the Board's processing of requests for information under
FOIA since 1999. Since 2004, I have been the most senior attorney in the Board's Legal
Division responsible for reviewing FOIA requests. My primary responsibilities include
supervising the processing of requests for information received under FOIA, and
providing legal advice on issues related to FOIA, including the applicability of the FOIA
exemptions. As a result of my extensive involvement in processing FOIA requests for
the Board, I have experience in searching for a variety of records that are kept by the
Board, reviewing those documents in light of a FOIA request, and judging whether those
documents are responsive and should be produced in full, redacted, or withheld in their
entirety.

4.      When a request is made under FOIA for information that is not "published information
and records" as described in 12 C.F.R. §§ 261.10 and .11, and that has not been
previously cleared for release to the public, it has been the Board's practice to assign such

2

requests to the Legal Division for review and processing. In general, when such a FOIA

request is made, the Board's FOIA Office makes a preliminary review of the request and

assembles any responsive documents under its control. The FOIA Office then sends the

request to the Legal Division for processing. The Legal Division contacts other divisions

that may have responsive documents. When appropriate, the Legal Division also contacts

relevant Federal Reserve Bank staff to determine if they have responsive "Board records"

subject to FOIA, as discussed in ¶¶ 19-21 and 27-28 below.

### *The Loan Request*

5.      In the course of performing my duties described above, I became aware that the Board

received an e-mail, dated May 21, 2008, from Mark Pittman, who was affiliated with the

plaintiff, Bloomberg News, requesting documents under FOIA (the "Loan Request").

The e-mail requested eleven categories of documents with respect to securities posted

between April 4, 2008 and May 20, 2008 as collateral for the Primary Dealer Credit

Facility ("PDCF"), the Discount Window ("DW"), the Term Securities Lending Facility

("TSLF") and the Term Auction Facility ("TAF") (the "Relevant Securities"). With

respect to the Relevant Securities, the letter requested: (1) all forms and other documents

submitted by the party posting the Relevant Securities as part of the application for the

loan; (2) all receipts and other documents given to the party posting the Relevant

Securities as part of the application for the loan; (3) records sufficient to show the names

of the Relevant Securities; (4) records sufficient to show the dates that the Relevant

Securities were accepted and the dates that the Relevant Securities were redeemed; (5)

records sufficient to show the amount of borrowing permitted as compared to the face

value, also known as the "haircut"; (6) records sufficient to describe whether valuations

3

or "haircuts" for the Relevant Securities changed over time; (7) records sufficient to show the terms of the loans and the rates that the borrowers must pay; (8) records sufficient to show the amount that the Federal Reserve has accepted of each of the Relevant Securities; (9) records sufficient to show which, if any Relevant Securities have been rejected as collateral and the reasons for the rejections; (10) all databases and spreadsheets that list or summarize the Relevant Securities; and (11) records, including contracts with outside entities, that show the employees or entities being used to price the Relevant Securities and to conduct the process of the lending. A true and correct copy of the plaintiff's May 21, 2008 e-mail is attached hereto as Exhibit 1.

6. By letter dated May 21, 2008, Jeanne M. McLaughlin, Manager of the Board's FOIA office, acknowledged receipt of the plaintiff's e-mail. A true and correct copy of Ms. McLaughlin's May 21st letter is attached hereto as Exhibit 2. By letter to the plaintiff dated June 19, 2008, Ms. McLaughlin extended the Board's period to respond to the Loan Request until July 3, 2008. A true and correct copy of Ms. McLaughlin's June 19th letter is attached as Exhibit 3.

7. In responding to the Loan Request, I, and employees of the Legal Division working at my direction, contacted staff members in the two divisions of the Board most likely to have responsive records. My search for documents in the Board's Division of Monetary Affairs ("MA") is described in ¶¶ 8-11 and 15 below. My search for documents in the Board's Division of Reserve Bank Operations and Payment Systems is discussed in ¶¶ 17-18 below.

8. We contacted seven staff members in MA, including the division's director, deputy director, senior associate director and deputy associate director, believing that they, or

4

individuals working for them, were the most likely to have responsive information. MA supports the Board in the conduct of domestic monetary policy by providing information and analysis pertaining to open market operations, reserve requirements, the administration of the DW, the TAF, and special credit and liquidity facilities including the PDCF, and the TSLF (collectively the "SCLFs"), by the Reserve Banks. Because of this function and MA's added role in compiling data and analysis relating to the DW, TAF and SCLFs, in my experience, I believed that MA would be one of the two divisions at the Board most likely to have responsive information, or to know where responsive information would be located.

9.    I provided these seven individuals with copies of the Loan Request, discussed the Loan Request with them, and asked if they, or anyone on their staff (or anyone else at the Board to their knowledge) had responsive information. Although I did not discuss with them the specific filing system in MA, I am generally familiar with that filing system through my experience processing FOIA requests. As a result, I believed that we were reasonably likely to uncover responsive information in MA through our discussions with these seven individuals. These MA staff members, and additional MA staff members acting at their direction, searched files in MA that might have information responsive to the Loan Request, and responded to my inquiries. Some MA staff members provided information that I determined to be non-responsive. As one example, an MA officer had data showing, for one day per month, the specific collateral that individual depository institutions have on deposit in pledge accounts with the Reserve Banks and that is eligible for posting as collateral for DW or TAF loans. The data did not show, however, which items of pledged collateral (if any) were posted at any given time as collateral for a

5

particular loan. Because this additional information was lacking, neither I nor my supervisors regarded the data as responsive to the Loan Request.

10. As a result of these discussions and this review, I determined that, with the exception of the information discussed in ¶ 11 below, information in MA relating to the DW, TAF or the SCLFs consisted of high-level, aggregate data and statistics compiled by MA staff for monetary policy purposes. This high level information did not contain specific, transaction-level information regarding securities posted between April 4 and May 20, 2008 as collateral for the DW, TAF or SCLFs responsive to the Loan Request.

11. One MA staff member reported receiving daily data feeds (weekdays only) from each Reserve Bank on the DW, TAF and SCLFs. The Reserve Banks in turn had obtained and derived this information from records of their transactions with borrowing institutions. For the time period covered by the Loan Request, MA staff used this data to generate daily reports (week days only) (the "Remaining Term Report") that listed outstanding extensions of credit under the DW, TAF and SCLFs by calendar days to maturity. The Remaining Term Reports were internally classified as "FR Restricted" (essentially, highly confidential) and then distributed, in accordance with the Board's information security policies, to select senior staff in MA and RBOPS and select senior staff at the Federal Reserve Bank of New York ("FRBNY") on a need-to-know basis. These Remaining Term Reports (for the relevant time period) contained limited information responsive in part to item 7 of the Loan Request, including the names of the borrowers, amount of individual loans, the credit facility (DW, TAF or SCLF), and origination and maturity dates of specific loans. Because the Remaining Term Reports contained origination and maturity dates (and therefore the "term") of specific loans, I and my

6

supervisors considered them to be responsive in part to item 7 of the Loan Request, which sought "records sufficient to show the terms of the loans and the rates the borrowers must pay." Much of the information was redundant; in other words, it was carried over from day to day on successive Reports. In addition, the Remaining Term Reports did not identify the interest rates the borrowers must pay, specific items of collateral pledged for the loans, the haircuts applied to the collateral, or other information responsive to the Loan Request.

12. I reviewed the Remaining Term Reports described in ¶ 11 above to determine whether they were responsive to the Loan Request and whether they contained any material exempt from release under FOIA. From my experience with FOIA matters, it appeared to me that the information in the Remaining Term Reports was "commercial or financial" in nature, it was obtained from the Federal Reserve Banks, which had obtained and derived the information from records of transactions with borrowers at the DW, TAF and the SCLFs, that these entities were "persons" under FOIA, and disclosure of this information: was likely to cause substantial harm to the competitive position of the Reserve Banks or borrowers; could impair the Board's ability effectively to carry out its statutory mission; or could impair the Reserve Banks' ability to market securities pledged as collateral for these loans.

13. Upon review, and upon consultation with staff of MA, I determined that the Remaining Term Reports contained no reasonably segregable non-exempt information. Accordingly, I, with the concurrence of my supervisors, determined that the Reports, comprising some 231 full pages of information, should be withheld in full from the plaintiff under Exemptions 4 and 5 of FOIA.

7

14. A true and correct description of the withheld documents is contained in the Vaughn Index ("Index") attached hereto as Exhibit 4. The Index sets forth the contents of the withheld documents, identifies the FOIA exemption(s) under which each document is being withheld, and details why those exemptions pertain to the document(s), therefore providing the legal justification for nondisclosure.

15. Through my discussions with MA staff, I determined that one MA staff member had an e-mail potentially responsive to item 11 of the Loan Request. The e-mail identified an external firm from which the Federal Reserve Banks purchase pricing data. The Reserve Banks review this data when valuing securities eligible to serve as collateral for DW and TAF loans. I, with the concurrence of my supervisors, determined that this information was responsive to item 11, and was not covered by any FOIA exemption. As a result, this document, together with the document discussed in ¶ 17 below, was released to the plaintiff.

16. By letter dated December 9, 2008, the Secretary of the Board informed the plaintiff that the staff's search had revealed approximately 231 full pages of documents that contained commercial or financial information obtained from a person that was privileged or confidential, and inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than the agency in litigation, that were being withheld in their entirety under FOIA Exemptions 4 and 5, and that the documents had been reviewed for but determined not to contain any reasonably segregable non-exempt information. A true and correct copy of the Secretary's December 9, 2008 letter (without enclosure) is attached hereto as Exhibit 5.

8

17. In addition to MA, I, and Legal Division staff working at my direction, contacted six staff members in RBOPS, which oversees the Federal Reserve Banks' provision of financial services to depository institutions and other eligible borrowers. Because of RBOPS's role in overseeing DW, TAF and SCLF administration, these individuals were identified by MA as potentially having documents responsive to the Loan Request. These individuals confirmed that no other groups or individuals within RBOPS (or the Board, outside of MA) were reasonably likely to have information responsive to the Loan Request. Of the individuals we contacted in RBOPS, one reported having no responsive information other than the Remaining Term Reports discussed in ¶ 11 above. Other RBOPS staff members reported having no documents of the type requested for the time period of the Loan Request. One staff member had certain high-level, aggregate information used to formulate policy relating to the DW and the SCLFs, but no transaction-level information responsive to the Loan Request. I, with the concurrence of my supervisors, concluded that this high-level information was not responsive to the Loan Request. This staff member also had an e-mail responsive in part to item 11, which was provided to the plaintiff together with the document discussed in ¶ 15 above.

18. Through my discussions with the seven individuals in MA and six individuals in RBOPS, I, and staff members working at my direction, determined that it was not reasonably likely that responsive information of the type requested by the plaintiff would reside with staff in other divisions of the Board, because no other division had responsibility directly to oversee the Reserve Banks' provision of DW, TAF and SCLF services to eligible institutions or to provide data and statistics to Board staff relating to the DW, TAF and SCLFs.

19. In addition to Board records maintained on site at the Board, I am aware, as a result of my duties relating to FOIA, that Board records include a narrow subset of documents in the possession or control of the Federal Reserve Banks as a result of the Reserve Banks' performance of certain functions for or on behalf of the Board. By Board regulation, contained at 12 C.F.R. § 261.2(i)(1)(i), this small category of records relates to functions performed by the Reserve Banks under delegated authority from the Board, such as bank examination materials, and does not include records of the Reserve Banks relating to commercial transactions with depository institutions, which are records of the Reserve Banks.

20. In the course of processing the Loan Request, I learned through discussions with the Board staff members listed in ¶¶ 8 and 17 above, and with staff of the FRBNY, that lending at the DW, TAF and under the SCLFs was not considered to be an activity conducted by the Reserve Banks under Board-delegated authority. I also learned that the FRBNY, by virtue of its statutory authority to lend at the DW and TAF, and statutory authority with Board authorization to establish and lend under the SCLFs, had obtained transaction-level information responsive to the Loan Request. Through my discussions with these Board and FRBNY staff members, I determined that responsive FRBNY documents were and have at all times been in the possession and control of the FRBNY or entities acting on its behalf. I confirmed with staff in MA and RBOPS, and with FRBNY staff, that Board staff had not obtained, reviewed, or relied upon any of these responsive FRBNY records in the performance of any Board function.

21. Through my discussions with Board staff members, and staff members at the FRBNY, I determined that these transaction-level documents at the FRBNY are not "records of the

10

Board" under FOIA because they were obtained by the FRBNY in the course of

extending credit at the DW, TAF and pursuant to the SCLFs. Extending credit is a

fundamental part of the business of banking and a commercial activity in which the

Reserve Banks are authorized to engage, but the Board is not. Because the establishment

and administration of the DW, TAF and the SCLFs is a commercial banking activity, not

a function "performed for or on behalf of the Board," the Reserve Banks' records relating

to the DW, TAF and the SCLFs are not Board records under the Board's regulations.

Staff of the FRBNY also stated their view that responsive records, which were obtained

or derived from records of their transactions with the borrowers or other entities, were

commercial or financial in nature, and that their public disclosure would likely result in

substantial competitive harm to the FRBNY or the borrowers or issuers of the securities

held as collateral and were therefore protected under FOIA exemptions 4 and 5. As a

result, I, with the concurrence of my supervisors, determined that these transaction-level

documents at the FRBNY were not records of the Board subject to FOIA.

### *The Bear Request*

22.   In the course of performing my duties, I became aware that the Board received an

electronically submitted letter dated April 7, 2008, from Craig Torres, who identified

himself as a reporter for the plaintiff, requesting documents under FOIA (the "Bear

Request"). The Bear Request sought copies of "[a]ll documents reflecting or concerning

the portfolio of securities (listed on a security-by-security basis, with CUSIP numbers if

available), supporting the loan extended by the Federal Reserve in connection with the

proposed acquisition of Bear Stearns Cos. By JP Morgan Chase & Co." A true and

correct copy of the plaintiff's April 7, 2008 letter is attached hereto as Exhibit 6.

11

23.     In responding to the Bear Request, I had access to, and relied upon, an electronic

        document repository I had previously been involved in creating that related to JPMC's

        acquisition of Bear Stearns and the Board's authorization of a loan from the FRBNY in

        connection with the acquisition (the "Bear Stearns Loan"). I, along with staff in the

        Legal Division, created this repository shortly after the Board's March 14, 2008 action

        authorizing the FRBNY to extend credit in connection with JPMC's acquisition of Bear

        Stearns. We created the repository in order to respond to approximately 23 FOIA

        requests (including the Bear Request), and Congressional requests for information

        relating to the JPMC/Bear Stearns transaction. Some of those FOIA requests, like the

        Bear Request, sought documents relating to securities posted as collateral for the Loan.

        Other requests sought information relating to the Board's decision, publicly announced

        on or around March 16, 2008, to authorize the FRBNY to extend credit in connection

        with the acquisition.

24.     In creating the repository, I, working with at least three other attorneys in the Board's

        Legal Division, contacted approximately 80 Board staff members in seven divisions

        (MA, RBOPS, Office of Board Members, Office of the Secretary, Legal, International

        Finance, and Bank Supervision and Regulation) who were involved in any aspect of

        JPMC's acquisition of Bear Stearns and the Board's authorization of the Bear Stearns

        Loan. We identified the staff members by starting with a core group of staff who had

        been involved in these matters and asking them, and subsequent interviewees, to identify

        any other Board staff who might have responsive documents. As a result, I was satisfied

        that we had identified all Board staff members likely to have relevant documents. We

        held meetings with some of the staff members and contacted others by telephone and e-

mail. We described the FOIA and Congressional requests the Board had received, including requests for collateral-specific information, discussed the staff members' specific roles in the Board's action, and asked the staff members to forward any potentially responsive documents to the Legal Division for inclusion in the repository. We considered our search to be broad enough to capture all Board documents responsive to any FOIA request for information relating to the Bear Stearns Loan or the JPMC/Bear Stearns acquisition. The bulk of documents related to the JPMC/Bear Stearns matter were generated and placed into the document repository by the end of June 2008. However, all staff that we contacted as part of the search were cautioned (and reminded in follow up e-mails) that the duty of production was on-going, and that the documents should be preserved and sent to the repository pending further notice from the Legal Division.

25.  In response to our contacts with the 80 Board staff members, the Legal Division received over 28,000 pages of information which were included in the repository. It is my belief that any Board record responsive to the Bear Request would be contained in this repository. Beginning in August 2008 and continuing through September 2008, I personally searched the repository, and reviewed hard copies of some documents in the repository. In particular, I reviewed the documents of those Board members and Board staff members (approximately 34 in all) who were most likely to have documents of the type requested by the plaintiff and, for each, reviewed every page of their materials (e-mails and electronic copies of documents). I determined through my discussions with Board and Board staff members and my involvement in creation and review of the repository, described in ¶¶ 23-24 above, that other staff members who had contributed to

13

the repository were unlikely to have documents relating to securities pledged as collateral

for the Bear Stearns Loan responsive to the Bear Request because they were involved in

other aspects of the Board's action. After reviewing the repository, I determined that

Board records did not contain any transaction-specific documents regarding securities

posted as collateral for the Bear Stearns Loan sought in the Bear Request.

26.  In addition to reviewing the repository, in August 2008, I personally confirmed with

staffs in MA and RBOPS that they did not have documents responsive to the Bear

Request. In particular, I contacted the two staff members in MA and the three staff

members in RBOPS who were most likely to have received information of the type

requested. Although each of these individuals had been contacted previously and had

provided documents to the repository, I reviewed the Bear Request with them again. For

the reasons set forth in ¶¶ 8, 17 and 18 above, I concluded that MA and RBOPS were the

divisions, and these were the individuals, who were most likely to have information

related to specific securities posted as collateral for the Bear Stearns Loan and that other

divisions and individuals were unlikely to have responsive records.. The MA and RBOPS

staff members I contacted confirmed that neither they nor members of their staff had

collateral-specific information responsive to the Bear Request.

27.  Finally, because I was aware that the Bear Stearns loan had been extended by the

FRBNY, I consulted with staff of the FRBNY to determine if any of the FRBNY's

records regarding securities posted as collateral for the Bear Stearns Loan were obtained

"in the performance of functions for or on behalf of the Board," which could make them

Board records subject to FOIA. Staff of the FRBNY informed me that the FRBNY

maintained records regarding securities posted as collateral for the Bear Stearns loan in

connection with the FRBNY's extension of credit to Maiden Lane LLC, a limited liability company formed in connection with JPMC's acquisition of Bear Stearns. Because the extension of credit is a commercial activity that Reserve Banks are authorized to engage in, but the Board is not, staff of the FRBNY informed me that records responsive to the Bear Request were proprietary records of the Reserve Bank, and not Board records subject to FOIA. Based on my experience with similar FOIA requests, I, and my supervisors, concurred in this position.

28. Staff of the FRBNY also stated their view that these responsive records, which were obtained or derived from records of transactions with the borrower or other entities, were commercial or financial in nature, and that their public disclosure would likely result in substantial competitive harm to the FRBNY or the borrower or issuers of the securities posted as collateral for the Bear Stearns Loan, and could impair the FRBNY's ability, if necessary, to sell the collateral, and were therefore protected under FOIA exemptions 4 and 5. I confirmed with staff in MA and RBOPS, and with FRBNY staff, that Board staff had not obtained, reviewed or relied upon any of these responsive FRBNY records in the performance of any Board function. Accordingly, I, with the concurrence of my supervisors, concluded that there were no Board records responsive to the Bear Request.

29. By letter dated September 30, 2008, the Secretary of the Board informed Mr. Torres that staff had searched Board records and made suitable inquiries, but had found no documents responsive to the Bear Request. The letter informed plaintiff that documents responsive to the Bear Request were located at the FRBNY, that these were not "records of the Board" pursuant to FOIA, and that, the documents, in any case, would be exempt

15

in full from disclosure under FOIA Exemption 4. A true and correct copy of the September 30, 2008 letter (without enclosure) is attached hereto as Exhibit 7.

30. By letter dated October 14, 2008 from plaintiff's attorneys, the plaintiff appealed the Board's September 30, 2008 denial of the Bear Request. A true and correct copy of the October 14, 2008 letter is attached hereto as Exhibit 8.

31. By letter dated November 7, 2008, a member of the Board denied plaintiff's October 14, 2008 appeal. A true and correct copy of the November 7, 2008 letter is attached hereto as Exhibit 9.

I declare under penalty of perjury that the foregoing is true and correct. Executed in the city of Washington, D.C. on this 26 day of February, 2009.

_Alison M. Thro_
Alison M. Thro

# Exhibit 1



MPittman@Bloomberg.net on 05/21/2008 09:01:49 AM

FEDERAL RESERVE SYSTEM
2008 MAY 21 AM 9: 27
OFFICE OF THE SECRETARY

To:           FOI.Requests@frb.gov
cc:

Subject:     FOIA Request

Date: May 21, 2008
------------------------------------------

Name:                          Mark Pittman
Affiliation:          Bloomberg News
Category of
Affiliation:          News Media
Address1:             731 Lexington Avenue
Address2:
City, State:          New York, NY
Zip:                          10022
E-Mail:                       MPittman@Bloomberg.net
Country:                      UNITED STATES
Country Code:         840
PostalCode:
Telephone:                    212-617-3767 (work/home not specified)
Fax:                          917-369-4324
------------------------------------------
Max. Fee:                     $2,000.00
Fee Waiver:
------------------------------------------

Delivery:                     Please call for pick up

------------------------------------------
Request: For all securities posted between April 4, 2008 and May 20, 2008 as
collateral to the Primary Dealer Credit Facility, the discount window, the
Term Securities Lending Facility, and the Term Auction Facility (the "Relevant
Securities"), we request copies of:

1.            all forms and other documents submitted by the party posting the
Relevant Securities as part of the application for the loan;
2.            all receipts and other documents given to the party posting the
Relevant Securities as part of the application for the loan;
3.            records sufficient to show the names of the Relevant Securities;
4.            records sufficient to show the dates that the Relevant Securities
were accepted and the dates that the Relevant Securities were redeemed;
5.            records sufficient to show the amount of borrowing permitted as
compared to the face value, also known as the "haircut";
6.            records sufficient to describe whether valuations or "haircuts"
for the Relevant Securities changed over time;
7.            records sufficient to show the terms of the loans and the rates
that the borrowers must pay;
8.            records sufficient to show the amount that the Federal Reserve
has accepted of each of the Relevant Securities;
9.            records sufficient to show which, if any, Relevant Securities
have been rejected as collateral and the reasons for the rejections;
10.           all databases and spreadsheets that list or summarize the
Relevant Securities; and

11.	records, including contracts with outside entities, that show the employees or entities being used to price the Relevant Securities and to conduct the process the lending.

If this data is available in an electronic format, we would appreciate it being transmitted in that format, and we would pay any reasonable fees associated with putting it into that format.

We are willing to pay for staff and material expenses up to $2,000. If expenses are over that amount, I would expect to be notified.

# Exhibit 2



**BOARD OF GOVERNORS
OF THE**
FEDERAL RESERVE SYSTEM
WASHINGTON. D. C. 20551

ADDRESS OFFICIAL CORRESPONDENCE
TO THE BOARD

May 21, 2008

Mr. Mark Pittman
Bloomberg News
731 Lexington Avenue
New York, NY 10022

FOIA Request No. 2008100356

Dear Mr. Pittman,

This will acknowledge receipt of your email dated 05/21/2008 and received by the
Board on 05/21/2008, in which you request, pursuant to the Freedom of Information
Act ("FOIA"), 5 U.S.C. § 552, records pertaining to all securities posted between
April 4, 2008 and May 20, 2008 as collateral to the Primary Dealer Credit Facility,
the discount window, the Term Securities Lending Facility, and the Term Auction
Facility.

In accordance with section 261.17 of the Board's Rules Regarding Availability of
Information, unless a request for a fee waiver is granted, this letter also confirms our
assumption that you will pay all fees incurred in the processing of your request. In
your letter you agreed to pay fees up to $2000.

The Board makes every effort to fulfill requests in a timely manner; however, there
may be delays in fulfilling complex requests or those that require consultation.
Please feel free to contact the Board's FOIA Requester Service Center at (202) 452-
3684 to obtain information about the status of your request.

Very Truly Yours,

Jeanne M. McLaughlin
Manager, Freedom of Information Office

# Exhibit 3



ADDRESS OFFICIAL CORRESPONDENCE
TO THE BOARD

June 19, 2008

Mr. Mark Pittman
Bloomberg News
731 Lexington Avenue
New York, New York 10022

Request No. 2008100356

Dear Mr. Pittman:

On May 21, 2008 the Board of Governors (Board) received your request dated May 21, 2008, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 for records pertaining to all securities posted between April 4, 2008 and May 20, 2008 as collateral to the Primary Dealer Credit Facility, the discount window, the Term Securities Lending Facility, and the Term Auction Facility.

Pursuant to section (a)(6)(B)(i) of the FOIA, we are extending the period for our response until July 3, 2008, in order to consult with another agency or with two or more components of the Board having a substantial interest in the determination of the request.

If a determination can be made before July 3, 2008, we will respond to you promptly. It is our policy to process FOIA requests as quickly as possible while ensuring that we disclose the requested information to the fullest extent of the law.

Sincerely,

Jeanne M. McLaughlin

Jeanne M. McLaughlin
Manager
Freedom of Information Office

# Exhibit 4

## INDEX OF WITHHELD MATERIAL

**Bloomberg FOIA Request 2008-356, dated May 21, 2008 ("Loan Request")**

**Time Period: April 4, 2008 – May 20, 2008**

**Title:** Daily Report of Primary, Secondary and Other Extensions of Credit by Remaining Term) ("Remaining Term Report")

**From:** Prepared by staff in MA and distributed to high level staff in MA and RBOPS. Copies are provided to high level staff at the FRBNY.

**Total Pages:** 231 full pages withheld

**Dates :** Business days between April 4, 2008 – May 20, 2008

| Description of Report and Basis for Withholding | Exemption(s) |
|---|---|
| Each Remaining Term Report lists primary and secondary credit discount window loans and special credit and liquidity facility loans by the name of the borrowing institution, institution type (e.g., large money center bank, other large commercial bank, small commercial bank, etc.), Federal Reserve District extending the loan, individual loan amounts, and origination and maturity date (showing the "term") of individual loans, as sought in item 7 of the Loan Request. Each Remaining Term Report also lists the total amount of credit outstanding and total credit maturing on a specific date. Information in the Reports is highly redundant, that is, information on one day's Report is carried forward to the next until a loan has matured. The Report is prepared using raw data provided to Board staff on a daily basis by the Federal Reserve Banks (which obtained and derived the information from records of transactions with the borrowing institutions). It is used by high level Board staff in MA and RBOPS for monetary policy and Reserve Bank oversight purposes. The report contains no reasonably segregable non-exempt information. These reports are being withheld in their entirety under FOIA exemption 4 because they contain trade secrets and commercial or financial information obtained from a person and privileged or confidential, public disclosure of which is likely to cause substantial competitive harm to the borrowing institutions or the Reserve Banks or to impair the Board's ability to fulfill its statutory functions. In addition, these reports are being withheld in full under FOIA exemption | 4, 5 |

| 5 because they are inter-agency or intra-agency memoranda which contain sensitive information, not otherwise available, immediate release of which would significantly harm the Government's monetary functions or commercial interests. | |
|---|---|

# Exhibit 5



BOARD OF GOVERNORS
OF THE
**FEDERAL RESERVE SYSTEM**
WASHINGTON, D. C. 20551

ADDRESS OFFICIAL CORRESPONDENCE
TO THE BOARD

December 9, 2008

Mr. Mark Pittman
Bloomberg News
731 Lexington Ave.
New York, NY 10022

Dear Mr. Pittman:

This is in response to your e-mail message dated and received by the Board's Freedom of Information office on May 21, 2008, in which, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, you request detailed, transaction-level information on traditional discount window lending by the Federal Reserve Banks and on certain emergency lending facilities the Board authorized and the Federal Reserve Banks established and administer to address extraordinary strains in the financial markets. With respect to all securities posted between April 4 and May 20, 2008, as collateral to the discount window ("DW"), the Term Auction Facility ("TAF"), the Term Securities Lending Facility ("TSLF"), and the Primary Dealer Credit Facility ("PDCF") (collectively, the "Relevant Securities") you request:

1. all forms and other documents submitted by the party posting the Relevant Securities as part of the application for the loan;
2. all receipts and other documents given to the party posting the Relevant Securities as part of the application for the loan;
3. records sufficient to show the names of the Relevant Securities;
4. records sufficient to show the dates that the Relevant Securities were accepted and the dates that the Relevant Securities were redeemed;
5. records sufficient to show the amount of borrowing permitted as compared to the face value, also known as the "haircut";
6. records sufficient to describe whether valuations or "haircuts" for the Relevant Securities changed over time;
7. records sufficient to show the terms of the loans and the rates that the borrowers must pay;
8. records sufficient to show the amount that the Federal Reserve has accepted of each of the Relevant Securities;
9. records sufficient to show which, if any, Relevant Securities have been rejected as collateral and the reasons for the rejections;
10. all databases and spreadsheets that list or summarize the Relevant Securities; and
11. records, including contracts with outside entities, that show the employees or entities being used to price the Relevant Securities and to conduct the process [of] the lending.

As you may know, the Board and the Federal Reserve Banks publish and regularly update information on Federal Reserve Bank lending activities.[1] Discount window lending is a commercial and financial transaction between the Federal Reserve Banks and individual depository institutions that is used by depository institutions to manage their reserves and liquidity. Discount window lending helps relieve liquidity strains in a depository institution and in the banking system as a whole. Extensive information on the terms, rates, and conditions of discount window operations is accessible through the Board's public website and the public websites of the Federal Reserve Banks.[2]

The Board and the Federal Reserve Bank of New York ("FRBNY") also publish extensive information on their respective public websites on the emergency liquidity facilities authorized by the Board and established and administered by the Federal Reserve Banks (principally, the FRBNY).[3] As these resources explain, these facilities have been introduced incrementally since August 2007, in response to changing market conditions, with the common objectives of reducing risks to financial stability and strengthening the effectiveness of monetary policy in addressing risks to the outlook for growth and inflation.[4] In general, the suite of

---

[1] A summary of all forms of Federal Reserve Bank lending to financial institutions may be found at the following link: http://www.newyorkfed.org/markets/Forms_of_Fed_Lending.pdf Among other things, this chart identifies eligible participants, eligible collateral, general loan terms, the administering Federal Reserve Bank(s), and the scope and frequency of publicly reported statistics.

[2] At www.frbdiscountwindow.org, you will find, among other information, descriptions of the purposes, functions, and mechanics of the discount window; relevant statutory provisions and regulations pursuant to which discount window lending is authorized and conducted; operating circulars issued by the Federal Reserve Banks governing the general terms and conditions, including applicable rates, terms, and eligible collateral; form agreements; and collateral margins tables. Each week, the Board publishes aggregate data on Federal Reserve Bank lending under the discount window, as part of the H.4.1 statistical release, "Factors Affecting Reserve Balances of Depository Institutions and Condition Statement of Federal Reserve Banks" (see http://www.federalreserve.gov/releases/h41/). The Board also publishes historical lending data (see http://www.federalreserve.gov/releases/h41/hist/h41hist5.txt).

[3] See, e.g., http://www.federalreserve.gov/newsevents/recentactions.htm and http://www.newyorkfed.org/markets/Understanding_Fed_Lending.html. Terms and conditions governing the TAF are located at: http://www.federalreserve.gov/monetarypolicy/files/TAFtermsandconditions.pdf. TAF auction results, including rates, are at http://www.federalreserve.gov/monetarypolicy/taf.htm. TSLF terms and conditions are at: http://www.newyorkfed.org/markets/tslf_terms.html. TSLF auction results, including rates, are at http://www.newyorkfed.org/markets/tslf/termseclending.cfm. PDCF terms and conditions may be found at: http://www.newyorkfed.org/markets/pdcf_terms.html. The PDCF rate is equal to the primary credit rate. The weekly H.4.1 statistical release, referenced in note 2, above, captures aggregate data on Federal Reserve Bank lending under the TAF, TSLF, and the PDCF. The historical data provides aggregate borrowing data by category.

The Emergency Economic Stabilization Act (EESA) included provisions that further enhance the transparency and public accountability associated with Federal Reserve lending programs. The EESA requires that the Federal Reserve report to Congress on a regular basis regarding any exercise of its emergency lending authorities under section 13(3) of the Federal Reserve Act. These reports must include a justification for exercising the authority, the terms of any actions under the authority, and an assessment of the expected cost to the taxpayer of exercising the authority. The Federal Reserve fully supports the goals of this additional reporting and has submitted several reports to Congress to date.

[4] The facilities are a crucial component in addressing systemic risk and stability issues. Authorization, establishment, and administration of these facilities involve both the public and private components of the Federal Reserve System. For instance, section 13(3) of the Federal Reserve Act (12 U.S.C. § 343) permits the Board, in unusual and exigent circumstances, to authorize Federal Reserve Banks to expand their lending powers by extending credit to individuals, partnerships, and corporations that the Reserve Banks determine are unable to obtain adequate credit accommodations from other banking institutions. Transactional documents and data are gathered and maintained by and at the Federal Reserve Banks, much as commercial lenders gather and maintain documents on

facilities now in place is designed to enable a set of institutions that play an important role in financial markets to access liquidity from the Federal Reserve Banks against collateral they normally would be able to finance easily with other financial market participants. By giving these institutions more confidence in their access to current and future funding, these facilities are intended to reduce the incentives these institutions otherwise would face in times exceptionally challenging market conditions to take actions that might exacerbate pressure on market functioning. They also should improve the institutions' ability to extend funding to their customers and counterparties. The Board and FRBNY publish extensive information on the terms, rates, and conditions of the emergency liquidity facilities.

In addition to the information and data described above that are available to you and others on the Board's public website, you seek transaction level information (documents, deal terms, collateral specifications) regarding the commercial and financial arrangements between the Federal Reserve Banks and third-party financial services providers under the discount window and facilities authorized and established under extraordinary circumstances to address unprecedented disruptions in the markets. Within the context described infra in note 4, staff conducted its search of Board records in response to your request. Staff located documents that are responsive, in part, to item 11 of your request (i.e., documents identifying the vendor that provides pricing data to the Federal Reserve Banks). The Board's Freedom of Information office will provide you with these documents under separate cover. This portion of item 11 of your request is granted.

With respect to item 7 of your request, staff searched Board records and located documents (daily reports) containing certain information (specifically, the names of participants, originating Federal Reserve Bank district, names of borrowers, individual loan amounts and origination and maturity dates) on the DW, TAF, TSLF, and the PDCF. I have determined that this information contains or consists of the following kinds of exempt information: trade secrets and commercial or financial information obtained from a person and privileged or confidential; and inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency. Such information will be withheld from you under authority of exemptions 4 and 5 of the Act, 5 U.S.C. § 552(b)(4) and (b)(5). The documents containing this information have been reviewed under the requirements of subsection (b) of the Act, 5 U.S.C. § 552(b), but no reasonably segregable nonexempt information was found. Accordingly, approximately 231 full pages of information will be withheld from you.

In making this determination, I am mindful that as market conditions have deteriorated, lending under the discount window and emergency facilities has dramatically increased. This has led to increasing calls by the media, members of Congress, and the public for enhanced transparency, with disclosure characterized as especially important given the interests of and risks to taxpayers.

While the Board strongly supports transparency (as evidenced, in part, by its publication of extensive information on discount window and emergency operations of the Federal Reserve Banks), the Board also has a legal obligation under the FOIA to consider the significant adverse consequences that release of responsive information would have on the effectiveness of Federal

---

individual lending transactions. As necessary for monetary policy purposes, Board staff access or receive and evaluate select aggregate data (typically, high level and market-oriented) on Reserve Bank lending activity, maintained and derived from Reserve Bank proprietary systems.

Reserve Bank lending activity in addressing liquidity strains of financial markets and institutions and the potential adverse effects on the economy now and in the future. The Board also has to be and is mindful of the commercial and financial interests of borrowers, the institutions whose collateral secures the borrowings, and the financial integrity of the Federal Reserve Banks.[5]

In the experience of the Board and the Federal Reserve Banks, institutions that may potentially borrow from the discount window recognize that counterparties and market analysts may draw adverse inferences about their financial health if the institutions do turn to the window, and, for that reason, such institutions can be extremely concerned about the stigma of borrowing at the window. Indeed, if institutions perceive any chance that their discount window borrowing might be revealed to the public, they may avoid borrowing at virtually any costs. Such behavior tends to exacerbate strains in financial markets. Confidentiality of data concerning individual transactions thus is considered essential to ensuring that discount window operations are utilized, proceed smoothly, and achieve their intended purpose. Confidentiality of these data also protects both borrowers and the Federal Reserve Banks against substantial commercial or financial harm.

These sensitivities are especially acute with respect to lending under emergency facilities. Certain of the emergency facilities have been designed and implemented in a manner intended to mitigate the stigma associated with resort to traditional discount window lending. This has been especially important considering the extraordinary liquidity conditions in the market and the crucial role of these facilities in addressing those circumstances. Nevertheless, anecdotal evidence suggests that material concerns remain about public disclosure of borrowers' reliance on these facilities. The effectiveness of these facilities depends critically on the willingness of individual borrowers to utilize them. Publishing information about individual borrowers would deter usage of the liquidity facilities and undermine the ability of these programs to address severe strains in financial markets and foster a return to strong economic growth. It also would harm individual borrowers' competitiveness and materially impede the ability of the Federal Reserve Banks to maximize recovery on posted collateral (and, thus, ultimately to provide maximum protection to taxpayers).

We are facing an unprecedented crisis, with market events moving rapidly and unpredictably. As we have seen throughout this crisis, the loss of confidence in and between financial institutions can occur with lightning speed and devastating effects. The Board has had to work to stabilize financial markets, reduce systemic risk, and avoid broader economic contagion which could have disastrous effects on individual taxpayers. Credit markets largely have been frozen, denying businesses and consumers access to vital funding and credit. Financial institutions have been under extreme pressure, and investor confidence in our system has been dangerously low. Thus, notwithstanding calls for enhanced transparency, the Board must protect against the substantial, multiple harms that might result from disclosure. In its considered judgment and in view of current circumstances, it would be a dangerous step to release this otherwise confidential information.

With respect to all other information you request, staff searched Board records and made suitable inquiries but did not locate any information within the control of the agency that is responsive to your request. Accordingly, we cannot provide you with this information. A

---

[5] In fact, confidentiality in this instance ultimately advances the interests of taxpayers, preserving the integrity and effectiveness of financial stability measures and, in the long term, preserving an opportunity for maximum recovery by the Federal Reserve Banks in the event of default by individual borrowers.

determination that no responsive records exist is considered to be an "adverse determination" under the Act. You may appeal this determination as set forth below.

Your request for information is granted in part and denied in part for the reasons stated above. If you believe you have a legal right to any information that is being withheld, or if you believe that the determination of no responsive Board records is incorrect, you may appeal either or both of these determinations in accordance with section 261.13(i) of the Board's Rules Regarding Availability of Information, a copy of which is enclosed for your information.

Very truly yours,

Jennifer J. Johnson
Secretary of the Board

Enclosure

# Exhibit 6

2008-278

2006 APR -7 AM II: 05
FEDERAL RESERVE SYSTEM
SECRETARY OFFICE

Expedite
Requested

# FREEDOM OF INFORMATION ACT REQUEST

## REQUEST FOR EXPEDITED TREATMENT

Freedom of Information Office                    7 April 2008
Board of Governors of the Federal Reserve System
20th & C Street, N.W.
Washington, D.C. 20551

BY MAIL AND FAX to (202) 872-7562/7565

Dear Sir or Madam:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, (hereinafter
"FOIA") I hereby request that I be allowed immediate access to the following
documents (the "Records") or, in that alternative, that I be immediately provided
with copies of such Records:

> All documents reflecting or concerning the portfolio of
> securities (listed on a security-by-security basis, with
> CUSIP numbers if available), supporting the loan extended
> by the Federal Reserve in connection with the proposed
> acquisition of Bear Stearns Cos. by JP Morgan Chase &
> Co.

I am a reporter for Bloomberg News, an accredited and recognized newsgathering
organization, and request the Records in order to inform the public about matters
of public concern. The Federal government has assumed risk with respect to the
securities in question, so they represent a potential taxpayer liability.
Consequently, they are a matter of high public interest. The Federal Reserve is
not a profit-maximizing institution and should not be concerned about market
impact if information concerning the securities are made public. The Federal
Reserve also has ten years to cause the portfolio to be sold.

Bloomberg News, on whose behalf I make this request, is primarily engaged in the
dissemination of information, including to the financial community and the
investing public. In addition, there is urgency in informing Bloomberg News's
readers of the Federal Reserve's activities in this area, particularly since the
federal government's efforts to mitigate the current financial difficulties may be
on-going, and should be shaped by the public's fully-informed views regarding
the propriety of such efforts. Consequently, I respectfully request expedited
treatment of this request.

Pursuant to FOIA, please respond in writing within 20 (twenty) working days of
this letter. If you decide to withhold any Record(s) or redact any information from
the Record(s), please state the legal basis and specific exemption you assert for so
deciding.

We agree to pay reasonable fees for the Records, including actual costs up to $300. If you choose to make the Records available but your estimate is that actual costs will exceed this amount, please contact me so that I may make the appropriate arrangements for payment.

This request is segregable, and if any part is denied, the remaining part of the request should be complied with. Please contact me if I may expedite your office's satisfaction of its obligations under the FOIA. I may be reached at the telephone number listed below during normal business hours.

Craig Torres
Reporter
Bloomberg News
202-654-1220

cc:     Mark McQuillan, Bureau Chief
        Daniel Moss, Managing Editor
        Chris Anstey, Team Leader
        Thomas H. Golden, Esq.

# Exhibit 7



ADDRESS OFFICIAL CORRESPONDENCE
TO THE BOARD

September 30, 2008

Mr. Craig Torres
Bloomberg
1399 New York Avenue, NW
Washington, DC 20005-4711

Dear Mr. Torres:

This is in response to your letter dated and received by the Board's
Freedom of Information office on April 7, 2008. Pursuant to the Freedom of
Information Act (the "Act"), 5 U.S.C. § 552, you request

> "[a]ll documents reflecting or concerning the portfolio of
> securities (listed on a security-by-security basis, with CUSIP
> numbers if available), supporting the loan extended by the
> Federal Reserve in connection with the proposed acquisition of
> Bear Stearns Cos. by JP Morgan Chase & Co."

Staff searched Board records and made suitable inquiries, but found no
documents that are responsive to your request.[1] Accordingly, we cannot provide
you with any information. A determination that no responsive records exist is
considered to be an "adverse determination" under the Act. You may appeal this
determination in accordance with section 261.13(i) of the Board's Rules
Regarding Availability of Information, a copy of which is enclosed for your
information.

Very truly yours

Jennifer J. Johnson
Secretary of the Board

Enclosure

---

[1] Staff has confirmed that documents responsive to your request are located at the
Federal Reserve Bank of New York. I have determined that these documents are
not "records of the Board" under the Act. Nevertheless, even if they were deemed
to be "records of the Board," I have confirmed that the documents would be
exempt in full from disclosure under exemption 4 of the Act.

# Exhibit 8

# WILLKIE FARR & GALLAGHER LLP

FAX TRANSMISSION

2008-278

787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000

| Date: October 14, 2008 | Time: | Total number of pages (including this page): | 10 |

*Please include Client/Matter No. below*

**FROM:** Thomas Golden

Room No.:
Phone No.:    (212) 728-8657

**TO:** Freedom of Information
Office

Fax No.:   (202) 872-7565
City:

Telephone No.:
Country:

## FREEDOM OF INFORMATION ACT APPEAL

**Confidentiality Note:**
The information contained in this facsimile ("fax") transmission is sent by an attorney or his/her agent, is intended to be confidential and for the use of only the individual or entity to which it is addressed. The information may be protected by attorney/client privilege, work product immunity, or other legal rules. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that any retention, dissemination, disclosure, distribution, copying, or other use of this fax is strictly prohibited. If you have received this fax in error, please notify us immediately by telephone in order to arrange for the destruction of the fax or its return to us at our expense. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners. THANK YOU.

# WILLKIE FARR & GALLAGHER LLP

THOMAS H. GOLDEN
212 728 8651
tgolden@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

October 14, 2008

## BY FEDEX AND FAX TO (202) 872-7565

Freedom of Information Office
Board of Governors of the Federal Reserve System
20th & C Streets, N.W.
Washington, D.C. 20551

Re:     FREEDOM OF INFORMATION ACT APPEAL
        Freedom of Information Act Request No. 2008100278

Dear Sir or Madam:

This firm represents Bloomberg L.P. ("Bloomberg") and its reporter Craig Torres in connection with their above-referenced Freedom of Information Act (the "Act") request (the "Request"). I am writing on behalf of Bloomberg to appeal the denial of the Request.

1.      The Request and Response

On April 7, 2008, Mr. Torres electronically submitted to the Board of Governors of the Federal Reserve System (the "Board") the Request, which seeks "[a]ll documents reflecting or concerning the portfolio of securities (listed on a security-by-security basis, with CUSIP numbers if available), supporting the loan extended by the Federal Reserve in connection with the proposed acquisition of Bear Stearns Cos. by JP Morgan Chase & Co." Following the submission of the Request, phone calls were exchanged between Mr. Torres and Alison Thro, Senior Counsel for the Board, and between my firm and Ms. Thro. The Board finally responded formally to the Request in a letter dated September 30, 2008. (Exhibit 1.) In that letter, the Board denies the Request stating, "Staff searched Board records and made suitable inquires, but found no documents that are responsive to your request." In the footnote to that sentence, however, the Board states:

> Staff has confirmed that documents responsive to your request are
> located at the Federal Reserve Bank of New York. I have determined
> that these documents are not 'records of the Board' under the Act.
> Nevertheless, even if they were deemed to be 'records of the Board,' I
> have confirmed that the documents would be exempt in full from
> disclosure under exemption 4 of the Act.

Freedom of Information Office
October 14, 2008
Page 2

2.    **Argument**

   a.    Documents located at the Federal Reserve Bank of New York are Board Records under
          the Act.

The Board must make its Records available to the public if not exempt from disclosure. _See_ 5 U.S.C.
§ 552 _et seq._; 12 C.F.R. §§ 261.10-12. "Records of the Board include: (i) In written form, or in
nonwritten or machine-readable form; all information coming into the possession and under the control
of the Board, any Board member, any Federal Reserve Bank, or any officer, employee, or agent of the
Board or of any Federal Reserve Bank, in the performance of functions for or on behalf of the Board
that constitute part of the Board's official files; or (ii) That are maintained for administrative reasons in
the regular course of business in official files in any division or office of the Board or any Federal
Reserve Bank in connection with the transaction of any official business." 12 C.F.R. § 261.2(i)(1)
(emphasis added). Therefore, as we had explained to Ms. Thro in a letter dated August 18, 2008
(Exhibit 2), even if the records are in the possession of the Federal Reserve Bank of New York, they
are still Board Records, and the Board must produce them in response to the Request.

   b.    The requested records are not exempt from disclosure under exemption 4.

Exemption 4 exempts from disclosure "trade secrets and commercial or financial information obtained
from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Information is confidential if
disclosure would likely (1) impair the government's ability to obtain necessary information in the
future, or (2) cause substantial competitive harm to the person from whom the information was
obtained. _See_ Continental Stock Transfer & Trust Co. v. S.E.C., 566 F.2d 373 (2d Cir. 1977). Neither
of these conditions is met here because the Federal Reserve Bank (the "Fed") in effect owns the
portfolio of securities that is the subject of Bloomberg's Request. As the Fed stated in a press release
regarding the portfolio:

> The New York Fed will take, through a limited liability company formed
> for this purpose, control of a portfolio of assets valued at $30 billion as
> of March 14, 2008. The assets will be pledged as security for $29 billion
> in term financing from the New York Fed at its primary credit rate.

Statement on Financing Arrangement of JPMorgan Chase's Acquisition of Bear Stearns, March 24,
2008, http://www.newyorkfed.org/newsevents/news/markets/2008/rp080324.html. "BlackRock
Financial Management Inc. has been retained by the New York Fed to manage and liquidate the
assets." Summary of Terms and Conditions Regarding the JPMorgan Chase Facility, March 24, 2008,
http://www.newyorkfed.org/newsevents/news/markets/2008/rp080324b.html. Therefore, the gains or
losses from the portfolio belong to the taxpayers, and the taxpayers have a right to know about their
investment and the associated risks.

Please feel free to contact me directly at (212) 728-8657 if you have any questions regarding this
appeal.

Freedom of Information Office
October 14, 2008
Page 3

Very truly yours,

Thomas Golden

Enclosures

cc:     Charles Glasser
        Media Counsel, Bloomberg L.P.

        Craig Torres

        Alison Thro
        Senior Counsel
        Board of Governors of the Federal Reserve System
        20th & Constitution Avenues, NW
        Washington, DC 20551

# Exhibit 1

*ATTN. Jared Cohen*



BOARD OF GOVERNORS
OF THE
FEDERAL RESERVE SYSTEM
WASHINGTON, D. C. 20551

ADDRESS OFFICIAL CORRESPONDENCE
TO THE BOARD

September 30, 2008

Mr. Craig Torres
Bloomberg
1399 New York Avenue, NW
Washington, DC 20005-4711

Dear Mr. Torres:

This is in response to your letter dated and received by the Board's
Freedom of Information office on April 7, 2008. Pursuant to the Freedom of
Information Act (the "Act"), 5 U.S.C. § 552, you request:

> "[a]ll documents reflecting or concerning the portfolio of
> securities (listed on a security-by-security basis, with CUSIP
> numbers if available), supporting the loan extended by the
> Federal Reserve in connection with the proposed acquisition of
> Bear Stearns Cos. by JP Morgan Chase & Co."

Staff searched Board records and made suitable inquiries, but found no
documents that are responsive to your request.[1] Accordingly, we cannot provide
you with any information. A determination that no responsive records exist is
considered to be an "adverse determination" under the Act. You may appeal this
determination in accordance with section 261.13(i) of the Board's Rules
Regarding Availability of Information, a copy of which is enclosed for your
information.

Very truly yours

Jennifer J. Johnson
Secretary of the Board

Enclosure

---

[1] Staff has confirmed that documents responsive to your request are located at the
Federal Reserve Bank of New York. I have determined that these documents are
not "records of the Board" under the Act. Nevertheless, given if they were deemed
to be "records of the Board," I have confirmed that the documents would be
exempt in full from disclosure under exemption 4 of the Act.

RULES REGARDING AVAILABILITY OF INFORMATION 12 CFR 261. AS
AMENDED NOVEMBER 19, 1997
SECTION 261.13(i)

(i)  Appeal of denial of request. Any person denied access to Board records requested
under section 261.12 may file a written appeal with the Board, as follows:

(1)  The appeal shall prominently display the phrase FREEDOM OF
INFORMATION ACT APPEAL on the first page, and shall be addressed to
the Freedom of Information Office, Board of Governors of the Federal
Reserve System, 20th & C Street, N.W., Washington, D.C. 20551; or sent by
facsimile to the Freedom of Information Office, (202) 872-7565.

(2)  An initial request for records may not be combined in the same letter with an
appeal.

(3)  The appeal shall be filed within 10 working days of the date on which the
denial was issued, or the date on which documents in partial response to the
request were transmitted to the requester, whichever is later. The Board may
consider an untimely appeal if—

(i)  it is accompanied by a written request for leave to file an untimely
appeal; and

(ii)  the Board determines, in its discretion and for good and substantial
cause shown, that the appeal should be considered.

(4)  The Board shall make a determination regarding any appeal within 20
working days of actual receipt of the appeal by the Freedom of Information
Office, and the determination letter shall notify the appealing party of the right to
seek judicial review.

(5)  The secretary may reconsider a denial being appealed if intervening
circumstances or additional facts not known at the time of the denial come to the
attention of the secretary while an appeal is pending.

# Exhibit 2

# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

August 18, 2008

### BY FEDEX AND FAX TO (202) 872-7565

Alison Thro
Senior Counsel
Board of Governors of the Federal Reserve System
20th & Constitution Avenue, NW
Washington, DC 20551
(202) 452-3236

Re:    Freedom of Information Act, Request No. 2008100278

Dear Ms. Thro:

As I stated in our phone call on August 4, 2008, this firm represents Bloomberg L.P. ("Bloomberg") and its reporter Craig Torres in connection with their above-referenced Freedom of Information Act ("FOIA") request (the "Request"), electronically submitted to the Board of Governors of the Federal Reserve System (the "Board") on April 7, 2008. To this date, more than four months after the Board received our Request, we have yet to receive a substantive response.

The Request seeks "[a]ll documents reflecting or concerning the portfolio of securities (listed on a security-by-security basis, with CUSIP numbers if available), supporting the loan extended by the Federal Reserve in connection with the proposed acquisition of Bear Stearns Cos. by JP Morgan Chase & Co." To save the Board time in responding to the Request, as Mr. Torres stated to you over the phone, we do not require all responsive documents, but simply any one document showing the list of securities supporting the loan (the "List").

In my phone conversation with you, you stated that based on your conversations with the appropriate employees of the Board, you believe that the Board does not have a copy of the List, but you stated that The Federal Reserve Bank of New York (the "NY Fed") has it. You implied that the Board, therefore, had no obligation to produce the List in response to the Request. If that is in fact the Board's position, we urge the Board to reconsider it. In any event, we request that the Board state its position in writing.

The Board must make its Records available to the public if not exempt from disclosure. See 5 U.S.C. § 552 et seq.; 12 C.F.R. §§ 261.10-12. "Records of the Board include: (i) In written form, or in nonwritten or machine-readable form; all information coming into the possession and under the control

August 18, 2008
Page 2

of the Board, any Board member, <u>any Federal Reserve Bank</u>, or any officer, employee, or agent of the Board or <u>of any Federal Reserve Bank</u>, in the performance of functions for or on behalf of the Board that constitute part of the Board's official files; or (ii) That are maintained for administrative reasons in the regular course of business in official files in any division or office of the Board <u>or any Federal Reserve Bank</u> in connection with the transaction of any official business." 12 C.F.R. § 261.2(i)(1) (emphasis added). Therefore, even if, as you suggest, the List is in the possession of the NY Fed, it is still a Board Record, and the Board must produce it in response to our Request.

If we do not receive a response to our Request by September 1, 2008 (nearly 5 months after you received the Request), we will consider your failure to respond to be a denial, as FOIA provides, and we will consider our options in moving to vindicate the public's right to know.

Very truly yours,

Jared Cohen

cc:    Charles J. Glasser, Esq.
       Media Counsel, Bloomberg News

       Craig Torres
       Reporter, Bloomberg News

4425476.4

# Exhibit 9



BOARD OF GOVERNORS
OF THE
FEDERAL RESERVE SYSTEM
WASHINGTON, D. C. 20551

KEVIN M. WARSH
MEMBER OF THE BOARD

November 7, 2008

Mr. Thomas Golden
Wilkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019-6099

Dear Mr. Golden:

This is in response to your letter dated and received by the Board's Freedom
of Information office on October 14, 2008, in which you appeal, on behalf of
Bloomberg L.P. and its reporter, Craig Torres, pursuant to 12 CFR 261.13(i), the
determination of the Secretary of the Board ("Secretary") on Mr. Torres' request
under the Freedom of Information Act ("the Act" or "FOIA"), 5 U.S.C. § 552. By
letter dated April 7, 2008, Mr. Torres requested:

> "[a]ll documents reflecting or concerning the portfolio of securities
> (listed on a security-by-security basis, with CUSIP numbers if
> available), supporting the loan extended by the Federal Reserve in
> connection with the proposed acquisition of Bear Stearns Cos. by
> JP Morgan Chase & Co."

Staff interpreted the request as seeking transaction-specific documents regarding
securities posted as collateral for the loan and not as seeking high level information
regarding classes or categories of eligible collateral.

By letter dated September 30, 2008, the Secretary informed Mr. Torres that
staff had searched Board records and made suitable inquiries but had found no
documents that were responsive to his request. The Secretary advised that
documents otherwise responsive to the request were located at the Federal Reserve
Bank of New York ("FRBNY"), but that these were not considered to be "records
of the Board" subject to the Act. The Secretary further noted that even if the

documents were deemed to be records of the Board, the information contained in them would be exempt in full from disclosure under exemption 4 of FOIA, 5 U.S.C. § 552(b)(4).

By your appeal, you challenge the Secretary's determination that otherwise responsive documents located at the FRBNY are not "records of the Board" under the Act. You also challenge the Secretary's determination that exemption 4 of FOIA would provide a valid basis for withholding these documents, assuming that they are properly considered "records of the Board" under the Act.

I have confirmed that the documents sought by your request are located at the FRBNY, not the Board. By regulation, certain documents located at the Reserve Bank may be "records of the Board" subject to the Act. The documents you seek, however, do not fall within this narrow category of records. The Board's "Rules Regarding Availability of Information" define the term "record of the Board" to include, among other things, "all information coming into the possession and under the control of the Board, [or] any Federal Reserve Bank ... in the performance of functions for or on behalf of the Board ...." 12 CFR 261.2(i)(1)(i) (emphasis added). The "records" nature of the documents you seek thus depends on whether the Reserve Bank possesses the documents as part of a Board-delegated function.

I have reviewed the authority and circumstances under which the Reserve Bank obtained and possesses the documents you seek. Essentially, the Reserve Bank obtained the documents as part of its administration of a loan extended by the Reserve Bank to facilitate the acquisition of Bear Stearns by J.P. Morgan Chase & Co. (JPMC). Although the loan was made under emergency and other circumstances necessitating Board involvement, these circumstances did not convert an otherwise commercial action into a Board (agency) function. At no time did the Board or Board staff obtain, review, or rely upon these documents. Accordingly, I conclude that the documents are not "records of the Board" subject to the Act.

Even if the documents at issue were deemed to be "records of the Board," I have confirmed that the documents would be exempt in full from disclosure under exemption 4 of FOIA. Information in the possession of an agency is exempt from disclosure if it falls within one or more of the enumerated FOIA exemptions. See 5 U.S.C. § 552(b)(1)-(9). Exemption 4 of FOIA permits agencies to withhold "trade secrets and commercial or financial information obtained from a person

[that is] privileged or confidential." 5 U.S.C. § 522(b)(4). Courts have construed this exemption to permit agencies to withhold information if disclosure is likely (1) to affect the reliability or availability of information the agency would receive in the future, or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained. See National Parks and Conservation Assoc. v. Morton, 498 F.2d 765 (D.C. Cir. 1974).

I have confirmed that the information you seek is confidential commercial information. The information at issue contains confidential commercial business information regarding securities pledged as collateral in connection with JPMC's acquisition of Bear Stearns. The release of this information would cause commercial and competitive harm to JPMC by revealing detailed non-public financial information concerning the financing arrangement regarding its acquisition of Bear Stearns. Such information would be properly withheld under exemption 4.

I have further determined that even if the documents were determined to be "records of the Board," they also would be exempt from disclosure in full under exemption 5 of FOIA. Exemption 5 of FOIA permits the government to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court has held that this exemption encompasses a privilege analogous to the qualified privilege for confidential commercial information available in civil discovery under Rule 26(c)(7) of the Federal Rules of Civil Procedure. See FOMC v. Merrill, 443 U.S. 340, 359 (1979). The Court noted, "[T]he sensitivity of the commercial secrets involved, and the harm that would be inflicted upon the government by premature disclosure, should continue to serve as relevant criteria in determining the applicability of this Exemption 5 privilege." 443 U.S. at 363. I find that the disclosure of the information at issue would harm the financial interests of the FRBNY and hamper its ability to maximize recovery on the emergency loan to JPMC. The disclosure would also hamper the FRBNY's ability to minimize the risk of causing financial instability to the market.

Based on a de novo review of the Secretary's decision, and on the recommendation of counsel regarding the legal issues involved, I affirm the Secretary's decision that documents responsive to your request are not records of the Board subject to the Act. I also affirm that even if such documents were deemed to be records of the Board, they would be exempt in full from disclosure

under exemption 4. I also find that if the documents were records of the Board, they would be exempt in full from disclosure under exemption 5 of the Act. Accordingly, your appeal is denied. If you believe that the Board is withholding information from you contrary to your legal rights, you may seek judicial review of my decision in an appropriate United States District Court pursuant to 5 U.S.C. § 552(a)(4)(B).

Sincerely,