UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

BLOOMBERG L.P.,                                    :

                              Plaintiff,           :        Case No. 08 CV 9595

          - against -                              :        PLAINTIFF'S STATEMENT OF
                                                            MATERIAL FACTS NOT IN
BOARD OF GOVERNORS OF THE                          :        DISPUTE
FEDERAL RESERVE SYSTEM,
                                                   :
                              Defendant.
------------------------------------------------------------x

Dockets.Justia.com

Pursuant to Rule 56.1(b) of the Local Civil Rules for the United States District Court for

the Southern District of New York, Plaintiff Bloomberg L.P. ("Bloomberg") submits the

following Statement of Undisputed Facts in support of its Cross-Motion for Summary Judgment.

Bloomberg Statement No. 1

On April 7, 2008, Bloomberg reporter Craig Torres submitted through the Board's

website an electronic FOIA request (the "Bear Request") seeking certain records (the "Bear

Records") concerning a transaction involving Bear Stearns. (Thro Decl., ¶ 22, Ex. 6.)[1]  In

particular, the Bear Request sought "[a]ll documents reflecting or concerning the portfolio of

securities (listed on a security-by-security basis, with CUSIP numbers if available), supporting

the loan extended by the Federal Reserve in connection with the proposed acquisition of Bear

Stearns Cos. by JP Morgan Chase & Co." (Thro Decl., ¶ 22, Ex. 6.)

Bloomberg Statement No. 2

Under FOIA, the Fed was required to respond to the Bear Request by May 5, 2008,

which was 20 business days after the date on which Bloomberg submitted it.  5 U.S.C.

_____

[1] References to "Thro Decl." are to the Declaration of Alison M. Thro, sworn to on February 26,
2009, and submitted in support of the Board's motion.

§ 552(a)(6)(A)(i). The Fed responded to the Bear Request by issuing a denial dated September 30, 2008. (Thro Decl., ¶ 29, Ex. 7.) In that denial, the Fed stated: "Staff searched Board records and made suitable inquiries, but found no documents that are responsive to your request." (Thro Decl., ¶ 29, Ex. 7.) In a footnote to that sentence, however, the Fed admitted:

> Staff has confirmed that documents responsive to your request are located at the Federal Reserve Bank of New York. I have determined that these documents are not "records of the Board" under the Act. Nevertheless, even if they were deemed to be "records of the Board," I have confirmed that the documents would be exempt in full from disclosure under exemption 4 of the Act.

(Thro Decl., ¶ 29, Ex. 7.)

Bloomberg Statement No. 3

Bloomberg appealed that denial in a letter dated October 14, 2008. (Thro Decl., ¶ 30, Ex. 8.) In its appeal, Bloomberg argued that under 12 C.F.R. §§ 261.10-12, even if the records were in the possession of the NY Fed, the Board was still required to produce them in response to the Bear Request. (Thro Decl., ¶ 30, Ex. 8.) Bloomberg also argued that Exemption 4 did not apply to the requested records. (Thro Decl., ¶ 30, Ex. 8.)

Bloomberg Statement No. 4

In a letter dated November 7, 2008, the Board denied Bloomberg's appeal. (Thro Decl., ¶ 31, Ex. 9.) In doing so, the Board stated that some records in the possession of the NY Fed were Board records, but also stated that the Bear Records were not Board records, stating:

> [The NY Fed] obtained the [Bear Records] as part of its administration of a loan extended by the [NY Fed] to facilitate the acquisition of Bear Stearns by J.P. Morgan Chase & Co. (JPMC). Although the loan was made under emergency and other circumstances necessitating Board involvement, these circumstances did not convert an otherwise commercial action into a Board (agency) function. At no time did the Board or Board staff obtain, review, or rely upon these documents. Accordingly, I conclude that the documents are not 'records of the Board' subject to [FOIA].

(Thro Decl., ¶ 31, Ex. 9.)

Bloomberg Statement No. 5

In its November 7, 2008 denial, the Board also claimed that even if the Bear Records were Board records, they would be exempt from disclosure under FOIA Exemption 4, which allows agencies to withhold certain specified types of confidential commercial information. (Thro Decl., ¶ 31, Ex. 9.) In addition, for the first time, the Board argued that the documents were immune from disclosure under FOIA Exemption 5, which allows agencies to withhold from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). (Thro Decl., ¶ 31, Ex. 9.)

Bloomberg Statement No. 6

The Bear Records in the possession of the NY Fed are Board records and were required to be provided to Bloomberg in response to the Bear Request. The Board improperly withheld the Bear Records in the possession of the NY Fed from the Board's production of documents to Bloomberg in response to the Bear Request.

Bloomberg Statement No. 7

The documents responsive to the Bear Request are subject to FOIA and are not exempt from disclosure under either FOIA Exemption 4 or FOIA Exemption 5. Thus, the Board was required to provide to Bloomberg all documents responsive to the Bear Request. The Board improperly claimed that the Bear Records are exempt from disclosure and improperly withheld those documents from the Board's production to Bloomberg in response to the Bear Request.

Bloomberg Statement No. 8

On May 21, 2008, Bloomberg reporter Mark Pittman submitted to the Board a FOIA

request (the "Loan Record Request") seeking certain records (the "Loan Records"). The Loan

Record Request stated:

> For all securities posted between April 4, 2008 and May 20, 2008 as
> collateral to the Primary Dealer Credit Facility, the discount window, the
> Term Securities Lending Facility, and the Term Auction Facility (the
> "Relevant Securities"), we request copies of:
>
> 1.     all forms and other documents submitted by the party posting the
> Relevant Securities as part of the application for the loan;
>
> 2.     all receipts and other documents given to the party posting the
> Relevant Securities as part of the application for the loan;
>
> 3.     records sufficient to show the names of the Relevant Securities;
>
> 4.     records sufficient to show the dates that the Relevant Securities
> were accepted and the dates that the Relevant Securities were redeemed;
>
> 5.     records sufficient to show the amount of borrowing permitted as
> compared to the face value, also known as the "haircut";
>
> 6.     records sufficient to describe whether valuations or "haircuts" for
> the Relevant Securities changed over time;
>
> 7.     records sufficient to show the terms of the loans and the rates that
> the borrowers must pay;
>
> 8.     records sufficient to show the amount that the Federal Reserve has
> accepted of each of the Relevant Securities;
>
> 9.     records sufficient to show which, if any, Relevant Securities have
> been rejected as collateral and the reasons for the rejections;
>
> 10.    all databases and spreadsheets that list or summarize the Relevant
> Securities; and
>
> 11.    records, including contracts with outside entities, that show the
> employees or entities being used to price the Relevant Securities and to
> conduct the process the lending.
>
> (Thro Decl., ¶ 5, Ex. 1.)

Bloomberg Statement No. 9

Under FOIA, the Fed was required to respond to the Loan Record Request by June 18, 2008, which was 20 business days after the date on which Bloomberg submitted the Loan Record Request. 5 U.S.C. § 552(a)(6)(A)(i). One day after a response was due, in a letter dated June 19, 2008, the Fed acknowledged that it had received the Loan Record Request, and unilaterally invoked its right to extend its response time until July 3, 2008. (Thro Decl., ¶ 6, Ex. 3.)

Bloomberg Statement No. 10

The Board did not formally respond to the Loan Record Request until it issued a letter dated December 9, 2008 (after Bloomberg filed its Complaint and Amended Complaint in this case), in which it informed Bloomberg that it had located 231 responsive documents (the "Remaining Term Reports"), but claimed that all of the information in those documents was exempt from disclosure under FOIA Exemption 4 because it constituted confidential commercial information. (Thro Decl., ¶ 16, Ex. 5.) According to the Board, the Remaining Term Reports allegedly disclose the names of borrowers, the type of institution, the originating Federal Reserve district, the type of credit extended, the origination and maturity dates of the loans, and the individual loan amounts. (Br. 16.) The Board also maintained that the documents were exempt from disclosure under FOIA Exemption 5. (Thro Decl., ¶ 16, Ex. 5.) The Board also maintained that documents held by the NY Fed are not subject to FOIA. (Thro Decl., ¶¶ 16, 21, Ex. 5.)

Bloomberg Statement No. 11

The Loan Records in the possession of the NY Fed are Board records and were required to be provided to Bloomberg in response to the Loan Record Request. The Board improperly withheld the Loan Records in the possession of the NY Fed from the Board's production of documents to Bloomberg in response to the Loan Record Request.

Bloomberg Statement No. 12

The documents responsive to the Loan Record Request are subject to FOIA and are not exempt from disclosure under either FOIA Exemption 4 or FOIA Exemption 5. Thus, the Board was required to provide to Bloomberg all documents responsive to the Loan Record Request. The Board improperly claimed that the Loan Records are exempt from disclosure and improperly withheld those documents from the Board's production to Bloomberg in response to the Loan Record Request.

Bloomberg Statement No. 13

Many companies have disclosed their participation in the Term Auction Facility program, including the following:

- Bank of America Corporation (Rose Decl., Ex. 39, Form 10-K for the period ending Dec. 31, 2008 at 15) ("We are currently utilizing TAF and have pledged residential, commercial mortgage and credit card loans as collateral.");

- BOK Financial Corp. (Rose Decl., Ex. 40, Form 10-K for the period ending Dec. 31, 2008 at 51) ("In 2008, the subsidiary banks began borrowing funds under the Federal Reserve Bank Term Auction Facility program. . . . Funds borrowed under this program totaled $450 million at December 31, 2008.");

- Colonial Bancgroup Inc. (Rose Decl., Ex. 41, Form 10-K for the period ending Dec. 31, 2008 at 55) ("Short-term borrowings consist of . . . Federal Reserve Tem Auction Facility (TAF) funds. . . . from December 31, 2007 to December 31, 2008 . . . Colonial purchased $700 million in Federal Reserve TAF funds");

- Metlife Inc. (Rose Decl., Ex. 43, Form 10-K for the period ending Dec. 31, 2008 at 144) ("At December 31, 2008, MetLife Bank had borrowed $950 million under the Term Auction Facility for various short-term maturities.");

- Sterling Financial Corp. (Rose Decl., Ex. 42, Form 10-K for the period ending Dec. 31, 2008 at 67) ("Sterling is also eligible to participate in the Term Auction Facility . . . . Sterling has utilized this source of funds to the extent that these funds are more competitive than other sources."); and

- Comerica Inc. (Rose Decl., Ex. 44, Form 10-Q for the period ending Sept. 30, 2008 at 45) ("Short-term borrowings increased $818 million to $3.6 billion at September 30, 2008, from $2.8 billion at December 31, 2007, primarily due to borrowings under the Federal Reserve Term Auction Facility. . . .").

Bloomberg Statement No. 14

Borrowers also have disclosed their participation (or eligibility to participate) in the Primary Dealer Credit Facility ("PDCF") and the Term Securities Lending Facility ("TSLF"), including: Bank of America Corporation (Rose Decl., Ex. 39); Goldman Sachs Group Inc. (Rose Decl., Ex. 45); Merrill Lynch & Co. (Rose Decl., Ex. 46); and Morgan Stanley (Rose Decl., Ex. 38).

Bloomberg Statement No. 16

The market has reacted positively to news that an institution received government aid. See, e.g., Rose Decl., Exs. 47 (Bradley Keoun, Citigroup Gets U.S. Rescue From Toxic Losses, Capital Infusion, Bloomberg News, Nov. 24, 2008 (Citigroup Inc.'s stock surged 64% after the market learned that it received a "government rescue package that shields the bank from losses on toxic assets and injects $20 billion of capital")), 48 (Josh Fineman, E*Trade Shares Surge on Optimism Firm Will Get TARP Funding, Bloomberg News, Nov. 25, 2008 (E*Trade Financial Corp.'s stock surged 42% after the company announced that it was "optimistic" that it would receive funds from the government's Troubled Asset Relief Program)), 49 (Jonathan Stempel & Kevin Krolicki, GM, GMAC Ease Lending Rules to Entice Car Buyers, Reuters, Dec. 30, 2008 (General Motors Corp.'s shares increased 5.6% after announcing that its GMAC funding affiliate would receive $6 billion in TARP funding)), 50 (Greg Sushinsky, PNC Gobbles Up National City, Investopedia, Nov. 4, 2008 (PNC Financial Services Group's stock price increased $2 to $58.58 when it announced a deal to acquire National City Corp. using $5.58 billion in funds PNC received through the TARP program)).

Dated: New York, New York
       April 15, 2009

                        WILLKIE FARR & GALLAGHER LLP

                        By:_____
                            Thomas H. Golden
                            Scott S. Rose
                            Jared E. Cohen

                            787 Seventh Avenue
                            New York, New York 10019
                            (212) 728-8000
                            tgolden@willkie.com
                            srose@willkie.com
                            jcohen@willkie.com

                            Attorneys for Plaintiff Bloomberg L.P.

Of Counsel:

Charles J. Glasser, Jr., Esq.
Global Media Counsel, Bloomberg News
731 Lexington Avenue
New York, New York 10022
(212) 617-4529
cglasser@bloomberg.net