

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
BLOOMBERG L.P.,                                            :
                                 Plaintiff,    :    Case No. 08 CV 9595

                                 - against -    :    PLAINTIFF'S RESPONSE TO
                                                              DEFENDANT'S STATEMENT OF
BOARD OF GOVERNORS OF THE         :    MATERIAL FACTS NOT IN
FEDERAL RESERVE SYSTEM,              DISPUTE
                                                           :
                                Defendant.
-----------------------------------------------------------x

Pursuant to Rule 56.1(b) of the Local Civil Rules for the United States District Court for the Southern District of New York, Plaintiff, Bloomberg L.P. ("Bloomberg"), submits the following response to Statement of Undisputed Facts submitted by Defendant Board of Governors of the Federal Reserve System (the "Board").

*The Loan Request*

Board Statement No. 1

    On or around May 21, 2008, Mark Pittman, a reporter for the plaintiff, Bloomberg News, sent an e-mail to the Board requesting documents under FOIA (the "Loan Request"). The Loan Request sought eleven categories of documents with respect to securities posted between April 4, 2008 and May 20, 2008 as collateral for the Primary Dealer Credit Facility ("PDCF"), the Discount Window ("DW"), the Term Securities Lending Facility ("TSLF") and the Term Auction Facility ("TAF") (the "Relevant Securities"). Declaration of Alison M. Thro, executed February 26, 2009 ("Thro Decl."), ¶ 5.

Bloomberg Response to Board Statement No. 1

*Bloomberg does not dispute this statement.*

Board Statement No. 2

    With respect to the Relevant Securities, the Loan Request sought: (1) all forms and other documents submitted by the party posting the Relevant Securities as part of the application for the loan; (2) all receipts and other documents given to the party posting

the Relevant Securities as part of the application for the loan; (3) records sufficient to show the names of the Relevant Securities; (4) records sufficient to show the dates that the Relevant Securities were accepted and the dates that the Relevant Securities were redeemed; (5) records sufficient to show the amount of borrowing permitted as compared to the face value, also known as the "haircut"; (6) records sufficient to describe whether valuations or "haircuts" for the Relevant Securities changed over time; (7) records sufficient to show the terms of the loans and the rates the borrowers must pay; (8) records sufficient to show the amount that the Federal Reserve has accepted of each of the Relevant Securities; (9) records sufficient to show which, if any, Relevant Securities have been rejected as collateral and the reasons for the rejections; (10) all databases and spreadsheets that list or summarize the Relevant Securities; and (11) records, including contracts with outside entities, that show the employees or entities being used to price the Relevant Securities and to conduct the process of the lending. Thro Decl., ¶ 5.

Bloomberg Response to Board Statement No. 2

*Bloomberg does not dispute this statement.*

Board Statement No. 3

Board staff conducted a thorough search for documents responsive to the Loan Request, which included contacting 13 individuals in the Board's division of Monetary Affairs ("MA") and Reserve Bank Operations and Payment Systems ("RBOPS"), the only two divisions of the Board reasonably likely to have responsive information. Thro Decl., ¶¶ 7-8, 17-18. The individuals contacted reported to staff in the Board's Legal Division whether or not they believed they had responsive information and, where appropriate, searched their files or asked members of their staff to search their files, and reported the results of these searches to staff in the Legal Division. Thro Decl., ¶¶ 9, 15, 17. As a result of these searches, Board staff located 2 pages of non-exempt, responsive information and 231 pages of responsive documents that were exempt from disclosure under FOIA. Thro Decl., ¶¶ 12-15.

Bloomberg Response to Board Statement No. 3

*Bloomberg lacks sufficient information to respond to the first and second sentences of this statement, but disputes that the Board's search was sufficiently "thorough" to satisfy its obligations under the Freedom of Information Act ("FOIA"). Bloomberg disputes the third sentence of this statement to the extent that it claims the responsive documents were exempt from disclosure under FOIA and otherwise lacks sufficient information to respond to the third sentence of this statement.*

Board Statement No. 4

    By letter dated December 9, 2008 to the plaintiff, the Secretary of the Board granted in part and denied in part the Loan Request. Thro Decl., ¶ 16 and Exh. 5. The December 9, 2008 letter informed the plaintiff that staff had uncovered information responsive in part to item 11 of the Loan Request. Id. Staff determined that the information responsive in part to item 11 was not exempt under FOIA. Id. That information, totaling approximately two pages, with non-responsive information redacted, was provided to the plaintiff under separate cover. Thro Decl., ¶ 15.

Bloomberg Response to Board Statement No. 4

*Bloomberg refers to the December 9, 2008 letter for the contents thereof and states that it lacks sufficient information to respond as to whether the redacted information was "non-responsive." Bloomberg addresses the accuracy of the claims in the December 9, 2008 letter, which it disputes, in its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Its Cross-Motion for Summary Judgment.*

Board Statement No. 5

    The December 9, 2008 letter informed the plaintiff that staff had located approximately 231 full pages of documents (the "Remaining Term Reports") that contained limited information, including the names of borrowers, originating Federal Reserve Bank district, individual loan amounts and origination and maturity dates responsive in part to item 7 of the Loan Request. Thro Decl., ¶ 16 and Exh. 5. The letter informed the plaintiff that the Board was withholding this information in its entirety under exemptions 4 and 5 of FOIA. Id.

Bloomberg Response to Board Statement No. 5

*Bloomberg refers to the December 9, 2008 letter for the contents thereof. Bloomberg addresses the accuracy of the claims in the December 9, 2008 letter, which it disputes, in its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Its Cross-Motion for Summary Judgment.*

Board Statement No. 6

    The 231 pages of information withheld from the plaintiff constitute trade secrets or commercial or financial information, obtained from a person and privileged or

confidential. Thro Decl., ¶ 12 and Exh. 4. Disclosure of this information is likely to cause substantial competitive harm to the institutions whose loans are described in the Reports. Declaration of Brian F. Madigan, executed February 27, 2009 ("Madigan Decl."), ¶¶ 14, 17-24; Declaration of Susan E. McLaughlin, executed March 1, 2009 ("McLaughlin Decl."), ¶¶ 20-21, 25; Declaration of Lorie K. Logan, executed March 2, 2009 ("Logan Decl."), ¶¶ 21-22. Institutions borrowing at the DW and TAF face competition in the market for retail and commercial banking services from other domestic and international institutions. Madigan Decl., ¶ 17; McLaughlin Decl., ¶ 20. Primary dealers borrowing at the PDCF and TSLF face competition in the market for securities brokerage services from other primary dealers and domestic and international securities broker dealers. McLaughlin Decl, ¶ 25; Logan Decl, ¶ 21.

Bloomberg Response to Board Statement No. 6

*Bloomberg disputes this statement, which may contain legal conclusions. Bloomberg addresses this statement in its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Its Cross-Motion for Summary Judgment.*

Board Statement No. 7

Disclosure of information in the 231 pages will impair the Board's ability to fulfill its statutory functions, including: its ability, through the Federal Reserve Banks, to provide a back-up source of liquidity to depository institutions at the DW pursuant to section 10B and other provisions of the Federal Reserve Act ("FRA"); its ability to authorize the Federal Reserve Banks to provide funding to individuals, partnerships and corporations in unusual and exigent circumstances pursuant to section 13(3) of the FRA; and its ability to use the DW as in instrument of monetary policy "to promote effectively the goals of maximum employment, stable prices, and moderate long-term interest rates" specified in section 2A of the FRA, as amended. Madigan Decl., ¶¶ 14, 26-30; McLaughlin Decl., ¶¶ 23, 26; Logan Decl., ¶ 24. If financial institutions and primary dealers are unwilling to borrow at the DW, the TAF, the PDCF or the TSLF out of concern that the Board will publicly disclose the fact of their borrowings, the Board's ability to utilize these facilities as a back-up source of liquidity for depository institutions, as a source of credit for individuals, partnerships and corporations in unusual and exigent circumstances, and as a means to maximize employment, stabilize prices and moderate long-term interest rates will be impaired. Id.

Bloomberg Response to Board Statement No. 7

*Bloomberg disputes this statement, which may contain legal conclusions. Bloomberg addresses this statement in its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Its Cross-Motion for Summary Judgment.*

Board Statement No. 8

> The Remaining Term Reports are distributed to high-level staff within MA and RBOPS, and select staff at the FRBNY, on a need-to-know basis for use in formulating monetary policy and for Reserve Bank oversight purposes. Thro Decl., ¶ 11. The Reports are inter-agency or intra-agency memoranda which contain sensitive information, not otherwise available, immediate release of which would significantly harm the Government's monetary functions or commercial interests, because release would diminish the Board's and FOMC's ability to use DW lending as an instrument of monetary policy to achieve the desired level of short term interest rates and would impair the Reserve Banks' ability, if necessary, to maximize recovery on securities pledged as collateral for loans. Madigan Decl., ¶¶ 25, 27; Declaration of Helen E. Mucciolo, executed March 3, 2009 ("Mucciolo Decl."), ¶ 11.

Bloomberg Response to Board Statement No. 8

*Bloomberg lacks sufficient information to respond to the first sentence of this statement.*

*Bloomberg disputes the second sentence, which may contain legal conclusions.*

*Bloomberg addresses the second sentence in its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Its Cross-Motion for Summary Judgment.*

Board Statement No. 9

> Neither the Board, nor the Federal Reserve Bank of New York ("FRBNY") or the other 11 Federal Reserve Banks, publicly disclose the names of individual institutions that borrow at the DW, TAF, PDCF or TSLF, nor information about individual loan amounts, terms, rates for specific loans (although some general rate information is published), specific collateral pledged for specific loans, the valuation of specific loans vis-à-vis the collateral pledged (the "haircut"), collateral rejected for specific loans, or individual lending or collateral documentation. Madigan Decl., ¶ 16; McLaughlin Decl., ¶¶ 9, 16, 18; Logan Decl., ¶ 20. Neither the Board nor the Federal Reserve Banks publicly disclose the names of institutions eligible to borrow primary or secondary credit at the DW. Madigan Decl., ¶ 23. Financial institutions borrowing at the DW or TAF, and primary dealers borrowing at the PDCF and TSLF, have an understanding that the Board and Federal Reserve Banks will keep confidential information regarding their borrowing. McLaughlin Decl., ¶ 18; Logan Decl., ¶ 20. This information is kept confidential because of the stigma associated with borrowing at the DW, and the likelihood of substantial competitive harm to these institutions, should the fact of their borrowing become public. Madigan Decl., ¶¶ 16-17; McLaughlin Decl., ¶¶ 18-19. The likelihood of substantial competitive harm described above also applies with regard to institutions that borrow at

the TAF, PDCF and TSLF. Madigan Decl., ¶ 21; McLaughlin Decl., ¶¶ 19, 25; Logan Decl., ¶ 21.

Bloomberg Response to Board Statement No. 9

*Bloomberg lacks sufficient information to respond to the first, second, and third sentences of this statement. Bloomberg disputes the fourth and fifth sentences of this statement, which may contain legal conclusions. Bloomberg addresses the fourth and fifth sentences of this statement in its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Its Cross-Motion for Summary Judgment.*

Board Statement No. 10

With the exception of the 231 pages discussed above, and the information released to the plaintiff, the Board has no specific, transaction-level information (such as lending and collateral documents) responsive to the Loan Request because the Federal Reserve Banks, and in the case of the TSLF and the PDCF, the FRBNY, carry out the operational side of DW, TAF, TSLF and PDCF lending. Thro Decl., ¶¶ 20-21; McLaughlin Decl., ¶ 8, 15; Logan Decl., ¶ 15; Madigan Decl., ¶¶ 11-12. Accordingly, as Board staff confirmed with staff of the FRBNY, documents responsive to the Loan Request are maintained by or on behalf of the FRBNY. Thro Decl., ¶ 20; McLaughlin Decl., ¶¶ 9, 16; Logan Decl., ¶ 15. No Board staff member obtained, reviewed or relied upon transaction level documents responsive to the Loan Request in the course of performing any function for the Board. Thro Decl., ¶ 20. Staffs at the Board and at the FRBNY reasonably concluded that responsive documents at the FRBNY are not Board records subject to FOIA, and that these documents would nevertheless be exempt from disclosure under FOIA exemptions 4 and 5. Thro Decl., ¶ 21.

Bloomberg Response to Board Statement No. 10

*Bloomberg disputes this statement, which may contain legal conclusions. Bloomberg addresses this statement in its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Its Cross-Motion for Summary Judgment.*

## *The Bear Request*

Board Statement No. 11

    On or around April 7, 2008, the Board received an electronically submitted FOIA request from Craig Torres, a reporter for the plaintiff (the "Bear Request"). Thro Decl., ¶ 22. The Bear Request sought copies of "[a]ll documents reflecting or concerning the portfolio of securities (listed on a security-by-security basis, with CUSIP numbers if available), supporting the loan extended by the Federal Reserve in connection with the proposed acquisition of Bear Stearns Cos. by JP Morgan Chase & Co." Id.

Bloomberg Response to Board Statement No. 11

*Bloomberg does not dispute this statement.*

Board Statement No. 12

    Board staff conducted a thorough search for documents responsive to the Bear Request. Thro Decl., ¶¶ 23-27. In particular, Ms. Thro, the senior Legal Division attorney responsible for reviewing FOIA requests and the Bear Request, personally reviewed an electronic document repository created shortly after the Board's March 14, 2008 action authorizing the FRBNY to extend up to $30 billion in credit in connection with JPMC's acquisition of Bear Stearns. Thro Decl., ¶ 23. The repository was created in response to approximately 23 FOIA requests (including the Bear Request) and Congressional requests for information relating to the JPMC/Bear Stearns transaction. Some of those FOIA requests, like the Bear Request, sought documents relating to securities posted as collateral for the loan. Id.

Bloomberg Response to Board Statement No. 12

*Bloomberg lacks sufficient information to respond to this statement, but disputes that the*

*Board's search was sufficiently "thorough" to satisfy its obligations under FOIA.*

Board Statement No. 13[*]

    In creating the repository, Ms. Thro, working with other attorneys in the Board's Legal Division, contacted approximately 80 Board staff members in seven divisions (MA, RBOPS, Office of Board Members, Office of the Secretary, Legal, International Finance, and Banking Supervision and Regulation) who were involved in any aspect of JPMC's acquisition of Bear Stearns and the Board's authorization of the FRBNY's related loan. Thro Decl., ¶ 24. The attorneys held meetings with some of the staff members and contacted others by telephone and e-mail; described the FOIA and Congressional requests the Board had received, including requests for collateral-specific information, and asked the staff members to forward any potentially responsive documents to the Legal Division for inclusion in the repository. Id. Those attorneys considered the search

to be broad enough to capture all Board documents responsive to any FOIA request for information relating to the JPMC/Bear Stearns acquisition. Id. Ms. Thro reasonably believed that any Board record responsive to the Bear Request would be contained in this repository. Thro Decl., ¶ 25. Beginning in August 2008 and continuing through September 2008, Ms. Thro personally searched the repository and reviewed hard copies of some documents in the repository. Id. In addition, in August 2008, Ms. Thro personally confirmed with staffs in MA and RBOPS that they did not have documents responsive to the Bear Request. Thro Decl., ¶ 26. As the result of this search, Ms. Thro reasonably concluded that there were no Board records responsive to the Bear Request. Thro Decl., ¶¶ 25-26.

Bloomberg Response to Board Statement No. 13

*Bloomberg lacks sufficient information to respond to the first, second, fifth, and sixth sentences of this statement. Bloomberg disputes the third, fourth, and seventh sentences of this statement, which may contain legal conclusions. Bloomberg addresses the third, fourth, and seventh sentences in its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Its Cross-Motion for Summary Judgment.*

Board Statement No. 14

In responding to the Bear Request, Ms. Thro consulted with staff at the FRBNY. Thro Decl. ¶ 27. Ms. Thro confirmed that records regarding securities posted as collateral for the Bear Stearns Loan responsive to the Bear Request were maintained by or on behalf of the FRBNY, which had extended and administers the Bear Stearns Loan. Thro Decl., ¶ 27; Mucciolo Decl., ¶¶ 6-8. No Board staff member obtained, reviewed or relied upon these transaction-level documents in the course of performing any function for the Board. Thro Decl., ¶ 28. Board staff reasonably concluded that responsive documents at the FRBNY are not Board records subject to FOIA, and that these documents would nevertheless be exempt under FOIA exemptions 4 and 5. Thro Decl., ¶ 28.

Bloomberg Response to Board Statement No. 14

*Bloomberg lacks sufficient information to respond to the first sentence of this statement. Bloomberg disputes the second, third, and fourth sentences of this statement, which may contain legal conclusions. Bloomberg addresses the second, third, and fourth sentences*

*in its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Its Cross-Motion for Summary Judgment.*

Board Statement No. 15

By letter dated September 30, 2008, the Secretary of the Board informed Mr. Torres that staff had searched Board records and made suitable inquiries, but had found no documents responsive to the Bear Request. Thro Decl., ¶ 29 and Exh. 7. The letter informed plaintiff that documents responsive to the Bear Request were located at the FRBNY, that these were not "records of the Board" pursuant to FOIA, and that the documents, in any case, would be exempt in full from disclosure under FOIA exemption 4. Id.

Bloomberg Response to Board Statement No. 15

*Bloomberg refers to the September 30, 2008 letter for the contents thereof. Bloomberg disputes the second sentence of this statement insofar as it asserts anew the statements contained in the September 30, 2008 letter. Bloomberg addresses the accuracy of the claims in the September 30, 2008 letter, which it disputes, in its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Its Cross-Motion for Summary Judgment.*

Board Statement No. 16

By letter dated October 14, 2008, attorneys for the plaintiff appealed the Board's September 30, 2008 denial of the Bear Request. Thro Decl., ¶ 30 and Exh. 8. By letter dated November 7, 2008, a member of the Board denied plaintiff's October 14, 2008 appeal, concluding that responsive records at the FRBNY were not Board records subject to FOIA, and that such records were nevertheless exempt under FOIA exemptions 4 and 5. Thro Decl., ¶ 31 and Exh. 9.

Bloomberg Response to Board Statement No. 16

*Bloomberg does not dispute the first sentence in this statement. Bloomberg refers to the October 14, 2008 letter for the contents thereof. Bloomberg addresses the accuracy of the claims in the October 14, 2008 letter, which it disputes, in its Memorandum of Law in*

*Opposition to Defendant's Motion for Summary Judgment and in Support of Its Cross-Motion for Summary Judgment.*

Dated: New York, New York
April 15, 2009

                                                WILLKIE FARR & GALLAGHER LLP

                                                By: _____
                                                   Thomas H. Golden
                                                   Scott S. Rose
                                                   Jared E. Cohen

                                                   787 Seventh Avenue
                                                   New York, New York 10019
                                                   (212) 728-8000
                                                   tgolden@willkie.com
                                                   srose@willkie.com
                                                   jcohen@willkie.com

                                                 Attorneys for Plaintiff Bloomberg L.P.

Of Counsel:

Charles J. Glasser, Jr., Esq.
Global Media Counsel, Bloomberg News
731 Lexington Avenue
New York, New York 10022
(212) 617-4529
cglasser@bloomberg.net