UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BLOOMBERG L.P. | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civ. No. 08 CV 9595 (LAP) ) ) |
| BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, | ) ) ) ) |
| Defendant. | ) ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Rule 56.1 of the Local Civil Rules for the United States District Court for the Southern District of New York, Defendant, the Board of Governors of the Federal Reserve System ("Board"), submits the following response to the Statement of Material Facts Not in Dispute by plaintiff, Bloomberg L.P., filed April 15, 2009.

Bloomberg Statement No. 1

   On April 7, 2008, Bloomberg reporter Craig Torres submitted through the Board's website an electronic FOIA request (the "Bear Request") seeking certain records (the "Bear Records") concerning a transaction involving Bear Stearns.  (Thro Decl., ¶ 22, Ex. 6.)[1]  In particular, the Bear Request sought "[ a]ll documents reflecting or concerning the portfolio of securities (listed on a security-by-security basis, with CUSIP numbers if available), supporting the loan extended by the Federal Reserve in connection with the proposed acquisition of Bear Stearns Cos. by JP Morgan Chase & Co."  (Thro Decl., ¶ 22, Ex. 6.)

---

[1] References to "Thro Decl." are to the Declaration of Alison M. Thro, sworn to on February 26, 2009, and submitted in support of the Board's motion.

Board Response to Bloomberg Statement No. 1

*The Board does not dispute this statement.*

Bloomberg Statement No. 2

Under FOIA, the Fed was required to respond to the Bear Request by May 5, 2008, which was 20 business days after the date on which Bloomberg submitted it. 5 U.S.C. § 552(a)(6)(A)(i). The Fed responded to the Bear Request by issuing a denial dated September 30, 2008. (Thro Decl., ¶ 29, Ex. 7.) In that denial, the Fed stated: "Staff searched Board records and made suitable inquiries, but found no documents that are responsive to your request." (Thro Decl., ¶ 29, Ex. 7.) In a footnote to that sentence, however, the Fed admitted:

> Staff has confirmed that documents responsive to your request are located at the Federal Reserve Bank of New York. I have determined that these documents are not "records of the Board" under the Act. Nevertheless, even if they were deemed to be "records of the Board," I have confirmed that the documents would be exempt in full from disclosure under exemption 4 of the Act.
> (Thro Decl., ¶ 29, Ex. 7.)

Board Response to Bloomberg Statement No. 2

*The Board does not dispute that it responded to the Bear Request by letter dated September 30, 2008, and that a true and correct copy of that letter, which speaks for itself, is attached as Exh. 7 to the Thro Decl. The Board asserts that the date upon which the Board was required to respond to the Bear Request is not material.*

Bloomberg Statement No. 3

Bloomberg appealed that denial in a letter dated October 14, 2008. (Thro Decl., ¶ 30, Ex. 8.) In its appeal, Bloomberg argued that under 12 C.F.R. §§ 261.10-12, even if the records were in the possession of the NY Fed, the Board was still required to produce them in response to the Bear Request. (Thro Decl., ¶ 30, Ex. 8.) Bloomberg also argued that Exemption 4 did not apply to the requested records. (Thro Decl., ¶ 30, Ex. 8.)

Board Response to Bloomberg Statement No. 3

*The Board does not dispute that Bloomberg appealed the Board's denial of the Bear Request in a letter dated October 14, 2008, and that a true and correct copy of that letter, which speaks for itself, is attached as Exh. 8 to the Thro Decl.*

Bloomberg Statement No. 4

In a letter dated November 7, 2008, the Board denied Bloomberg's appeal. (Thro Decl., ¶ 31, Ex. 9.) In doing so, the Board stated that some records in the possession of the NY Fed were Board records, but also stated that the Bear Records were not Board records, stating:

> [The NY Fed] obtained the [Bear Records] as part of its administration of a loan extended by the [NY Fed] to facilitate the acquisition of Bear Steams by J.P. Morgan Chase & Co. (JPMC). Although the loan was made under emergency and other circumstances necessitating Board involvement, these circumstances did not convert an otherwise commercial action into a Board (agency) function. At no time did the Board or Board staff obtain, review, or rely upon these documents. Accordingly, I conclude that the documents are not 'records of the Board' subject to [FOIA].

(Thro Decl., ¶ 31, Ex. 9.)

Board Response to Bloomberg Statement No. 4

*The Board does not dispute that a member of the Board (acting on behalf of the Board) denied Bloomberg's appeal in a letter dated November 7, 2008, and that a true and correct copy of that letter, which speaks for itself, is attached as Exh. 9 to the Thro Decl.*

Bloomberg Statement No. 5

In its November 7, 2008 denial, the Board also claimed that even if the Bear Records were Board records, they would be exempt from disclosure under FOIA Exemption 4, which allows agencies to withhold certain specified types of confidential commercial information. (Thro Decl., ¶ 31, Ex. 9.) In addition, for the first time, the Board argued that the documents were immune from disclosure under FOIA Exemption 5, which allows agencies to withhold from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

(Thro Decl., ¶ 31, Ex. 9.)

Board Response to Bloomberg Statement No. 5

*The Board repeats and reincorporates its Response to Bloomberg Statement No. 4.*

Bloomberg Statement No. 6

The Bear Records in the possession of the NY Fed are Board records and were required to be provided to Bloomberg in response to the Bear Request. The Board improperly withheld the Bear Records in the possession of the NY Fed from the Board's production of documents to Bloomberg in response to the Bear Request.

Board Response to Bloomberg Statement No. 6

*Bloomberg Statement No. 6 is a legal conclusion, not a "material fact." To the extent that it is a statement of fact, the Board disputes Bloomberg Statement No. 6. As grounds, the Board cites Thro Decl.. ¶¶ 19, 27-28; Madigan Decl., ¶¶ 11-12; and Mucciolo Decl., ¶¶ 6-8, 10-11. The Board addresses its dispute with both sentences of Bloomberg Statement No. 6, and the Board's supporting evidence, on pp. 34-46 of the Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, filed March 4, 2009 ("Board's SJ Brief").*

Bloomberg Statement No. 7

The documents responsive to the Bear Request are subject to FOIA and are not exempt from disclosure under either FOIA Exemption 4 or FOIA Exemption 5. Thus, the Board was required to provide to Bloomberg all documents responsive to the Bear Request. The Board improperly claimed that the Bear Records are exempt from disclosure and improperly withheld those documents from the Board's production to Bloomberg in response to the Bear Request.

Board Response to Bloomberg Statement No. 7

*Bloomberg Statement No. 7 is a legal conclusion, not a "material fact." To the extent that it is a statement of fact, the Board disputes Bloomberg Statement No. 7 and, as grounds, repeats and reincorporates its Response to Bloomberg Statement No. 6.*

Bloomberg Statement No. 8

On May 21, 2008, Bloomberg reporter Mark Pittman submitted to the Board a FOIA request (the "Loan Record Request") seeking certain records (the "Loan Records"). The Loan Record Request stated:

> For all securities posted between April 4, 2008 and May 20, 2008 as collateral to the Primary Dealer Credit Facility, the discount window, the Term Securities Lending Facility, and the Term Auction Facility (the "Relevant Securities"), we request copies of:
>
> 1. all forms and other documents submitted by the party posting the Relevant Securities as part of the application for the loan;
>
> 2. all receipts and other documents given to the party posting the Relevant Securities as part of the application for the loan;
>
> 3. records sufficient to show the names of the Relevant Securities;
>
> 4. records sufficient to show the dates that the Relevant Securities were accepted and the dates that the Relevant Securities were redeemed;
>
> 5. records sufficient to show the amount of borrowing permitted as compared to the face value, also known as the "haircut";

4

6. records sufficient to describe whether valuations or "haircuts" for the Relevant Securities changed over time;

7. records sufficient to show the terms of the loans and the rates that the borrowers must pay;

8. records sufficient to show the amount that the Federal Reserve has accepted of each of the Relevant Securities;

9. records sufficient to show which, if any, Relevant Securities have been rejected as collateral and the reasons for the rejections;

10. all databases and spreadsheets that list or summarize the Relevant Securities; and

11. records, including contracts with outside entities, that show the employees or entities being used to price the Relevant Securities and to conduct the process the lending.

(Thro Decl., ¶ 5, Ex. 1.)

Board Response to Bloomberg Statement No. 8

*The Board does not dispute Bloomberg Statement No. 8, but avers that the parties have heretofore referred to plaintiff's May 21, 2008 e-mail as the "Loan Request," which terminology the Board will use, and further avers that a true and correct copy of the Loan Request, as received by the Board, is attached as Exh. 1 to the Thro Decl, and that the document speaks for itself.*

Bloomberg Statement No. 9

Under FOIA, the Fed was required to respond to the Loan Record Request by June 18, 2008, which was 20 business days after the date on which Bloomberg submitted the Loan Record Request. 5 U.S.C. § 552(a)(6)(A)(i).  One day after a response was due, in a letter dated June 19, 2008, the Fed acknowledged that it had received the Loan Record Request, and unilaterally invoked its right to extend its response time until July 3, 2008.  (Thro Decl., ¶ 6, Ex. 3.)

Board Response to Bloomberg Statement No. 9

*The Board does not dispute that it sent a letter acknowledging receipt of, and extending its time to process, the Loan Request, dated June 19, 2008, and that a true and correct copy of that letter, which speaks for itself, is attached as Exh. 3 to the Thro Decl.  The Board further avers that it acknowledged receipt of the Loan Request by letter dated May 21, 2008, a true and correct copy of which is attached as Exh. 2 to the Thro Decl.  The Board asserts that the date upon which the Board was required to respond to the Loan Request is not material.*

Bloomberg Statement No. 10

The Board did not formally respond to the Loan Record Request until it issued a letter dated December 9, 2008 (after Bloomberg filed its Complaint and Amended Complaint in this case), in which it informed Bloomberg that it had located 231 responsive documents (the "Remaining Term Reports"), but claimed that all of the information in those documents was exempt from disclosure under FOIA Exemption 4 because it constituted confidential commercial information. (Thro Decl., ¶ 16, Ex. 5.)  According to the Board, the Remaining Term Reports allegedly disclose the names of borrowers, the type of institution, the originating Federal Reserve district, the type of credit extended, the origination and maturity dates of the loans, and the individual loan amounts. (Br. 16.)  The Board also maintained that the documents were exempt from disclosure under FOIA Exemption 5.  (Thro Decl., ¶ 16, Ex. 5.)  The Board also maintained that documents held by the NY Fed are not subject to FOIA. (Thro Decl., ¶¶ 16, 21, Ex. 5.)

Board Response to Bloomberg Statement No. 10

*The Board does not dispute that it responded to the Loan Request by letter dated December 9, 2008, and that a true and correct copy of that letter, which speaks for itself, is attached as Exh. 5 to the Thro Decl. The Board further avers that a true and correct description of the contents of the withheld 231 pages of Remaining Term Reports, and the Board's basis for withholding those Reports, is contained in the <u>Vaughn</u> Index attached as Exh. 4 to the Thro Decl.*

Bloomberg Statement No. 11

The Loan Records in the possession of the NY Fed are Board records and were required to be provided to Bloomberg in response to the Loan Record Request.  The Board improperly withheld the Loan Records in the possession of the NY Fed from the Board's production of documents to Bloomberg in response to the Loan Record Request.


Board Response to Bloomberg Statement No. 11

*Bloomberg Statement No. 11 is a legal conclusion, not a "material fact."  To the extent that it is a statement of fact, the Board disputes Bloomberg Statement No. 11.  As grounds, the Board cites Thro Decl.. ¶¶ 19-21; Madigan Decl., ¶¶ 11-12; McLaughlin Decl., ¶¶ 5-9, 10-11, 15-16, 18-26; and Logan Decl., ¶¶ 15-17,20-27 .  The Board addresses its dispute with both sentences of Bloomberg Statement No. 11, and the Board's supporting evidence, on pp. 34-46 of the Board's SJ Brief.*

Bloomberg Statement No. 12

The documents responsive to the Loan Record Request are subject to FOIA and are not exempt from disclosure under either FOIA Exemption 4 or FOIA Exemption 5.  Thus, the Board was required to provide to Bloomberg all documents responsive to the Loan Record Request. The Board improperly claimed that the Loan Records are exempt from disclosure and improperly withheld those documents from the Board's production to Bloomberg in response to the Loan Record Request.

Board Response to Bloomberg Statement No. 12

*Bloomberg Statement No. 12 is a legal conclusion, not a "material fact." To the extent that it is a statement of fact, the Board disputes Bloomberg Statement No. 12 and, as grounds, repeats and reincorporates its Response to Bloomberg Statement No. 11. As further grounds, the Board states that its legal and evidentiary basis for withholding 231 pages of Reports in its possession responsive to the Loan Request is set forth on pp.18-33 of the Board's SJ Brief.*

Bloomberg Statement No. 13

Many companies have disclosed their participation in the Term Auction Facility program, including the following:

- Bank of America Corporation (Rose Decl., Ex. 39, Form 10-K for the period ending Dec. 31, 2008 at 15) ("We are currently utilizing TAF and have pledged residential, commercial mortgage and credit card loans as collateral.");

- BOK Financial Corp. (Rose Decl., Ex. 40, Form 10-K for the period ending Dec. 31, 2008 at 51) ("In 2008, the subsidiary banks began borrowing funds under the Federal Reserve Bank Term Auction Facility program. . . . Funds borrowed under this program totaled $450 million at December 31, 2008.");

- Colonial Bancgroup Inc. (Rose Decl., Ex. 41, Form 10-K for the period ending Dec. 31, 2008 at 55) ("Short-term borrowings consist of ... Federal Reserve Tern Auction Facility (TAF) funds..... from December 31, 2007 to December 31, 2008 ... Colonial purchased $700 million in Federal Reserve TAF funds");

- Metlife Inc. (Rose Decl., Ex. 43, Form 10-K for the period ending Dec. 31, 2008 at 144) ("At December 31, 2008, MetLife Bank had borrowed $950 million under the Term Auction Facility for various short-term maturities.");

- Sterling Financial Corp. (Rose Decl., Ex. 42, Form 10-K for the period ending Dec. 31, 2008 at 67) ("Sterling is also eligible to participate in the Term Auction Facility. . .. Sterling has utilized this source of funds to the extent that these funds are more competitive than other sources."); and

- Comerica Inc. (Rose Dec1., Ex. 44, Form 10-Q for the period ending Sept. 30, 2008 at 45) ("Short-term borrowings increased $818 million to $3.6 billion at September 30, 2008, from $2.8 billion at December 31, 2007, primarily due to borrowings under the Federal Reserve Tern Auction Facility .... ").

Board Response to Bloomberg Statement No. 13

*The Board disputes that Bloomberg Statement No. 13 is material to this action, and disputes Blooomberg's characterization that "many" companies have disclosed their participation in TAF, when plaintiff has only demonstrated that six companies have made limited disclosures in portions of SEC filings attached as Exhs. 39-44 to the Rose Decl., out of numerous participants in TAF. The Board does not dispute the authenticity or contents of the SEC filings attached as Exhs. 39-44 to the Rose Decl., and asserts that those filings speak for themselves. The Board asserts that institutions borrowing at the TAF (which is a DW facility) understand and expect that the Board and Reserve Banks will keep confidential information regarding their loans because of the "stigma" associated with DW borrowing and the likelihood that disclosure would cause substantial competitive harm to those institutions, Madigan Decl., ¶¶ 8, 16-24; McLaughlin Decl., ¶¶ 17-24, but that the institutions themselves may disclose their own borrowing.*

Bloomberg Statement No. 14

Borrowers also have disclosed their participation (or eligibility to participate) in the Primary Dealer Credit Facility ("PDCF") and the Term Securities Lending Facility ("TSLF"), including: Bank of America Corporation (Rose Decl., Ex. 39); Goldman Sachs Group Inc. (Rose Dec1., Ex. 45); Merrill Lynch & Co. (Rose Decl., Ex. 46); and Morgan Stanley (Rose Decl., Ex. 38).

Board Response to Bloomberg Statement No. 14

*The Board disputes that Bloomberg Statement No. 14 is material to this action. The Board avers that all primary dealers, whose names are publicly disclosed on the FRBNY's website, are eligible to participate in PDCF and TSLF. See McLaughlin Decl., ¶ 10; Logan Decl., ¶ 5. The Board does not dispute the authenticity or contents of the SEC filings attached as Exhs. 38, 39, 45 and 46 to the Rose Decl.,and asserts that those filings speak for themselves. The Board asserts that primary dealers borrowing at the PDCF and TSLF understand and expect that the Board and Reserve Banks will keep confidential information regarding their loans because of the "stigma" associated with borrowing from the lender of last resort and the likelihood that disclosure would cause substantial competitive harm to those dealers, Madigan Decl., ¶¶ 16-24; McLaughlin Decl., ¶¶ 17-25 ; Logan Decl.,¶¶ 18-26 , but that the primary dealers themselves may disclose their own borrowing.*

Bloomberg Statement No. 16[2]

The market has reacted positively to news that an institution received government aid. See, e.g., Rose Dec1., Exs. 47 (Bradley Keoun, Citigroup Gets U.S. Rescue From Toxic Losses, Capital Infusion, Bloomberg News, Nov. 24, 2008 (Citigroup Inc.'s stock surged 64% after the market learned that it received a "government rescue package that shields the bank from losses on toxic assets and injects $20 billion of capital")), 48 (Josh Fineman, E*Trade Shares Surge on Optimism Finn Will Get T ARP Funding, Bloomberg News, Nov. 25, 2008 (E*Trade Financial

---

[2] There is no Bloomberg Statement of Fact No. 15 in the original filing.

Corp.'s stock surged 42% after the company announced that it was "optimistic" that it would receive funds from the government's Troubled Asset Relief Program)), 49 (Jonathan Stempel & Kevin Krolicki, <u>GM, GMAC Ease Lending Rules to Entice Car Buyers</u>, Reuters, Dec. 30, 2008 (General Motors Corp.'s shares increased 5.6% after announcing that its GMAC funding affiliate would receive $6 billion in TARP funding)), 50 (Greg Sushinsky, <u>PNC Gobbles Up National City</u>, Investopedia, Nov. 4, 2008 (PNC Financial Services Group's stock price increased $2 to $58.58 when it announced a deal to acquire National City Corp. using $5.58 billion in funds PNC received through the TARP program)).

<u>Board Response to Bloomberg Statement No. 16</u>

*The defendant disputes that Bloomberg Statement No. 16, which relates to borrowing from the U.S. Treasury under TARP, and not to borrowing from the Federal Reserve Banks, is material to this action, and disputes Bloomberg's characterization of the cited media stories.*

Dated: May 1, 2009

<div style="margin-left: 50%;">

/s/Yvonne F. Mizusawa
Katherine H. Wheatley (KW7931)
Associate General Counsel
Yvonne F. Mizusawa (YM5081)
Senior Counsel
Board of Governors of the Federal
  Reserve System
20th and C Streets, N.W.
Washington, D.C.  20551
Ph: (202) 452-3436
Fax: (202) 736-5615

</div>

9