UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____ )
                                  )
BLOOMBERG L.P.,                   )
                                  )
              Plaintiff,          )
                                  )
       v.                         )    Civ. No. 08 CV 9595 (LAP)
                                  )
                                  )
BOARD OF GOVERNORS OF             )
THE FEDERAL RESERVE               )
SYSTEM,                           )
              Defendant.          )
_____ )


**DEFENDANT BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM'S REPLY AND OPPOSITON TO
PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

Katherine H. Wheatley (KW7931)
Associate General Counsel
Yvonne F. Mizusawa (YM5081)
Senior Counsel
Board of Governors of the Federal
  Reserve System
20th and C Streets, N.W.
Washington, D.C.  20551
Ph: (202) 452-3436
Fax: (202) 736-5615

May 1, 2009

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ...................................................................................................... ii

1. Plaintiff Does not Contest that the Board Conducted an Adequate Search, and the Defendant is Entitled to  Summary Judgment on This Issue ................................................ 3

2. The Board Properly Interpreted its Own Regulations Regarding the Scope of "Board Records" ................................................................................................................................ 4

3. Whether or Not the FRBNY is an "Agency" Under FOIA is Not Relevant to this Action ..................................................................................................................................... 9

4. The Board Properly Withheld Loan Information on Individual Borrowers under the Third Prong of Exemption 4 ........................................................................................................... 11

5. The Information was "Obtained from a Person" Under Exemption 4 ............................... 15

6. In the Alternative, The Board Has Met its Burden of Showing the Likelihood of Substantial Competitive Injury ........................................................................................... 17

7. The Board Properly Withheld Individual Loan Information Under Exemption 5 ............. 23

CONCLUSION ........................................................................................................................ 25

## TABLE OF AUTHORITIES

**CASES**

9 to 5 Org. for Women Office Workers v. Board of Governors,
721 F.2d 1 (1st Cir. 1983). ................................................................. 13

Africa Fund v. Mosbacher,
1993 U.S. Dist. LEXIS 7044 (S.D.N.Y. 1993) ........................................ 14

Amnesty International USA v. CIA,
2008 U.S. Dist LEXIS 47882 (S.D.N.Y., June 19, 2008) ......................... 3, 4

Auer v. Robbins,
519 U.S. 452 (1997) ............................................................................ 9

Bowles v. Seminole Rock & Sand Co.,
325 U.S. 410 (1945) ............................................................................ 8

Bruh v. Bessemer Venture Partners III L.P.,
464 F.3d 202 (2d Cir. 2006), cert. denied, 549 U.S. 1209 (2007) ......... 8, 9

Buffalo Evening News, Inc. v. SBA,
666 F. Supp. 467, 470-71 (W.D.N.Y. 1987) ........................... 12, 13, 15, 16

Burka v. U.S. Dep't of Health and Human Services,
87 F.3d 508 (D.C. Cir. 1996) ............................................................... 10

Carney v. U.S. Dep't of Justice,
19 F.3d 807 (2d Cir.), cert. denied, 513 U.S. 823 (1994) .................. 3, 4, 12

Christensen v. Harris County,
529 U.S. 576 (2000) ............................................................................ 9

Clarke v. U.S. Dep't of Treasury,
1986 U.S. Dist. LEXIS 29989 (E.D. Pa. Jan. 28, 1986) ................. 12, 14, 17

Comstock Int'l (U.S.A.), Inc. v. Export-Import Bank,
464 F. Supp. 804 (D.D.C. 1979) ................................... 12, 13, 14, 15

Defense of Animals v. NIH,
543 F. Supp 2d 70 (D.D.C. 2008) ......................................................... 10

Ferguson v. FBI,
83 F.3d 41 (2d Cir. 1996) ..................................................................... 3

FOMC v. Merrill,
443 U.S. 340 (1979) .................................................................................. 23, 24, 25

Grand Central Partnership v. Cuomo,
166 F.3d 473 (2d Cir. 1999) ............................................................................ 1, 2

Gulf & Western Industries, Inc. v. United States,
615 F.2d 527 (D.C. Cir. 1980) ........................................................................ 17, 18

Hughes Aircraft Co. v. Jacobson,
525 U.S. 432 (1999) ............................................................................................. 5

Inner City Press/Community on the Move v. Board of Governors,
463 F.3d 239 (2d Cir. 2006) ........................................................................... 13, 17

Inter Ocean Free Zone, Inc. v. U.S. Customs Service,
982 F. Supp. 867 (S.D. Fla. 1997) ...................................................................... 20

Lin v. U.S. Dep't of Justice,
459 F.3d 255 (2d Cir. 2006) ................................................................................. 9

Nadler v. FDIC,
92 F.3d 93 (2d Cir. 1996) ............................................................................... 19, 20

Nadler v. FDIC,
899 F. Supp. 158 (S.D.N.Y. 1995), aff'd on other gnds, 92 F.3d 93 (2d Cir. 1996) ................ 14

National Parks & Conservation Ass'n v. Kleppe,
547 F.2d 673 (D.C. Cir. 1976) ............................................................................ 18

National Parks Conservation Ass'n v. Morton,
498 F.2d 765 (D.C. Cir. 1974) .................................................................. 13, 14, 18

OSHA Data/CIH, Inc. v. U.S. Dep't of Labor,
220 F.3d 153 (3rd Cir. 2000). ........................................................................... 17

Pauley v. BethEnergy Mines, Inc.,
501 U.S. 680, 702 (1991) ..................................................................................... 9

PETA v. U.S. Dep't of Agriculture,
No. 03 C 195-SBC, 2005 U.S. Dist. LEXIS 10586 (D.D.C., May 24, 2005) ..................... 12, 13

Press v. Quick & Reilly, Inc.,
218 F.3d 121 (2d Cir. 2000) ................................................................................. 9

Public Citizen Health Research Group v. FDA,
  185 F.3d 898 (D.C. Cir. 1999) ............................................................ 22

Safecard Services, Inc. v. SEC,
  926 F.2d 1197 (D.C. Cir. 1991) ............................................................ 3

Triestman v. U.S. Dep't of Justice,
  878 F. Supp. 667 (S.D.N.Y. 1995) ....................................................... 3

U.S. Dep't of Justice v. Tax Analysts,
  492 U.S. 136 (1989) ....................................................................... 1, 2

Utah v. U.S. Dep't of the Interior,
  256 F.3d 967 (10th Cir. 2001) ........................................................... 18

Vaughn v. Rosen,
  484 F.2d 820 (D.C. Cir. 1973) ........................................................... 19

## STATUTES

5 U.S.C. § 551(2) ............................................................................. 16

5 U.S.C. § 552 ................................................................................... 1

12 U.S.C. § 248(k) ............................................................................. 5

15 U.S.C. § 639(a) ............................................................................ 15

The Federal Reserve Act ............................................................ passim

## OTHER AUTHORITIES

Pub. Law 104-66, § 3003, 109 Stat. 734 ............................................ 15

## REGULATIONS

12 C.F.R. § 261.2(a) ........................................................................... 7

12 C.F.R. § 261.2(i)(1)(i) .............................................................. 4, 5, 6

12 C.F.R. § 261.2(i)(1)(ii) ............................................................... 4, 7

12 C.F.R. § 261.3(a) ...................................................................... 4, 7

12 C.F.R. § 265.11 .............................................................................. 7

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
                                     )
                                     )
BLOOMBERG L.P.,                      )
                                     )
            Plaintiff,               )
                                     )
      v.                             )    Civ. No. 08 CV 9595 (LAP)
                                     )
                                     )
BOARD OF GOVERNORS OF                )
THE FEDERAL RESERVE                  )
SYSTEM,                              )
            Defendant.               )
                                     )
```

### DEFENDANT BOARD OF GOVERNORS OF THE
### FEDERAL RESERVE SYSTEM'S REPLY AND OPPOSITON TO
### PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's Endorsed Letter, dated January 22, 2009, Defendant, the Board of

Governors of the Federal Reserve System ("Board"), files its opposition to plaintiff Bloomberg

L.P.'s Cross-Motion for Summary Judgment, dated April 15, 2009 ("plaintiff's Cross Motion").

Plaintiff has failed to meet any of the criteria necessary for summary judgment in a case under

the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").  Because plaintiff has failed to make

the necessary showing, and the Board has met its burden, as demonstrated in its Motion for

Summary Judgment, and supporting brief and declarations, filed March 4, 2009 ("Board's SJ

Motion"), the plaintiff's Cross Motion should be denied and the Board's SJ Motion should be

granted.

Federal jurisdiction in a FOIA case depends on a showing that the agency:  "(1)

'improperly' (2) 'withheld' (3) 'agency records.'" Grand Central Partnership v. Cuomo, 166

F.3d 473, 478 (2d Cir. 1999) (quoting U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142

(1989)).  "Only when each of these criteria is met may a district court 'force an agency to comply with the FOIA's disclosure requirements.'"  Id. (quoting Tax Analysts, supra, 492 U.S. at 142).

Plaintiff's Cross Motion fails to establish any of these criteria.  As set forth in the Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment, filed March 4, 2009 ("Board's SJ Brief"), and as demonstrated in the supporting declarations and Rule 56.1 statement, the Board did not improperly withhold agency records because: (i) it conducted an adequate search for responsive documents; (ii) the responsive records are exempt under FOIA exemptions 4 and 5; and (iii) responsive documents at the Federal Reserve Banks are not agency records of the Board subject to a FOIA request to the Board.

Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross Motion for Summary Judgment, filed April 15, 2009 ("Plaintiff's SJ Brief"), and the supporting declarations and Rule 56.1 statement, cast no doubt on the Board's showing.  Rather, as set forth below: (i) the plaintiff does not contest the Board's showing that it conducted an adequate search, and the Board is entitled to summary judgment on this issue; (ii) the Board properly interpreted its own regulations regarding the scope of "Board records;" (iii) it is not relevant whether the FRBNY (or any other Federal Reserve Bank) is an "agency" for FOIA purposes; (iv) the Board properly withheld information under the third prong of exemption 4, which was obtained from a "person," and the Court may grant summary judgment on that prong alone; (v) in the alternative, defendant has made the showing needed for summary judgment under exemption 4's competitive harm prong; and (vi) the Board properly withheld information on DW lending under exemption 5.

**1. Plaintiff Does not Contest that the Board Conducted an Adequate Search, and the Defendant is Entitled to Summary Judgment on This Issue**

Significantly, the plaintiff presents no evidence[1] to dispute the Board's evidence that it conducted an adequate search for responsive records. See Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute, filed April 15, 2009 ("Plaintiff's Rule 56.1(b) Response"), ¶¶ 3, 12. The Thro Decl. filed in support of the Board's SJ Motion demonstrates that the Board conducted an adequate search. See Board SJ Brief at 9-15. The Board's declarations are "'accorded a presumption of good faith.'" Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir.), cert. denied, 513 U.S. 823 (1994) (quoting Safecard Services, Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Once the Board satisfies this burden, the burden shifts to the plaintiff to "'make a showing of bad faith sufficient to impugn the affidavits,'" Amnesty International USA v. CIA, 2008 U.S. Dist LEXIS 47882 at *25 (S.D.N.Y., June 19, 2008) (Preska, J.) (quoting Triestman v. U.S. Dep't of Justice, 878 F. Supp. 667, 672 (S.D.N.Y. 1995)). The plaintiff must submit "tangible evidence that an exemption claimed by the agency should not apply." Carney, supra, 19 F.3d at 812. If the plaintiff fails to make this showing, summary judgment should be awarded to the agency. Ferguson v. FBI, 83 F.3d 41, 43 (2d Cir. 1996); Carney, supra, 19 F.3d at 812.

Here, the plaintiff has provided no evidence of bad faith, and no legal argument that the Board's search was inadequate, but rather admits that it "lacks sufficient information" to respond to the Board's showing. Plaintiff's Rule 56.1(b) Response, ¶¶ 3, 12. The Board has met this important first element of its "burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA," and is entitled to summary judgment

---

[1] Plaintiff's only legal argument that the search was inadequate is that the Board failed to search records of the FRBNY. Plaintiff's SJ Brief at 14 n.7. As set forth in Board's SJ Brief at 9, 35-37, and infra, pp. 9-10, the Board has no obligation to search documents outside of its possession, custody or control, including responsive records at the FRBNY.

on the issue.  Carney, supra, 19 F.3d at 812; Amnesty International, supra, 2008 U.S. Dist. LEXIS 47882 at *24.

## 2. The Board Properly Interpreted its Own Regulations Regarding the Scope of "Board Records"

Plaintiff argues that the Board has misinterpreted its own regulation regarding the scope of Board records.  Plaintiff's SJ Brief at 14-17.  Plaintiff claims the Board "ignor[ed] both the second prong of the definition of 'Records of the Board" and the fact that the Secretary of the Board is, for FOIA purposes, the custodian of Reserve Bank records ….," citing 12 C.F.R. §§ 261.2(i)(1)(ii) and 261.3(a).  Plaintiff also argues that the FRBNY was acting "'on behalf of the Board'" within the meaning of 12 C.F.R. § 261.2(i)(1)(i) when it generated records in connection with the Bear Stearns Loan and loans at the DW, TAF, TSLF and PDCF, and that those records are Board records subject to plaintiff's FOIA Requests to the Board.  Plaintiff's SJ Brief at 15-17.

Plaintiff's arguments prove too much, and assume that a wide swath of commercial or proprietary records of the Federal Reserve Banks are "Board records," in disregard of the Board's regulations *and* the separate corporate structure of the Federal Reserve Banks.  See Board's SJ Brief at 37-40.  As set forth below, and in the Board's SJ Brief at 40-46, the Board properly interpreted its own regulations (as it has for many years) to exclude Reserve Bank records generated in connection with the FRBNY's exercise of its independent statutory lending authority under sections 10B and 13(3) of the FRA (under Board authorization and supervision). The Board's interpretation is entitled to controlling weight under settled Supreme Court and Second Circuit law.

As set forth in the Board's SJ Brief at 41, the Board interprets 12 C.F.R. § 261.2(i)(1)(i) [2] to mean that records at the Federal Reserve Banks that relate to a Board function performed by a Reserve Bank acting *under delegated authority* from the Board are records of the Board for FOIA purposes, but that other Federal Reserve Bank documents are not. As set forth in the Board's SJ Brief at 41-46, the FRBNY was *not* acting under Board-delegated authority when it lent at the DW, TAF, TSLF or PDCF, or when it made the Bear Stearns Loan, because Congress gave the Federal Reserve Banks independent statutory authority to lend to depository institutions under section 10B of the FRA, under rules and policies promulgated by the Board, and to lend to individuals, partnerships and corporations in unusual and exigent circumstances upon prior Board authorization under section 13(3) of the FRA. The Board could not "delegate" lending authority to the Federal Reserve Banks because the Board, a federal government agency and not a bank, does not itself have authority to lend at the DW or otherwise, Board's SJ Brief at 41-42 and n.14; 44-45 and n. 24, nor does the 1913 legislative history of the FRA support such an exercise of authority by the Board. Board's SJ Brief at 44.

Moreover, the Federal Reserve Act authorizes the Board "to delegate, by published order or rule and subject to [the Administrative Procedure Act], any of *its* functions, other than those relating to rulemaking or pertaining principally to monetary and credit policies, to one or more … Federal Reserve Banks." 12 U.S.C. § 248(k) (emphasis supplied). Under the plain language of section 248(k), which is controlling, Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999), the Board cannot "delegate" to the Reserve Banks functions that the Board itself does not

---

[2]  Section 261.2(i)(1)(i) defines "Records of the Board" to include:

> all information coming into the possession and under the control of the Board, any Board member, any Federal Reserve Bank, or any officer, employee, or agent of the Board or of any Federal Reserve Bank, *in the performance of functions for or on behalf of the Board* that constitute part of the Board's official files ….

12 C.F.R. § 261.2(i)(1)(i) (emphasis supplied).

have authority to perform. Thus, records regarding a Reserve Bank's lending in the possession of a Reserve Bank cannot be considered to be information obtained "in the performance of functions for or on behalf of the Board." 12 C.F.R. § 261.2(c)(i)(1)(i). The Board's interpretation of "for or on behalf of the Board" to encompass only Reserve Bank records generated in the performance of functions under delegated authority from the Board also is consistent with dictionary definitions of "for," "on behalf of," and "function" and is a reasonable reading of the regulation.[3]

Plaintiff cites no support for its argument that the FRBNY was acting "for or on behalf of the Board" when it acted "in furtherance of Board policy in connection with the lending at issue here," Plaintiff's SJ Brief at 16, and when it acted "in connection with the implementation of the Board's monetary policy ...." Id. at 17. Plaintiff's reading does not square with the language of the regulation. See, supra, p. 5 n.2. If the Board had meant "in furtherance of Board policies" or "in connection with the implementation of Board policy," it could have said so in its regulations. Plaintiff's reading also ignores the separate functions that Congress assigned to the Board (supervision and policy) and Federal Reserve Banks (day-to-day lending), Board's SJ Brief at 41-42 and n.14; 44-45 and n. 24. As discussed below, the Board's interpretation of its regulation has consistently recognized this separation and has never been read to encompass those Reserve Bank records relating to functions other than those delegated by the Board.

Plaintiff's expansive reading of 12 C.F.R. § 261.2(i)(1)(ii) to include all files at the Federal Reserve Banks among "official files" of the Board is similarly unsupported. Plaintiff's

---

[3]  Webster's Ninth New Collegiate Dictionary (1991) defines "on behalf of," (under "behalf") to mean "in the interest of" or "as a representative of," id. at 141, and defines "for," in the 5th of 10 definitions, to mean "in place of" or "representing." Id. at 481. "Function" is defined in the 1st of 6 definitions as "the action for which a person or thing is specially fitted or used or for which a thing exists." Id. at 498. The Reserve Banks are acting "in place of" or "as a representative" of the Board when they perform "functions" (actions for which the Board "exists" or is "specially fitted or used,") under delegated authority from the Board.

SJ Brief at 15.  That regulation defines "records of the Board" to include files "[t]hat are maintained for *administrative reasons* in the regular course of business in official files in any division or office of the Board or any Federal Reserve Bank *in connection with the transaction of any official business*."  (emphasis supplied).  The Board's regulations define "official files" to mean "the Board's central records," 12 C.F.R. § 261.2(a), making clear that section 261.2(i)(1)(ii) applies to *Board* records and not to records relating to the business of the Federal Reserve Banks.  Section 261.2(i)(1)(ii) is entitled "Records of the Board" and applies on its face to records of Board business that are maintained "for administrative reasons" in a Board division or at a Reserve Bank, not to proprietary records of banking or commercial transactions by the Reserve Banks.  12 C.F.R. § 261.2(i)(1)(ii).  As such, 12 C.F.R. § 261.2(i)(1)(ii) means that the Board's "official files," or central records, include *Board* records -- that is, records relating to the statutory functions of the Board -- maintained for administrative reasons in central records at a Federal Reserve Bank or at a division or office of the Board.[4]  This provision does not expand the definition of "Board records" to include commercial or proprietary records of the Federal Reserve Banks, as the plaintiff argues.

Likewise, 12 C.F.R. § 261.3(a), which makes the Secretary of the Board the "official custodian of all Board records, including records that are in the possession or control of the Board, any Federal Reserve Bank, or any Board or Reserve Bank employee," applies by its terms only to "Board records" in the possession of a Federal Reserve Bank, or a Board or Reserve Bank employee, and does not broaden the definition of "Board records" to include commercial or proprietary records of the Federal Reserve Banks.  This provision cannot plausibly be read to

---

[4]  These records include, for example, records of applications handled under delegated authority by the Federal Reserve Banks and some supervisory and enforcement records of actions performed under delegated authority.  See generally 12 C.F.R § 265.11.

mean that the Secretary of the Board is the custodian of *Reserve Bank* records in the possession

of the Federal Reserve Banks, as the plaintiff argues.   Plaintiff's SJ Brief at 15.

As set forth in the Supplemental Declaration of Alison M. Thro filed in a companion case

in the Southern District of New York raising the same issue, attached hereto as Exhibit 1 ("Supp.

Thro Decl."), the Board has consistently interpreted its regulations in this manner.  See Supp.

Thro Decl. at ¶¶ 3-5.  As Ms. Thro explains, the Board has for many years considered its records

located at Reserve Banks to encompass only those records that relate to "functions performed by

the Reserve Banks under delegated authority from the Board," id. at ¶ 3, including records of

certain applications, filings, and required reports under particular statutes where the Board has

delegated responsibility to the Reserve Banks and records relating to the Reserve Banks'

supervision and examination of financial institutions conducted under Board-delegated authority.

Id. at ¶ 4.  By contrast, records located at Reserve Banks that "were obtained or created in the

course of the Reserve Banks' exercise of their independent statutory authority" have not been

considered "records of the Board" subject to a FOIA request directed to the Board.  Id. at ¶ 5.  In

processing FOIA requests, Board staff has consistently taken this approach in identifying

responsive documents with respect to documents housed at Federal Reserve Banks.  See id. at

¶¶ 3-5.

Under settled Second Circuit and Supreme Court law, the Board's interpretation of its

own regulation is entitled to "'controlling weight unless plainly erroneous or inconsistent with

the regulation.'"  Bruh v. Bessemer Venture Partners III L.P., 464 F.3d 202, 207 (2d Cir. 2006),

cert. denied, 549 U.S. 1209 (2007) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S.

410, 413-14 (1945)).  The agency's "'interpretation need not be the best or most natural one by

grammatical or other standards ….  Rather, the [agency's] view need be only reasonable to

warrant deference.'" <u>Bruh</u>, <u>supra</u>, 464 F. 3d at 207 (quoting <u>Pauley</u> v. <u>BethEnergy Mines, Inc.</u>, 501 U.S. 680, 702 (1991)). Here, as set forth above and in the Board's SJ Brief at 40-46, the Board's interpretation of its own regulations regarding the meaning of "records of the Board" is reasonable, and not plainly erroneous or inconsistent with the text of those rules, and is entitled to controlling weight in this proceeding.[5] The fact that the Board's interpretation is set forth in a legal brief does not reduce the deference owed it when the brief reflects the agency's "fair and considered judgment on the matter in question." <u>Auer</u> v. <u>Robbins</u>, 519 U.S. 452, 462 (1997); <u>accord</u> <u>Press</u> v. <u>Quick & Reilly, Inc.</u>, 218 F.3d 121, 128 (2d Cir. 2000) ("[w]e are bound by the SEC's interpretations of its regulations in its *amicus* brief, unless they are 'plainly erroneous or inconsistent with the regulation[s].'") (quoting <u>Auer</u>, <u>supra</u>). Moreover, as shown in the Supplemental Thro Decl., this interpretation has been the continuous practice of the Board for many years. Accordingly, the Court should reject plaintiff's interpretation of the Board's regulations, which is at odds with the language of those provisions, and accord controlling weight to the Board's interpretation.

**3. Whether or Not the FRBNY is an "Agency" Under FOIA is Not Relevant to this Action**

Plaintiff argues that the FRBNY's records should be subject to disclosure because it contends that Reserve Banks are agencies under FOIA. Plaintiff's SJ Brief at 18. Plaintiff's argument is irrelevant. The issue before the Court is not whether the FRBNY, which is a

_____
[5] As the Board's interpretation is reasonable and consistent with the plain language, the cases cited in Plaintiff's SJ Brief at 16 n. 8 do not apply. In <u>Christensen</u> v. <u>Harris County</u>, 529 U.S. 576 (2000), the Court found "the Department of Labor's regulation does not address the issue" before the Court, <u>id</u>. at 587, which is not the case here where the parties agree that the Board's rules apply (but disagree as to their meaning). Likewise, <u>Lin</u> v. <u>U.S. Dep't of Justice</u>, 459 F.3d 255, 262 (2d Cir. 2006), where the Second Circuit found the "BIA's interpretation … is inconsistent with the plain language …," does not supply the rule of decision here, where the Board's interpretation flows naturally from the language of the regulations. <u>See</u>, <u>supra</u>, pp. 5-6 and n.3.

separate legal entity from the Board, is an "agency," but whether the Board created or obtained responsive records from the FRBNY (it did not – Board SJ Brief at 35-37), and whether responsive records at the FRBNY are "Board records" under the Board's regulations.[6] As set forth, <u>supra</u>, pp. 4-9, and at Board SJ Brief at 40-46, they are not, and the Board is entitled to summary judgment on the "agency records" issue.

Moreover, plaintiff has not presented a FOIA request to the FRBNY and the FRBNY is not a party to this action. The only FOIA requests at issue in this action are the Loan Request and the Bear Request, which were sent to the Board and not to the FRBNY. <u>See</u> Amended Complaint, ¶¶ 21 and 37; Answer, ¶¶ 21 and 37; Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute, filed April 15, 2009 ("Plaintiff's Rule 56.1(b) Stmt"), ¶¶ 1 and 11; Thro Decl., Exhs. 1 and 6. As set forth in the Board's SJ Brief at 35-37, because the Board neither created nor obtained responsive records at the FRBNY, the Court lacks subject matter jurisdiction to order their production.

---

[6] The D.C. Circuit's decision in <u>Burka</u> v. <u>U.S. Dep't of Health and Human Services</u>, 87 F.3d 508, 515 (D.C. Cir. 1996), cited in Plaintiff's SJ Brief at 17 n. 9, does not suggest a different result. In that case, the court found that records in the hands of a government contractor were "agency records" where the agency had "ordered creation of the materials, plans to take physical possession of the [records] at the conclusion of the project, has indicated that it will disclose the information after its publication schedule …, and has read and relied significantly on the information in writing articles and developing agency policies." <u>Id</u>. None of those factors exists with respect to responsive FRBNY records that have not been provided to the Board. <u>See</u> Thro Decl., ¶¶ 20, 28; McLaughlin Decl., ¶¶ 8, 9, 15, 16; Logan Decl., ¶¶ 15-17; Mucciolo Decl., ¶¶ 6-8. Likewise <u>Defense of Animals</u> v. <u>NIH</u>, 543 F. Supp 2d 70, 76-77 (D.D.C. 2008), where the court found that clinical files relating to chimpanzees located at a government contractor were "agency records" where the agency "owns the … facility where the requested documents are located," "owns the chimpanzees located at [the facility] … and also obtained the chimpanzees' clinical records [which] … are subject to onsite inspection by [the agency]," presents very different facts from those demonstrated in the Board declarations cited above.

**4. The Board Properly Withheld Loan Information on Individual Borrowers under the Third Prong of Exemption 4**

As set forth in Board's SJ Brief at 23-30, the Board properly withheld 231 pages of loan information on individual borrowers under the so-called "third prong" or "program effectiveness" branch of Exemption 4. The Court could grant the Board's SJ Motion on this basis alone, and need not even reach the exemption 5 and competitive harm issues, which provide alternative grounds for withholding. Plaintiff presents no evidence to dispute the Board's declarations demonstrating that disclosure would impair the Board's ability to fulfill statutory functions under sections 2A, 10B and 13(3) of the FRA. Compare Board's SJ Brief at 26-30 (discussing Board's declarations); with Plaintiff's Rule 56.1(b) Stmt, ¶ 7 (citing no evidence, but only legal argument, to dispute this showing). As plaintiff has failed to supply "tangible evidence" contradicting the Board's showing that its ability to perform statutory functions would be impaired, the Board is entitled to summary judgment. Carney, supra, 19 F.3d at 812.

Plaintiff's legal arguments cast no doubt on the Board's program effectiveness showing. Plaintiff claims "the Board's evidence of impairment to its ability to fulfill its statutory obligation is speculative at best," Plaintiff's SJ Brief at 36, and "makes no sense." Id. at 37. The Board, however, has filed declarations from a senior Board officer and two senior officers at the FRBNY attesting that disclosure of borrower names, loan amounts, and terms of individual loans would impair the Board's ability: under section 2A of the FRA to use the DW to complement open market operations in achieving target short term interest rates; to use Federal Reserve Bank funding facilities to relieve liquidity strains in individual institutions and the banking system under section 10B; and to utilize Reserve Bank lending facilities to address unusual and exigent circumstances under section 13(3). See Board's SJ Brief at 26-30.

The Board's evidence is far from speculative. For example, the director of the Board's Division of Monetary Affairs ("MA"), which supports the Board and FOMC in the conduct of monetary policy, Madigan Decl., ¶ 1, predicts "that publication of [the] information [at issue here] would lead to an increased reluctance of borrowers to use [the Federal Reserve Bank's] facilities," id., ¶ 14, and states that "if institutions are unwilling to access the DW for fear of public disclosure, this 'safety valve' role of the discount window is impaired, and the task of achieving a desired level of short-term interest rates … is greatly complicated … [adding to] uncertainty in financial markets and mak[ing] it more difficult for the Federal Reserve to achieve its statutory objectives …" Id., ¶ 27. A senior vice president in the FRBNY's Markets group, responsible (along with other officers) for overseeing DW and PDCF operations, McLaughlin Decl., ¶¶ 1-2, 4, attests "[p]ublic disclosure of details regarding which institutions are availing themselves of the Discount Window and the PDCF … would cause financial institutions to avoid using these liquidity tools – even when needed – to alleviate market pressures" and thereby "would undermine the Bank's ability to achieve its policy mandate and mission." Id., ¶ 23. Plaintiff fails to show that this evidence is speculative, and the Board has met its burden of demonstrating that the documents are exempt under the third prong.[7] Carney, supra, 19 F.3d at 813 ("declarants [must] describe the documents or classes of documents withheld and explain why they fall within an applicable exemption"). Plaintiffs have submitted no declarations or evidence to dispute the Board's showing.[8] As in Clarke v. U.S. Dep't of Treasury, 1986 U.S.

_____

[7] See Comstock Int'l (U.S.A.), Inc. v. Export-Import Bank, 464 F. Supp. 804, 808 (D.D.C. 1979) (where defendant's affidavits stated that disclosure "would impair its effectiveness" by making loan negotiations more difficult, court concludes that the affidavits "offer 'specific factual or evidentiary material' to satisfy defendant's burden" under exemption 4) (citation omitted).

[8] Plaintiff relies on Buffalo Evening News, Inc. v. SBA, 666 F. Supp. 467, 470-71 (W.D.N.Y. 1987) and PETA v. U.S. Dep't of Agriculture, No. 03 C 195-SBC, 2005 U.S. Dist. LEXIS 10586 *21 (D.D.C., May 24, 2005), to support its claim of speculativeness. Plaintiff's SJ Brief

Dist. LEXIS 29989 *5 (E.D. Pa. Jan. 28, 1986), where the Treasury relied on the "unopposed

affidavit" of an acting assistant Treasury secretary that "releasing the requested information

would harm the national interest because investors would be less likely to purchase government

bonds ... if they knew the details … would be subject to public disclosure[,] " the Board's

declarations here are sufficient to meet its burden.

Plaintiff argues that the Second Circuit "has not … adopted" the program effectiveness

theory.  Plaintiff's SJ Brief at 36; see also id. at 22 n.11.  Program effectiveness, however,

derives directly from footnote 17 of National Parks Conservation Ass'n v. Morton, 498 F.2d 765,

770 n.17 (D.C. Cir. 1974) in which the D.C. Circuit cited FOIA's legislative history to suggest

that "the problems of compliance and program effectiveness [are] governmental interests

possibly served by this exemption."  See 9 to 5 Org. for Women Office Workers v. Board of

Governors, 721 F.2d 1, 8 (1st Cir. 1983) (citing n.17 of National Parks as authority for program

effectiveness); Comstock, supra, 464 F. Supp. at 808 (same).

There is no dispute that the Second Circuit has adopted the first two prongs of National

Parks as the rule of decision in exemption 4 cases.  Inner City Press/Community on the Move v.

Board of Governors, 463 F.3d 239, 244 (2d Cir. 2006).  There is no reason to think that program

---

at 37.  Without any substantive discussion of the declaration submitted by the SBA in support of
its program effectiveness argument, id. at 471, the Buffalo Evening News court found "the sworn
declarations provided to this court … [are] inadequate …."  Id.  The decision, involving a failure
of proof by the agency, is not persuasive here where the Board has presented three unrebutted
declarations attesting that its ability to perform statutory functions would be impaired.  Madigan
Decl., ¶¶ 14, 26-30; McLaughlin Decl. ¶¶ 23, 26; Logan Decl, ¶ 26.  Similarly, in PETA, the
court found the bank witness's testimony "too conclusory and speculative" to establish
substantial competitive harm affecting the bank, where the harm identified by the witness would
affect all banks equally, and there was no proof that the bank involved in the transaction would
be uniquely harmed.  2005 U.S. Dist. LEXIS 10586 at *22.  Nonetheless, the court held that
much of the same information was exempt under exemption 4 because the borrower had
established substantial competitive harm that could result from its release.  Id. at *23-24.  In the
present case, the Board has presented unrebutted declarations from knowledgeable witnesses
attesting to the effects of release on the Federal Reserve's programs.

effectiveness, which derives directly from <u>National Parks</u>, is not good law in the Second Circuit as it is in the First and D.C. Circuits, although the Second Circuit has not expressly ruled on the issue. <u>See</u> Board's SJ Brief at 23-26. At least two district courts in the Southern District of New York have adopted the program effectiveness theory, and the Second Circuit affirmed one of those decisions. <u>See</u> <u>Nadler</u> v. <u>FDIC</u>, 899 F. Supp. 158, 161-63 (S.D.N.Y. 1995), <u>aff'd</u> <u>on</u> <u>other</u> <u>gnds</u>, 92 F.3d 93 (2d Cir. 1996);[9] <u>Africa Fund</u> v. <u>Mosbacher</u>, 1993 U.S. Dist. LEXIS 7044 at *21 (S.D.N.Y. 1993). Plaintiff cites no case to suggest that the Second Circuit has rejected program effectiveness. Its suggestion that the third prong of exemption 4 is not good law in this Circuit is unfounded.

Last, plaintiff attempts to distinguish <u>Comstock</u>, <u>supra</u>, and <u>Clarke</u>, <u>supra</u>, discussed in Board's SJ Brief at 25-26, on the basis that "in those cases, the agency disclosed <u>all</u> of the information necessary to understand the government's decision-making and action." Plaintiff's SJ Brief at 38. As in those cases, the Board (and the Federal Reserve Banks) have disclosed extensive information regarding the DW, TAF, PDCF, TSLF on their websites and elsewhere, including terms of and eligibility for loans, interest rates on a given day, acceptable forms of collateral, sample lending documentation, collateral margin tables, aggregate current lending data, historical lending data, mechanics of DW and TAF, PDCF and TSLF borrowing, and relevant statutory and regulatory provisions. Madigan Decl., ¶ 15; <u>see also</u> Thro Decl., Exh. 5 at 2-3 (FOIA response to plaintiff discussing extensive public sources of information). The particular information plaintiff has requested regarding collateral pledged for, and terms of, individual loans, is not made public. Madigan Decl., ¶ 16. This was the case in <u>Clarke</u>, <u>supra</u>, 1986 U.S. Dist. LEXIS 29989 at **1, 4-5, where the court found the names, addresses, dollar

---

[9] The Second Circuit affirmed on the basis of competitive harm to the FDIC (as receiver for a failed bank), and did not reach the "program effectiveness" exemption. 92 F.3d at 96.

amount, coupon and maturity date of institutional bondholders exempt under the program effectiveness theory, and <u>Comstock</u>, 464 F. Supp. at 808, where the court found that loan agreements between outside borrowers and the Eximbank were exempt under the third prong. Accordingly, plaintiff's attempt to distinguish those decisions is not persuasive.

### 5.  The Information was "Obtained from a Person" Under Exemption 4

Plaintiff relies on <u>Buffalo Evening News</u>, <u>supra</u>, 666 F. Supp. at 468-69, to argue that the borrowers' names, collateral information and loan amounts were not collected from a third party as required under exemption 4.  Plaintiff's SJ Brief at 35-36.  In <u>Buffalo Evening News</u>, <u>supra</u>, the SBA withheld internally generated documents "regarding the individual loan amounts, including the outstanding balances and payment, collection, or discharge status."  666 F. Supp. at 468.  The court found that the SBA reports "in no way implicate[] any of the financial information provided by the borrowers to the government."  <u>Id</u>. at 469.[10]  Because this critical element was lacking, and the borrowers' names were already public,[11] <u>id</u>. at 468, the court concluded that the SBA reports were not "obtained from a person" as required under exemption 4.  <u>Id</u>. at 469.

---

[10] The <u>Buffalo Evening News</u> court's opinion regarding this issue is noticeably devoid of analysis, and perhaps for that reason has not been followed by any other court.

[11] Although the opinion does not discuss why the names of businesses that obtained SBA loans were public, the Small Business Act at the time required the SBA to make comprehensive annual reports to the President and Congress including, among other things, "the names of the business concerns to whom contracts are let and for whom financing is arranged by the [SBA], together with the amounts involved."  15 U.S.C. § 639(a).  That reporting requirement was terminated effective May 15, 2000.  <u>See</u> Pub. L. 104-66, § 3003, 109 Stat. 734.  There are no similar reporting requirements in sections 10B, 13(3) or related sections of the FRA.

The withheld information[12] in this case is readily distinguishable from the SBA reports in Buffalo Evening News because the Board's internal Remaining Term Reports *do implicate* confidential commercial and financial information provided by borrowers at the DW, TAF, PDCF and TSLF to the Federal Reserve Banks, and in turn provided by the Federal Reserve Banks to the Board. As the declarations filed by the Board make clear, unlike the SBA borrowers in Buffalo Evening News, whose names were public, borrowers at the DW, TAF, PDCF and TSLF, who are "persons" under FOIA, 5 U.S.C. § 551(2),[13] and who indirectly submitted information to the Board (via the Federal Reserve Banks), have an expectation of confidentiality in their names and loan amounts contained in the Board's internally-generated Reports. See McLaughlin Decl., ¶ 18 ("[t]here is an explicit understanding amongst the New York Fed, the depository institutions that borrow at the Discount Window, the clearing banks, and the primary dealers that borrow at the PDCF that information relating to Discount Window and PDCF borrowing will not be disclosed by either the borrowers or by the New York Fed."); Logan Decl., ¶ 20 (" [t]here is an implicit understanding … that information relating to TSLF borrowing will not be disclosed … and that all parties will keep confidential specific information relating to the loan, including the identity of the borrower, the amount of the loan, and/or the collateral pledged. "); accord Madigan Decl., ¶ 16. While the plaintiff argues that "[t]he Board seeks to keep confidential its own records regarding its lending, not sensitive financial information obtained from the borrowers," Plaintiff's SJ Brief at 36, it is apparent from the

---

[12] See Board's SJ Brief at 16 for a description of the withheld information, all of which was obtained, indirectly, from the borrowing institutions.

[13] 5 U.S.C. § 551(2) defines "person" to include "an individual, partnership, corporation, association, or public or private organization other than an agency," which includes financial institutions and primary dealers. As discussed in Board's SJ Brief at 39-40, each Federal Reserve Bank is a corporation, and is therefore also a "person" under FOIA.

evidence provided by the Board that borrowers at the DW, TAF, TSLF and PDCF have an expectation that the Board and Reserve Banks will keep that very information confidential.

Much more relevant to the present case is <u>Clarke</u>, <u>supra</u>, 1986 U.S. Dist. LEXIS 29989 at *4, which involved information similar to that at issue here and in which the court had no trouble concluding that the information was "obtained from a person."  In <u>Clarke</u>, the court found that data generated by the government in connection with lending transactions with outside parties, including the names and addresses of Treasury bond holders, as well as dollar amounts and coupon maturity dates, were "obtained from a person" under exemption 4, notwithstanding the fact that the information reflected transactions with the government.  The court stated, "[u]nquestionably, the registered, institutional Flower bondholder data are financial and obtained from persons outside the government."  <u>Id</u>. at *4.  Similarly, the information withheld by the Board in this case is of the same kind as that withheld by the Treasury in Clarke, and must be considered "obtained from a person" for the very same reason.[14]  Thro Decl., ¶ 11 and Exh. 4 (<u>Vaughn</u> Index).

**6. In the Alternative, The Board Has Met its Burden of Showing the Likelihood of Substantial Competitive Injury**

In the alternative, the Board has made the showing needed for summary judgment on the competitive harm prong of exemption 4.  Board's SJ Brief at 18-23.[15]  Plaintiff's evidence and four main arguments do not cast doubt on the Board's showing, as set forth below.

---

[14] At least two courts of appeal have held that data and reports prepared internally by an agency using confidential information obtained from "a person" outside of the agency are "obtained from a person" for exemption 4 purposes.  <u>OSHA Data/CIH, Inc. v. U.S. Dep't of Labor</u>, 220 F.3d 153, 162 n. 23 (3rd Cir. 2000); <u>Gulf & Western Industries, Inc.</u> v. <u>United States</u>, 615 F.2d 527, 529-30 (D.C. Cir. 1980).

[15] The Court need not even reach this argument, and may grant summary judgment on the third prong of exemption 4 or exemption 5 (for information related to DW lending) alone.  <u>See</u> <u>Inner City Press</u> <u>supra</u>, 463 F.3d at 248 (affirming district court's ruling that Board properly withheld

First, plaintiff argues that the Board's evidence is too "speculative" to meet the exemption 4 standard. Plaintiff's SJ Brief at 24; <u>see also id</u>. at 22, 23. Plaintiff states "the Board raises speculative arguments about the so-called 'stigma' that <u>might</u> attach to borrowers if the requested information is disclosed. … the Board speculates that release of the requested information '<u>can</u> fuel market speculation and rumors' which '<u>could</u> rapidly lead to a loss of public confidence in the institution …." Plaintiff's SJ Brief at 24 (emphasis in original, quoting Board's SJ Brief at 20-21). Plaintiff misunderstands the standard for showing the likelihood of substantial competitive harm. The Board need not show *actual competitive harm* to the submitters. Rather, "[a]ctual competition and the likelihood of substantial competitive injury is all that need be shown." <u>Gulf & Western</u>, <u>supra</u>, 615 F.2d at 530 (citing <u>National Parks & Conservation Ass'n</u> v. <u>Kleppe</u>, 547 F.2d 673, 679 (D.C. Cir. 1976) ("<u>National Parks II</u>")); <u>accord</u> <u>Utah</u> v. <u>U.S. Dep't of the Interior</u>, 256 F.3d 967, 970 (10th Cir. 2001) ("evidence demonstrating the existence of potential economic harm is sufficient").

Here, the Board has shown the existence of actual competition, Board's SJ Brief at 18-19, which plaintiff does not contest, and the Board should be granted summary judgment on this element. Plaintiff's SJ Brief at 22-31 (no discussion of actual competition in the market).

The Board also has shown that substantial competitive harm is *likely*. Board's SJ Motion at 19-23. As the Board demonstrated, because Reserve Banks are the "lenders of last resort," the fact that an institution is borrowing at the DW, if publicly disclosed, can fuel market speculation and rumors that the entity's liquidity strains stem from a financial problem at the institution that is not publicly known. Madigan Decl., ¶ 18; McLaughlin Decl., ¶ 20. This "stigma," which also applies to borrowers at the TAF, PDCF and TSLF, Madigan Decl., ¶ 21; McLaughlin Decl., ¶ 25,

---

information under the impairment prong of <u>National Parks</u>, and not reaching competitive harm prong).

Logan Decl., ¶ 21, can rapidly lead to a loss of public confidence in the institution, a sudden outflow of deposits (a "run"), a loss of confidence by market analysts, a drop in the institution's stock price, a withdrawal of market sources of funding, acceleration of existing loans to the institution, and, in extreme cases, closure of the institution. Madigan Decl., ¶ 17; McLaughlin Decl., ¶ 21. Any of these events is likely to put the institution in a weakened position vis-à-vis competitors, likely resulting in substantial competitive harm. Under the precedent discussed above, and relevant Second Circuit law, the Board's showing meets the standard for likely competitive harm. Nadler v. Federal Deposit Insurance Corp., 92 F.3d 93, 97 (2d Cir. 1996) (finding information exempt under the competitive harm prong where "'the *likely* commercial disadvantage resulting from release of the withheld information *could well* cause a reduction in the amount realizable for the receivership ....") (emphasis supplied) (quoting FDIC finding).

A showing of *actual* harm is not required and would make no sense as such a high standard would almost certainly require the release of exempt information, which FOIA does not require. See, e.g. Vaughn v. Rosen, 484 F.2d 820, 826 (D.C. Cir. 1973) (agency's analysis need not be so specific "that if made public would comprise the secret nature of the information ....").

Second, plaintiff argues that the Board's harm argument fails "because the Board's claim of potential harm to borrowers related to the reaction by the customers and shareholders of the borrowers, rather than to the use of that information by competitors of the borrowers." Plaintiff's SJ Brief at 26-27 (emphasis in original); see also id. at 3. The Second Circuit rejected a similar argument in Nadler, supra, in which the plaintiff claimed the FDIC had not shown likely competitive harm because the injury suffered by the FDIC as receiver "would not be competitive in nature, but political." 92 F.3d at 96. The Second Circuit found this argument unpersuasive, holding that the fact that the harm to the FDIC as receiver -- a diminution in the

amount it could realize on a development project -- "would result from active hindrance by [a community group] rather than directly by potential competitors does not affect the fairness considerations that underlie Exemption Four." Id. at 97. Consequently, the Second Circuit held that the "[s]ensitive financial information about a project of this nature clearly falls within the class of materials that Congress exempted as 'confidential' in section 552(b)(4)." Id. Similarly, here, the fact that likely competitive harm to borrowers could result from a loss of public confidence, a sudden outflow of deposits, and the other harms discussed in the Board's SJ Brief at 21, does not affect the fairness considerations underlying exemption 4. See also Inter Ocean Free Zone, Inc. v. U.S. Customs Service, 982 F. Supp. 867, 872 (S.D. Fla. 1997) ("disclosure of confidential arrangements with customers is likely to give rise to objections from customers and disruption of customer relationships," and constitutes cognizable harm under exemption 4).

Third, plaintiff claims that he Board's argument "flies in the face of widely accepted economic theory, which holds that a better informed market is a better functioning market." Plaintiff's SJ Brief at 28. Plaintiff relies on the Brown-Hruska Decl., filed with its Cross Motion, which describes the declarants' opinion, among others, that "increased disclosure of information regarding troubled banks in times of crisis provides useful information that allows markets to adjust," id. at 28 (citing Brown-Hruska, ¶¶ 8-9); "markets are extremely efficient in processing information, both in direction and proportion," id. at 30 (citing Brown-Hruska, ¶ 24); and "the information sought by Bloomberg's FOIA requests, will eliminate the opacity that is creating significant uncertainty in the financial markets and in the economy overall." Id. at 30 (citing Brown-Hruska, ¶¶ 32-42). Plaintiff also relies on the alleged benefits to taxpayers and investors from disclosure of exempt information to claim that the Board has not met its burden of showing likely competitive harm. Id. at 30-31 (citing Brown-Hruska, ¶¶ 33, 35).

While the Brown-Hruska Decl. describes in detail economic theory and research showing that full disclosure as a general matter enables markets to operate more efficiently, id. ¶¶ 24-42, and opines that disclosure may have side benefits to taxpayers and investors, id., ¶¶ 33, 35, conspicuously absent is an opinion and supporting evidence that disclosure of the *withheld information* – that is, the names of the borrowers and amounts and dates of their loans – is *not likely* to result in *substantial competitive harm* to the borrowers.  For example, the declarant discusses research regarding the effect on troubled banks of the Board's announcement of formal supervisory actions against those banks.  Brown-Hruska Decl., ¶¶ 8, 9.  However, that research does not support a conclusion that competitive harm is unlikely here, both because the information disclosed is different, and because the potential harm is different.  See Board SJ Brief at 21.  Brown-Hruska's Decl. and much of the literature she cites relate to the effect of disclosure on stock prices.  While a lower stock price is one type of harm that could affect an institution, the Board's evidence also focused on other types of harm including the loss of public confidence, a sudden outflow of deposits, withdrawal of market sources of funding, and acceleration of existing loans to the institution.  See, supra, p. 19.  In addition, the market reaction to information about supervisory actions may well be different from the reaction to information that may suggest financial weakness, as information about DW borrowing has the potential to do.

Likewise, the declarant's discussion of *two* banks that made limited disclosures in year-end SEC filings of TAF and PDCF borrowing does not support a conclusion that harm is unlikely, because the declaration does not discuss *at all* the effect on the disclosing banks, much less the effects on banks that do *not* make this information available.[16]  Brown-Hruska Decl.,

---

[16] Indeed, the declarant concedes that even a coordinated, voluntary disclosure in August 2007 by four of the largest (and presumably strongest) banks that they were borrowing from the DW,

¶11. Based on the paucity of evidence regarding public disclosure of these borrowings, it appears that virtually all of the other borrowers from these facilities do not publicly disclose the fact that they are borrowers, and no evidence has been presented that mandatory public disclosure of all these borrowings would not result in harm to those institutions. In short, although plaintiff's submissions are voluminous, they are conspicuously lacking in evidence on the issue before the Court – whether or not disclosure *of the withheld information* is likely to cause substantial competitive harm to the *borrowers*. Plaintiff's arguments, and portions of the Brown-Hruska Decl., discussing the general benefits of disclose to the markets, or the benefits of disclosure to taxpayers or investors,[17] are not relevant to likelihood of substantial competitive harm to borrowers at the DW, TAF, PDCF and TSLF, and should not be given weight by the Court.

Finally, plaintiff's argument that the Board's failure to disclose lending information on individual borrowers is inconsistent with SEC disclosure rules is not germane. Plaintiff's SJ Brief at 31-33. Nothing prevents borrowers at the DW, TAF, PDCF and TSLF, if they are required or choose to do so, to disclose their borrowing from a Reserve Bank in SEC filings or otherwise. However, financial institutions borrowing at the DW or TAF, and primary dealers

---

in a bid to lift market confidence, caused "a momentary decline in [stock] prices on the day of the disclosure …." Brown-Hruska Decl., ¶ 28 and n. 28. This certainly suggests that an unexpected and unsought release of this information could have more serious and long-term consequences, particularly during this time of market instability. See Madigan Decl., ¶ 19. For the same reason, the Court should reject plaintiff's suggestion that "the information is stale from the market's perspective." Plaintiff's SJ Brief at 26 n.13. Even if, in theory, there is some diminution in the likelihood of competitive harm through the passage of time, the disclosure of sensitive information in the midst of market instability is almost certain to decrease the confidence institutions feel in accessing Reserve Bank lending facilities. Madigan Decl., ¶¶ 19, 28, 30.

[17] A FOIA requester may not "bolster the case for disclosure by claiming an additional public benefit" in release. Public Citizen Health Research Group v. FDA, 185 F.3d 898, 904 (D.C. Cir. 1999).

borrowing at the PDCF and TSLF, have an understanding that the *Board* and *Federal Reserve Banks* will keep confidential information regarding their borrowing, McLaughlin Decl., ¶ 18; Logan Decl., ¶ 20; <u>see also</u> Madigan Decl., ¶ 16, and the Board and Federal Reserve Banks do not publicly release that information.  Madigan Decl., ¶ 16; McLaughlin Decl., ¶¶ 9, 16, 18; Logan Decl., ¶ 20.  Indeed, plaintiff's showing that a small handful of banks -- out of numerous lending transactions in the 231 pages of withheld Reports -- have chosen to make limited disclosures in SEC filings regarding TAF borrowings, Plaintiff's SJ Brief at 33-34, only serves to underscore the Board's evidence that the information requested is highly sensitive and confidential commercial information, and that borrowers expect the Board and Reserve Banks to keep that information confidential.  McLaughlin Decl., ¶ 18; Logan Decl., ¶ 20.

**7. The Board Properly Withheld Individual Loan Information Under Exemption 5**

Last, plaintiff disputes the Board's exemption 5 argument, claiming the Supreme Court's decision in <u>FOMC</u> v. <u>Merrill</u>, 443 U.S. 340 (1979) was "limited to confidential commercial information generated in the process of awarding a contract.'"  Plaintiff's SJ Brief at 39 (quoting <u>Merrill</u>, <u>supra</u>, at 360).  This simply misreads the case.  In the quoted passage, the Court was discussing "the theory behind a privilege for confidential commercial information …."  <u>Merrill</u>, <u>supra</u>, 443 U.S. at 360.  The Court's actual holding comes three pages later when it finds that exemption 5 protects "sensitive information not otherwise available … immediate release of [which] … would significantly harm the Government's monetary functions or commercial interests …."  <u>Id</u>. at 363.  The particular information withheld was "the FOMC's written instructions to the Account Manager" at FRBNY about the particular actions necessary to implement monetary policy objectives, 443 U.S. at 352, not information relating to the award of a contract as plaintiff would suggest.

As explained in the Board's SJ Brief at 30-33, withheld information relating to DW borrowing is shielded under exemption 5 because disclosure would impair the Board's ability to use the DW as an instrument of monetary policy to complement open market operations in achieving the target federal funds rate. Given that the Supreme Court has held that the FOMC has a commercial and monetary interest in delayed release of the directives used in implementing monetary policy, Merrill, supra, 443 U.S. at 363, it follows that the Board has a similar interest in use of the DW as an instrument of monetary policy.

The Board does not dispute, as plaintiff argues, that the FOMC v. Merrill privilege applies only as long as the harm from disclosure exists. 443 U.S. at 360; see Plaintiff's SJ Brief at 39. But as the Supreme Court noted in approving delayed release of the directives, "the sensitivity of the commercial secrets involved, and the harm that would be inflicted on the Government by premature disclosure, should continue to serve as relevant criteria in determining the applicability of this Exemption 5 privilege." Id. at 363. Here, because the DW's utility as an instrument of monetary policy depends upon institutions' willingness to use it, Madigan Decl., ¶ 27, it is the Board's position that exemption 5 shields disclosure of individual DW lending information up to and including the date in the future that the borrowing institution or other institutions would no longer be deterred from borrowing at the DW by public disclosure of past DW loans. Because neither the Board nor the Reserve Banks disclose borrower-specific information regarding individual DW loans, see Madigan Decl. ¶ 16; McLaughlin Decl., ¶ 18, it is difficult to pinpoint such a date with certainty. However, given the Board's substantial evidence regarding the "stigma" associated with DW borrowing, see Board's SJ Brief at 18-23 and, supra, pp. 17-23, the time-lag almost certainly did not "expire[] months ago" as suggested in Plaintiff's SJ Brief at 39. Moreover, because the same documents *also* are exempt under

exemption 4, <u>see</u> Board's SJ Brief at 18-30, the withheld information nevertheless would not be subject to disclosure upon expiration of the <u>Merrill</u> privilege.  Exemption 5 therefore provides a separate and independent basis for granting the Board's SJ Motion.

## CONCLUSION

For the foregoing reasons, the Board's SJ Motion should be granted and the plaintiff's Cross Motion should be denied.

Dated: May 1, 2009

/s/Yvonne F. Mizusawa
Katherine H. Wheatley (KW7931)
Associate General Counsel
Yvonne F. Mizusawa (YM5081)
Senior Counsel
Board of Governors of the Federal
  Reserve System
20th and C Streets, N.W.
Washington, D.C.  20551
Ph: (202) 452-3436
Fax: (202) 736-5615