USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/18/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
BLOOMBERG L.P., : 08 CV 9595 (LAP)
:
        Plaintiff, : ORDER
:
v. :
:
BOARD OF GOVERNORS OF THE :
FEDERAL RESERVE SYSTEM, :
:
        Defendant. :
:
------------------------------------------------------X

LORETTA A. PRESKA, Chief United States District Judge:

    The Court having considered Mr. Giuffra's September 9, 2009 letter (with attachments), Mr. Rose's September 11, 2009 letter (attached) and Mr. Giuffra's September 14, 2009 letter (attached) as the motion of the Clearing House Association LLC to intervene in this action, Bloomberg's opposition thereto and the Clearing House's reply, respectively, it is hereby ordered that the motion of the Clearing House to intervene is granted.

    The Clearing House shall provide in electronic form Mr. Giuffra's September 9, 2009 letter with attachments, and, because it constitutes the motion papers, the Clerk of the Court shall accept it for docketing.

SO ORDERED:

Dated: September 17, 2009

                                                    /s/ Loretta A. Preska
                                        LORETTA A. PRESKA, Chief U.S.D.J.

08CV9595order

# WILLKIE FARR & GALLAGHER LLP

September 11, 2009

**BY FAX TO (212) 805-7941**

The Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street, Room 1320
New York, NY 10007

Re:  Bloomberg L.P. v. Board of Governors of the Federal Reserve System
     08 Civ. 9595 (LAP)

Dear Judge Preska:

This firm represents the plaintiff, Bloomberg L.P. ("Bloomberg"), in the above-referenced matter. We write in response to the September 9, 2009 letter to Your Honor from Robert J. Giuffra, Jr. on behalf of The Clearing House LLC ("The Clearing House") seeking permission to file a motion for leave to intervene in this action. As Mr. Giuffra notes, Bloomberg would oppose The Clearing House's proposed motion. We would be happy to discuss the bases for Bloomberg's opposition in a pre-motion conference, and we summarize those bases here.

First, we respectfully submit that The Clearing House's proposed motion – weeks after judgment was entered in this case – comes too late. Federal Rule of Civil Procedure 24 requires that a motion to intervene be "timely," and the Second Circuit has held that "an untimely motion to intervene must be denied." Farmland Dairies v. Comm'r of New York State Dep't of Agric. & Mkts., 847 F.2d 1038, 1043 (2d Cir. 1988) (internal citations omitted). The Second Circuit has held that where, as here, judgment has already been entered, intervention is "unusual and not often granted." Crown Fin. Cent. v. Winthrop Lawrence Corp., 531 F.2d 76, 77 (2d Cir. 1976) (quoting 3B Moore, Federal Practice ¶ 24.13(1), 24-526). Indeed, Judge Korman of the Eastern District recently denied a private party's motion to intervene in an action brought against the Food & Drug Administration where the motion was filed after judgment had already been entered. See Tummino v. Hamburg, No. 05-CV-366, 2009 U.S. Dist. LEXIS 76585, *32 (E.D.N.Y. Aug. 27, 2009).

And there is no good reason for The Clearing House's delay. The Clearing House and its members knew of their purported interest in the information sought by Bloomberg's action several months ago (when Bloomberg filed its complaint, which received a considerable amount of publicity) and failed to request leave to intervene until after the Court entered judgment. The Court should deny The Clearing

The Honorable Loretta A. Preska
September 11, 2009
Page 2

House's request to file a motion for leave to intervene for the same reasons the post-judgment motion to intervene was denied in Tummino.

The cases concerning intervention in FOIA actions cited in Mr. Giuffra's letter do not suggest a contrary result. Three of those cases involved motions to intervene early in the action, before a decision on the merits and entry of final judgment. See Yorkshire v. I.R.S., 26 F.3d 942 (9th Cir. 1994); Appleton v. FDA, 310 F. Supp. 2d 194 (D.D.C. 2004); Forest Guardians v. U.S. Dep't of Interior, No. CIV-02-1003, 2004 WL 3426413 (D.N.M. Jan. 12, 2004). The Clearing House could have moved to intervene prior to entry of final judgment, but it did not.

Nor does Dow Jones & Co. v. U.S. Department of Justice, 161 F.R.D. 247 (S.D.N.Y. 1995), in which Vince Foster's widow was allowed to intervene to try to prevent disclosure of his suicide note, support The Clearing House's position. While Mrs. Foster's motion was filed after the court granted summary judgment, it came before final judgment was entered, as the court emphasized in finding it timely. See id. at 251, 252. Here, final judgment has already been entered. Moreover, the court in Dow Jones emphasized that Mrs. Foster did "not intend to add to the factual record already before the court." Id. at 253. The Clearing House has made no such representation. To the contrary, it suggests that it seeks to intervene in order to make factual arguments not asserted by the Board. See Giuffra Sept. 9, 2009 Letter at 3 (arguing that intervention is appropriate because The Clearing House is "in a better position than the Board to demonstrate the competitive harm its members will suffer from disclosure"). As discussed below, such an effort to expand the record on appeal is procedurally improper.

Second, The Clearing House does not have standing to intervene. To establish standing, a proposed intervenor must establish that: (1) it has "suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not "conjectural" or "hypothetical;"'" (2) there is a "causal connection between the injury and the conduct complained of;" and (3) it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Further, given that The Clearing House wishes to intervene on behalf of its members, it must establish that it has associational standing by showing that: (1) at least one of its members has standing to sue in its own right; (2) the interests the association seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the participation of an individual member in the lawsuit. See Tummino, 2009 U.S. Dist. LEXIS 76585, *11. This requires The Clearing House to "make specific allegations establishing that at least one identified member had suffered or would suffer harm." Summers v. Earth Island Institute, 129 S. Ct. 1142, 1151 (2009). See also U.S. v. AVX Corp., 962 F.2d 108, 117 (1st Cir. 1992) (holding that "general allegation of actual injury to members" does not suffice for standing purposes where intervening party does not identify members affected and the "asserted injury is not anchored in any relevant particulars"); Am. Immigration Lawyers v. Reno, 18 F. Supp. 2d 38, 40 (D.D.C. 1998) (no standing where "nowhere in their pleadings do the plaintiffs identify one injured person by name, allege that the injured person is a member of one of the plaintiff organizations . . ., or allege facts sufficient to establish the harm to that member").

Here, The Clearing House suggests that certain of its members have borrowed from the Fed programs that are the subject of Bloomberg's request, without identifying those borrowers, and speculates that

5121346.5

The Honorable Loretta A. Preska
September 11, 2009
Page 3

those members would suffer competitive injury if the fact that they borrowed became public. Bloomberg notes, however, that at least three of The Clearing House's ten members (Bank of America, Citibank, and JPMorgan Chase Bank), consistent with their obligations under the federal securities laws, have disclosed in filings with the Securities & Exchange Commission their participation in the Fed programs in question. Nothing in the record suggests that those institutions suffered any harm whatsoever as a result of those disclosures. Thus, the central premise of The Clearing House's claimed need to intervene – that public disclosure of the names of its member banks who borrow emergency funds causes a great likelihood that its customers, counterparties and other market participants will draw a negative inference – is contradicted by the experience of its own members. See Bloomberg's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Its Cross-Motion for Summary Judgment at 31-34. And, in any event, this Court already has held that the supposed harm claimed by The Clearing House is "insufficient" to show "that disclosure . . . will cause the borrowers to suffer imminent competitive harm. . . ." Opinion and Order at 40.

Finally, The Clearing House cannot show that its interests will not adequately be protected by the Board. In that regard, The Clearing House expresses concern that the Board may not preserve its appellate rights. That seems unlikely, given the vigor with which the Board has litigated this case thus far, and given that the Board will be before the Second Circuit on these issues in any event in light of Fox News' filing of a notice of appeal in its FOIA case against the Fed. Assuming there is an appeal in this case, The Clearing House would be limited by the record before the trial court. See Dictograph Prods. Co. v. Sonotone Corp., 231 F.2d 867, 867 (2d Cir. 1956) (Court of Appeals could not consider evidence that was not before the district court); Schreier v. Weight Watchers Northeast Region, 872 F. Supp. 1, 5 (E.D.N.Y. 1994) ("[t]he Second Circuit has explained that the record should be comprised of only that which was before the district court"). Because The Clearing House cannot expand the record, it is unclear how The Clearing House "is in a better position than the Board to demonstrate the competitive harm its members will suffer from disclosure." Giuffra Sept. 9, 2009 Letter at 3. And, in the event neither party preserves appellate rights, that should end the matter. See Tummino, 2009 U.S. Dist. LEXIS 76585, *32 ("[p]ermitting intervention at this point would force the parties who are directly interested in the litigation and who do not object to the final judgment to engage in yet another round of costly and time consuming litigation").

In short, The Clearing House's motion to intervene would be untimely, The Clearing House does not have standing and cannot establish all of the requirements for intervention, and The Clearing House seeks to intervene in order to attempt impermissibly to expand the record on appeal. For all of these reasons, Bloomberg would oppose a motion by The Clearing House to intervene.

Respectfully submitted,

Scott S. Rose

cc: Yvonne F. Mizusawa (by email)
 Robert J. Giuffra, Jr. (by email)

5121346.5

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

September 14, 2009

By Hand

Chief Judge Loretta A. Preska,
   United States District Court for the
   Southern District of New York,
   United States Courthouse,
     500 Pearl Street,
      New York, New York 10007.

RECEIVED
SEP 14 2009
LORETTA A. PRESKA
U.S. DISTRICT JUDGE
S. D. N. Y.

    Re:   *Bloomberg L.P.* v. *Board of Governors of the Federal Reserve System* (Docket No. 08 CV 9595)

Dear Chief Judge Preska:

    On behalf of The Clearing House Association L.L.C. (the "Clearing House"), we respond to Plaintiff Bloomberg L.P.'s letter to the Court, dated September 11, 2009 (the "Letter").

    1.   The Clearing House's fully-briefed motion to intervene *is* timely. The Clearing House first learned of this Court's August 24, 2009 Order (the "Order") on August 25. Acting immediately, on August 26, the Clearing House's General Counsel, Norman Nelson, submitted a declaration supporting Defendant Board of Governors of the Federal Reserve System's (the "Board") application for an emergency stay pending appeal. (Docket Entry #33). On September 3, in an effort to avoid motion practice, the Clearing House's counsel sought the Board's and Bloomberg's consent to the Clearing House's intervention. The Board consented the same day, but Bloomberg did not finally advise us of its opposition until September 8, the day before the Clearing House submitted its papers to the Court.

    Although glossed over by Bloomberg, the Clearing House seeks leave to intervene *to appeal* this Court's Order to the Second Circuit, not to relitigate this action in the District Court before such an appeal.[1] In its August 28 Order staying the Order, the Court directed that the Board file its notice of appeal by September 30, 2009. Thus, the Clearing House sought leave to intervene to appeal 21 days *before* the deadline that this Court set for the filing of a notice of appeal.

---

[1]   In the event of a remand by the Second Circuit, the Clearing House reserves its right to introduce additional evidence in this Court.

Tellingly, in its Letter, Bloomberg studiously ignores the law governing the Clearing House's proposed motion to intervene for purposes of an appeal. In *United Airlines v. McDonald*, 432 U.S. 385, 390, 396 (1977), the Supreme Court held that such post-judgment intervention was proper where, as here, the proposed intervenor "acted promptly after the entry of final judgment," in that case, 18 days after the entry of final judgment and "within the time period in which the named plaintiffs could have taken an appeal." In fact, in seeking to intervene now, the Clearing House is following the Supreme Court's view that the "better practice" is for non-parties affected by a judgment "to seek intervention for purposes of an appeal." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988). In granting "post-judgment intervention" in *Dow Jones & Co. v. U.S. Dep't of Justice*, 161 F.R.D. 247, 254 (S.D.N.Y. 1995), where Mrs. Foster sought intervention 18 days after the grant of summary judgment, then-Judge Sotomayor stressed that while "I believe my Order was correct, . . . I will do nothing that might curtail appellate review of [that] Order." This Court should do the same here, where the Clearing House sought intervention just 16 days after this Court granted summary judgment and denying the Clearing House's motion might curtail appellate review.

Moreover, the cases cited by Bloomberg confirm that the Clearing House's motion to intervene *is* timely. Unlike here, in those cases, intervention would have prejudiced one or more parties or reopened concluded proceedings. *See Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1042, 1044 (2d Cir. 1987) (affirming denial of motion to intervene where, unlike here, intervention would "jeopardize[]" settlement of litigation and "expose[]" State "to a substantial money judgment"); *Crown Fin. Corp. v. Winthrop Lawrence Corp.*, 531 F.2d 76, 77 (2d Cir. 1976) (affirming denial of motion to intervene "made more than four years after the action in the Southern District had been terminated by judgment"). Indeed, unlike the Clearing House, in *Tummino v. Hamburg*, No. 05-CV-366, 2009 U.S. Dist. LEXIS 76585, at *9 (E.D.N.Y. Aug. 27, 2009), the proposed intervenors "did not move to intervene and appeal within 60 days of the March 24, 2009 judgment," but instead waited until more than 30 days *after* the time for filing a notice of appeal.

2.      Bloomberg has identified *no* prejudice to it – none – if the Court grants the Clearing House's motion to intervene to appeal the August 24 Order. The Board consents to intervention; the action is stayed pending appeal; and the Clearing House agrees to seek "expedited treatment of the appeal" on precisely the same schedule as the Board. *See LaRouche v. FBI*, 677 F.2d 256, 257 (2d Cir. 1982) (citations omitted) (reversing denial of intervention in FOIA action, where "[i]ntervention will neither interfere with the orderly processes of the court, nor prejudice the rights of the parties").

By contrast, Clearing House members face substantial prejudice if the Clearing House is not permitted to intervene to protect the substantial interests of its members in confidential information they have provided, or will provide in the future, in connection with Federal Reserve Bank ("FRB") lending programs (the "Lending Programs"). Although the Board is seeking the Solicitor General's approval to appeal the

Order, there is no assurance that the Board will obtain such approval or, if necessary, the Board would exhaust its appellate remedies, including to the Supreme Court. *See LaRouche*, 677 F.2d at 258 (emphasis added) (intervenor must meet only "minimal burden" to "show[] that representation by the existing parties *may be* inadequate").

        3.        The Clearing House plainly has standing to represent its members' interests in the confidential information they have submitted, or will submit in the future, in accessing the Lending Programs. Clearing House members are among the most important participants in the international banking and payments systems. In its motion to intervene, the Clearing House has identified its members, and, as Bloomberg recognizes (Letter at 3), three of ten Clearing House members have publicly disclosed limited information about their participation in the Lending Programs. Bloomberg, however, seeks commercially sensitive information that the Board and participating financial institutions have sought to keep confidential, including about the terms, rates and amounts of loans, and the collateral pledged in support of those loans. Order at 7-8.

As the representative of its members, the Clearing House often participates in litigation to protect its members' interests. *See, e.g., Cuomo v. Clearing House Ass'n LLC*, 129 S. Ct. 2710 (2009). There can be no doubt that Clearing House members would have standing to sue in their own right, that protecting its members' interest in their confidential information is germane to the Clearing House's purpose of representing its members' interests in responding to legal issues affecting them, and that protection of its members' interests does not require the participation of an individual member in the appeal of this Court's Order affecting *all* financial institutions that participate in the Lending Programs. *See New York Public Interest Research Group, Inc. v. Regents of the Univ. of the State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (pharmaceutical association "has a sufficient interest to permit it to intervene since the validity of a regulation from which its members benefit is challenged").

As described in the Nelson Declaration, Clearing House members have participated in the Lending Programs with the clear understanding that the FRBs would not publicly disclose information about their participation, and Clearing House members believe that they will suffer competitive harm if the Board is required to produce, as required by the Order, the commercially sensitive information sought by Bloomberg. (Docket #33 at ¶¶ 5, 11). In opposing intervention, Bloomberg cannot rely on this Court's finding of fact that such disclosures will not result in such harm (Letter at 3), when that is one of the issues that the Clearing House wishes to appeal.

                                                                            Respectfully,

                                                                            Robert J. Giuffra, Jr.

cc: Yvonne Facchina Mizusawa, Esq.
    (Board of Governors of the Federal Reserve System)

   Thomas H. Golden, Esq.
   (Willkie Farr & Gallagher LLP)