**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

BLOOMBERG L.P.,

                Plaintiff,

        -v-

BOARD OF GOVERNORS OF THE FEDERAL
RESERVE SYSTEM,

              Defendant.

-------------------------------------------------------------x

Case No. 08 CV 9595 (LAP)


# MEMORANDUM OF LAW IN SUPPORT OF
## THE CLEARING HOUSE ASSOCIATION L.L.C.'S  MOTION TO INTERVENE

H. Rodgin Cohen
Michael M. Wiseman
Robert J. Giuffra, Jr.
William J. Snipes
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Attorneys for Proposed Intervenor The
Clearing House Association L.L.C.*

September 9, 2009

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ..................................................................................................................4

ARGUMENT ......................................................................................................................8

I.  THE CLEARING HOUSE HAS THE RIGHT TO INTERVENE UNDER
    RULE 24(A)(2) TO PROTECT ITS MEMBERS' CONFIDENTIAL
    INFORMATION.............................................................................................................8

    A.  The Clearing House's Motion Is Timely. ...............................................................9

    B.  The Clearing House Has a Substantial Interest in Preventing the
        Disclosure of Commercially Sensitive Information About Its
        Members' Participation in the Fed Lending Programs. ........................................10

    C.  Disposition of this Action May Substantially Impair the Ability of
        Clearing House Members To Protect *Their* Confidential
        Information. ........................................................................................................11

    D.  The Clearing House Members' Interests May Not Be Adequately
        Represented by the Existing Parties to this Action..............................................14

II. THIS COURT ALSO SHOULD PERMIT THE CLEARING HOUSE TO
    INTERVENE UNDER RULE 24(B).................................................................................14

CONCLUSION....................................................................................................................16

# TABLE OF AUTHORITIES

*Page(s)*

### CASES

*Appleton* v. *FDA*,
    310 F. Supp. 2d 194 (D.D.C. 2004) ....................................................................................4

*Bloomberg L.P.* v. *Bd. of Governors of the Fed. Reserve Sys.*,
    No. 08 Civ. 9595, 2009 WL 2599336 (Aug. 24, 2009) ................................................. *passim*

*Building and Const. Trades Council of Buffalo, New York* v. *Downtown Dev., Inc.*, 448
    F.3d 138 (2d Cir. 2006)...............................................................................................................5

*Commack Self-Service Kosher Meats, Inc.* v. *Rubin*,
    170 F.R.D. 93 (E.D.N.Y. 1996) ...............................................................................................10

*Cuomo* v. *Clearing House Ass'n, LLC*,
    129 S. Ct. 2710 (2009)................................................................................................................4

*Dow Jones & Co., Inc.* v. *U.S. Department of Justice*,
    161 F.R.D. 247 (S.D.N.Y. 1995) ...................................................................................... *passim*

*Forest Guardians* v. *U.S. Dep't of Interior*,
    No. CIV-02-1003, 2004 WL 3426413 (D.N.M. Jan. 12, 2004)...................................................4

*Fox News Network LLC* v. *Bd. of Governors of the Fed. Reserve Sys.*,
    No. 09 Civ. 272, 2009 WL 2345097 (S.D.N.Y. July 30, 2009) ..................................... *passim*

*Gulf & Western Industries, Inc.* v. *United States*,
    615 F.2d 527 (D.C. Cir. 1979)..................................................................................................12

*H.L. Hayden Co. of New York* v. *Siemens Medical*,
    797 F. 2d 85 (2d Cir. 1986)........................................................................................................3

*Hunt* v. *Wash. State Apple Adver. Comm'n*,
    432 U.S. 333 (1977)....................................................................................................................5

*In re Faleck & Margolies, Ltd.*,
    Nos. 89 Civ. 8548 & 90 Civ. 1356, 1995 WL 33631 (S.D.N.Y. Jan. 30, 1995) ....................15

*In re Initial Public Offering Securities Litigation*,
    499 F. Supp. 2d 415 (S.D.N.Y. 2007)......................................................................................15

*Marino* v. *Ortiz*,
    484 U.S. 301 (1988)....................................................................................................................3

*Mastercard Int'l Inc.* v. *Visa Int'l Service Ass'n, Inc.*,
  471 F.3d 377 (2d Cir. 2006)......................................................................8

*NAACP* v. *New York*,
  413 U.S. 345 (1973)................................................................................9

*Nadler* v. *FDIC*,
  92 F.3d 93 (2d Cir. 1996) .......................................................................12

*Nat'l Resources Defense Council, Inc.* v. *Tenn. Valley Auth.*,
  340 F. Supp. 400 (S.D.N.Y. 1971)...........................................................15

*New York Public Interest Research Group, Inc.* v. *Regents of the
University of the State of New York*,
  516 F.2d 350 (2d Cir. 1974)..............................................................10, 14

*Public Citizen's Health Research Group* v. *FDA*,
  704 F.2d 1280 (D.C. Cir. 1983) ....................................................... 11-12

*Simpson* v. *Lear Astronics Corp.*,
  77 F.3d 1170 (9th Cir. 1996) .............................................................. 3-4

*Tachiona* v. *Mugabe*,
  186 F. Supp. 2d 383 (S.D.N.Y. 2002)........................................................8

*Trbovich* v. *United Mine Workers of America*,
  404 U.S. 528 (1972)...............................................................................14

*United Airlines* v. *McDonald*,
  432 U.S. 385 (1977)..............................................................................3, 9

*United States* v. *Hooker Chems. & Plastic Corp.*,
  749 F.2d 968 (2d Cir. 1984)......................................................................8

*United States* v. *Pitney Bowes, Inc.*,
  25 F.3d 66 (2d Cir. 1994) .......................................................................15

*Werbungs Und Commerz Union Austalt* v. *Collectors' Guild, Ltd.*,
  782 F. Supp. 870 (S.D.N.Y. 1991)............................................................9

*Yorkshire* v. *I.R.S.*,
  26 F.3d 942 (9th Cir. 1994) .....................................................................3

**STATUTE AND RULE**

5 U.S.C. § 552.............................................................................................6

Federal Rule of Civil Procedure 24 ..................................................... *passim*

**OTHER AUTHORITY**

Moore's Federal Practice ¶ 24.03 ................................................................................8

# PRELIMINARY STATEMENT

Pursuant to Rules 24(a)(2) and 24(b) of the Federal Rules of Civil Procedure, the Clearing House Association L.L.C. (the "Clearing House"), an association of leading financial institutions,[1] seeks to intervene in this action to appeal this Court's August 24, 2009 Opinion and Order requiring the Board of Governors of the Federal Reserve System (the "Board") to disclose records reflecting certain confidential financial information (the "Confidential Information") to Bloomberg L.P. ("Bloomberg"), one of the world's leading news services. The Board consents to the Clearing House's intervention here, while Bloomberg opposes such intervention.

Specifically, the Clearing House seeks to intervene to protect the substantial interests of its members in Confidential Information that they have provided (or will provide in the future) to the Federal Reserve Banks ("FRBs"). The Clearing House has not had access to the internal Board documents sought by Bloomberg, but understands, based on a description of those documents in the Board's motion for summary judgment, that those records reflect whether, and, if so, to what extent, Clearing House members participated in certain lending programs authorized by the Board, including emergency programs established in response to the recent global financial crisis ("Fed Lending Programs"). (*See* Declaration of Alison M. Thro ("Thro Decl."), Docket Entry #12, Ex. 4.)

In its August 24 Opinion and Order, this Court ruled that the Freedom of Information Act ("FOIA") required the Board to disclose the records reflecting the Confidential Information to Bloomberg, because this information was (1) not "obtained from" the financial

---

[1] The members of the Clearing House are: ABN Amro Bank N.V.; Bank of America, National Association; The Bank of New York Mellon; Citibank, N.A.; Deutsche Bank Trust Company Americas; HSBC Bank USA, National Association; JPMorgan Chase Bank, National Association; UBS AG; U.S. Bank National Association; and Wells Fargo Bank, National Association.

institutions participating in the Fed Lending Programs and (2) its disclosure would not cause competitive harm to those institutions. *Bloomberg L.P.* v. *Bd. of Governors of the Fed. Reserve Sys.*, No. 08 Civ. 9595, 2009 WL 2599336, at *12-14 (S.D.N.Y. Aug. 24, 2009) ("August 24 Order").

Respectfully, the Clearing House believes that this Court misinterpreted FOIA, and that the disclosure of their Confidential Information to Bloomberg will cause serious competitive harm to Clearing House members and other financial institutions during a period of continued market fragility. As described in the Declaration of Norman R. Nelson, dated August 26, 2009, Clearing House members have participated in the Fed Lending Programs with the clear understanding that the FRBs will not publicly disclose information about their participation. (Declaration of Norman R. Nelson ("Nelson Decl."), Docket Entry #33, at ¶ 4.)

As demonstrated below, the Clearing House's request meets Rule 24(a)'s requirements for intervention as of right.

1.     This request, made just 16 days after this Court's August 24 Order, is timely, and the Clearing House's intervention will not prejudice Bloomberg by delaying the litigation of this action, including any appeal to the Second Circuit. The Clearing House will pursue an appeal on the same schedule as the Board.

2.     The Clearing House, which has standing to represent the interests of its members, plainly has an interest in the Confidential Information, the public disclosure of which is the subject of this FOIA action.

3.     The Clearing House is so situated that, without intervention, disposition of the action will "as a practical matter impair or impede [its] ability to protect" its members' interest in their Confidential Information, including in the future. Fed. R. Civ. P. 24(a)(2).

4.    The Clearing House members' interest in their Confidential Information may not be adequately protected by the Board.  Although the Board is seeking the Solicitor General's approval to appeal this Court's August 24 Order to the Second Circuit, there is no assurance that the Board will obtain such approval or, if necessary, the Board would exhaust its appellate remedies, including seeking Supreme Court review.  Moreover, in its August 24 Order, this Court emphasized that the Board had not "point[ed] to an immediate risk of competitive harm" and had, instead, "essentially speculate[d] on how a borrower *might* enter a downward spiral of financial instability if its participation in the Federal Reserve lending program were to be disclosed."  *Bloomberg L.P.*, 2009 WL 2599336, at *14 (emphasis in original).  The Clearing House is in a better position than the Board to demonstrate that its members will suffer severe competitive harm if *their* Confidential Information is publicly disclosed.

The Supreme Court has recognized that post-judgment intervention for purposes of appeal is appropriate where, as here, a putative intervenor "acted promptly after the entry of final judgment."  *United Airlines* v. *McDonald*, 432 U.S. 385, 396 (1977); *see also Marino* v. *Ortiz*, 484 U.S. 301, 302 (1988) (because "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment," the "better practice" is for non-parties who are affected by a court's judgment "to seek intervention for purposes of appeal").  The Second Circuit has similarly recognized that "intervention for the purpose of protecting the [intervenor's] appellate rights may be appropriate."  *H.L. Hayden Co. of New York* v. *Siemens Medical*, 797 F. 2d 85, 88 (2d Cir. 1986).

Courts in this and other circuits have permitted non-governmental entities and persons to intervene, including post-judgment, in FOIA actions.  *See*, *e.g.*, *Yorkshire* v. *I.R.S.*, 26 F.3d 942, 945 (9th Cir. 1994), *superseded on other grounds by Simpson* v. *Lear Astronics Corp.*,

77 F.3d 1170 (9th Cir. 1995) (affirming grant of intervention in FOIA action); *Dow Jones & Co., Inc.* v. *U.S. Dep't of Justice*, 161 F.R.D. 247 (S.D.N.Y. 1995) (Sotomayor, J.) (permitting post-judgment intervention in FOIA action); *Appleton* v. *FDA*, 310 F. Supp. 2d 194 (D.D.C. 2004) (permitting intervention in FOIA action); *Forest Guardians* v. *U.S. Dep't of Interior*, No. CIV-02-1003, 2004 WL 3426413 (D.N.M. Jan. 12, 2004) (permitting intervention in FOIA action).

In deciding this motion, we urge the Court to follow the example of then-Judge Sotomayor in granting post-judgment intervention to the wife of former White House Deputy Counsel Vincent Foster. In *Dow Jones*, 161 F.R.D. 247, *The Wall Street Journal* sought a copy of the suicide note of Mr. Foster. After ruling that the Department of Justice should produce that note under FOIA, then-Judge Sotomayor granted Mrs. Foster's post-judgment motion to intervene under Rules 24(a) and 24(b) in order to protect her appellate right to litigate over the confidentiality of the note. Recognizing "the great concern [intervenor] has in the Note," then-Judge Sotomayor said, "I will do nothing that might curtail appellate review of my . . . Order" requiring disclosure of the Note. *Id.* at 254.

## BACKGROUND

### 1.     The Clearing House

The members of the Clearing House are among the most important participants in the international banking and payment systems and among the world's principal intermediaries in interbank funds transfers. (Nelson Decl., at ¶ 1.) The Clearing House frequently participates as a party in litigation to protect its members' interests.[2]

---

[2]     *See*, *e.g.*, *Cuomo* v. *Clearing House Ass'n, LLC*, 129 S. Ct. 2710, 2714 (2009) (reviewing challenge by the Clearing House to New York Attorney General's investigation of lending practices of certain of its members and other national banks). The Clearing House, like other organizations of its type, has standing to bring this action on behalf of its members if, as here, "'(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose;

## 2. The Fed Lending Programs

Bloomberg seeks Board records containing Confidential Information regarding the following Fed Lending Programs: the Discount Window, the Term Auction Facility ("TAF"), the Primary Dealer Credit Facility ("PDCF"), and the Term Securities Lending Facility ("TSLF").[3] Certain Clearing House members have participated in some of these Fed Lending Programs, (*see* Nelson Decl. at ¶ 4) and may need to participate in the future. To do so, Clearing House members and other financial institutions provided Confidential Information to the FRBs about themselves and their borrowing needs. The Clearing House understands that the FRBs provided a limited portion of this information to the Board. (Thro Decl., Docket Entry #12 at ¶¶ 10-11.)

Financial institutions provided this Confidential Information to the FRBs with the understanding that the information would be kept confidential. For example, the Discount Window website expressly provides: "The Federal Reserve will not publish information regarding institutions' eligibility for primary or secondary credit," and "[t]he Federal Reserve

and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Building & Constr. Trade Council of Buffalo, New York & Vicinity* v. *Downtown Dev., Inc.*, 448 F.3d 138, 144 (2d Cir. 2006) (quoting *Hunt* v. *Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

[3] As the Board described in its motion for summary judgment, the Discount Window is a permanent, basic lending program through which the twelve FRBs provide overnight funding to eligible depository institutions. (Declaration of Brian F. Madigan ("Madigan Decl."), Docket Entry # 13, at ¶ 6; Declaration of Susan E. McLaughlin, Docket Entry #14, at ¶ 4.) The Board authorized the FRBs to initiate emergency lending under these other programs to relieve severe liquidity strains in the market, to reduce the risks of systemic financial instability, and to strengthen the effectiveness of the monetary policy in addressing the risks of inflation. (Madigan Decl., at ¶ 7.) TAF is similar to the Discount Window, except that TAF provides longer than overnight funding. (*Id.* at ¶ 8.) PDCF extended the Federal Reserve Bank of New York's ("FRBNY") authority to make emergency overnight loans. (*Id.* at ¶¶ 8-9.) And, TSLF permits primary dealers to obtain a 28-day loan of Treasury securities from FRBNY by pledging other kinds of securities. (*Id.* at ¶¶ 9-10.)

does not publish information about individual institution's borrowings."  (Declaration of Robert

J. Giuffra, Jr., dated September 9, 2009 ("Giuffra Decl."), Ex. A at 8.).

     **3.**     **Bloomberg's FOIA Action**

     On November 7, 2008, Bloomberg brought this action under FOIA to compel

disclosure of certain Board information.  Although the Board produced certain non-exempt

information in response to those requests pre-litigation, the Board determined that responsive

documents, titled Daily Report of Primary, Secondary and Other Extensions of Credit by

Remaining Term (the "Remaining Term Reports"), were exempt from disclosure under FOIA.[4]

(*See* Thro Decl., Docket Entry # 12, Ex. 4 at 1.)  The Remaining Term Reports list "primary and

secondary credit discount window loans and special credit and liquidity facility loans by the

name of the borrowing institution, institution type (e.g., large money center bank, other large

commercial bank, small commercial bank, etc.), Federal Reserve District extending the loan,

individual loan amounts, and origination and maturity date (showing the 'term') of individual

loans . . . the total amount of credit outstanding and total credit maturing on a specific date."

(*Id.*)

     The Board and Bloomberg cross-moved for summary judgment, submitting

supporting declarations and statements of material facts not in dispute; both challenged, in part,

the other party's account of the material facts not in dispute.  The Board disputed Bloomberg's

statement that the Remaining Term Reports were not exempt from disclosure under FOIA.  (*See*

---

[4]     FOIA generally provides any person with the statutory right, enforceable in court, to obtain access to government information in executive branch agency records.  This right to access is limited when such information is protected from disclosure by one of FOIA's nine statutory exemptions.  *See generally* 5 U.S.C. § 552.  The relevant exemption here, Exemption 4, provides:  "This section does not apply to matters that are . . . trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).

Defendant's Response to Plaintiff's Statement of Material Facts Not in Dispute, Docket Entry #25 at 7.)

### 4. The Court's August 24 Order and August 28, 2009 Stay

On August 24, this Court granted Bloomberg's motion and ordered the Board to disclose records reflecting Confidential Information about borrowers in the Fed Lending Programs, including Clearing House members.  In doing so, the Court departed from recent precedent in this District, largely, we respectfully submit, on the basis of two erroneous assumptions:  (1) that the withheld documents only contained a single piece of information obtained from financial institutions—their names; and (2) that the financial institutions would not be competitively harmed from the disclosure of their names.  *See* August 24 Order at *12-14.

On August 28, 2009, the Court issued a stay pending appeal of its August 24 Order ("August 28 Order").  In seeking a stay, the Board advised the Court that the question of "whether the Board properly withheld the names and amounts of financial institutions obtaining loans" under the Fed Lending Programs raises a "substantial legal question for review," because "much of the Board's evidence and arguments were accepted by another judge in this Court" in *Fox News Network, LLC* v. *Bd. of Governors of the Fed. Reserve Sys.*, No. 09 Civ. 272, 2009 WL 2345097 (S.D.N.Y. July 30, 2009).  (*See* Defendant Board of Governors of the Federal Reserve System's Memorandum of Law in Support of Motion For a Stay Pending Appeal, Docket Entry # 33, at 3.)

In its order granting the stay, the Court noted the "Board's undertaking to obtain a decision on authorization" to pursue an appeal, and required the Board to notify the Court and the plaintiff "if it does not obtain authorization to pursue an appeal or otherwise decides not to pursue an appeal."  August 28 Order at 2.

**ARGUMENT**

**I.     THE CLEARING HOUSE HAS THE RIGHT TO INTERVENE UNDER RULE 24(A)(2) TO PROTECT ITS MEMBERS' CONFIDENTIAL INFORMATION.**

Under Fed. R. Civ. P. 24(a)(2), a non-party, such as the Clearing House, has the right to intervene when, as here, it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  *See also Mastercard Int'l Inc.* v. *Visa Int'l Service Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006) (courts should grant intervention as of right when "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties").

The Second Circuit has construed Rule 24 "flexibl[y]," mindful that this rule is intended to "abandon[] formalistic restrictions in favor of practical considerations to allow courts to reach pragmatic solutions to intervention problems."  *United States* v. *Hooker Chems. & Plastic Corp.*, 749 F.2d 968, 982 n.13, 983 (2d Cir. 1984) (Friendly, J.) (internal quotations omitted); *see generally* Moore's Federal Practice ¶ 24.03[1][a] & n. 3.01 ("Rule 24 is to be construed liberally . . . , and doubts resolved in favor of the proposed intervenor.") (collecting authority).[5]

---

[5]     In satisfaction of Fed. R. Civ. P. 24(c)'s requirement that "[a] motion to intervene must . . . state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought," the Clearing House submits herewith a notice of motion, this memorandum of law, supporting exhibits, and a proposed notice of appeal.  *Cf. Tachiona* v. *Mugabe*, 186 F. Supp. 2d 383, 393 & n.8 (S.D.N.Y. 2002) (holding that "[w]here . . . the position of [intervenor] is apparent from other filings and where the opposing party will not be prejudiced, Rule 24(c) permits a degree of

### A. The Clearing House's Motion Is Timely.

The Supreme Court has held that "[t]imeliness is to be determined from all the circumstances" and "by the court in the exercise of its sound discretion." *NAACP* v. *New York*, 413 U.S. 345, 365 (1973). In allowing intervention in FOIA action where the motion was filed 18 days after grant of summary judgment, then-Judge Sotomayor considered "(1) the length of time the applicant knew or should have known of his or her interest before making the motion; (2) prejudice to existing parties resulting from the applicant's delay; (3) prejudice to applicant if the motion is denied; and (4) presence of unusual circumstances militating for or against a finding of timeliness." *Id.* (internal quotations and citations omitted). By any measure, the Clearing House's motion for leave to intervene here is timely.

*First*, the Clearing House is filing its motion within just 16 days of this Court's August 24 Order directing the Board to disclose Confidential Information of Clearing House members. *See United Airlines*, 432 U.S. at 390 (intervention motion filed 18 days after entry of final judgment timely under Rule 24(a)(2); *Dow Jones*, 161 F.R.D. at 252 (intervention motion filed 18 days after grant of summary judgment timely).

*Second*, there will be no prejudice to the parties, including Bloomberg, by the Clearing House's intervention. The Board consents to this motion; the action is stayed pending appeal; and the Clearing House agrees to seek "expedited treatment of the appeal" as the Board

---

flexibility with technical requirements"; accepting government's letter brief "expressly limit[ing] the purpose of its intervention to appealing certain aspects of the Decision after . . . the entry of final judgment" as "constituting the motion to intervene"); *Werbungs Und Commerz Union Austalt* v. *Collectors' Guild, Ltd.*, 782 F. Supp. 870, 874 (S.D.N.Y. 1991) ("affidavits and briefs which set forth sufficient facts and allegations to give all parties notice of [intervenor's] claims" sufficient under Rule 24(c)).

is required to do by the Court's August 28 Order. In other words, the timing of the Second

Circuit appeal will not be affected by the Clearing House's intervention.

Third, the rights of the Clearing House members may be prejudiced if

intervention is not permitted. The Board may not obtain the Solicitor General's authorization to

pursue an appeal or fully exercise its appellate rights, including to the Supreme Court. In *Dow*

*Jones*, then-Judge Sotomayor permitted post-judgment intervention where the Department of

Justice had not yet decided whether to appeal the order requiring disclosure of Mr. Foster's

suicide note. *See* 161 F.R.D. at 251.

Finally, this Court's decision conflicts with Judge Hellerstein's interpretation of

FOIA Exemption 4 in *Fox News*, 2009 WL 2345097. Given that two courts in this District have

issued conflicting rulings on the disclosure of Confidential Information about participants in the

Fed Lending Programs, this Court should permit the Clearing House to intervene to protect its

members' interest in maintaining the confidentiality of that information and to afford the Second

Circuit the benefit of the Clearing House's views on this important legal issue, the resolution of

which will affect the confidentiality of Fed Lending Programs in the future.

### B. The Clearing House Has a Substantial Interest in Preventing the Disclosure of Commercially Sensitive Information About Its Members' Participation in the Fed Lending Programs.

Here, the Clearing House plainly has a substantial interest in preventing the public

disclosure of its members' Confidential Information, including whether they have participated in

the Fed Lending Programs, and avoiding the competitive harm that undoubtedly will result from

disclosure. *See Commack Self-Service Kosher Meats, Inc.* v. *Rubin*, 170 F.R.D. 93, 101

(E.D.N.Y. 1996) (proposed intervenor's interest in avoiding competitive harm sufficient

"economic interest" to support intervention); *New York Public Interest Research Group, Inc.* v.

*Regents of the University of the State of New York*, 516 F.2d 350, 352 (2d Cir. 1974) ("*Regents*")

(pharmaceutical association "has a sufficient interest to permit it to intervene since the validity of a regulation from which its members benefit is challenged.").

In its August 24 Order, this Court held that FOIA Exemption 4 did not apply to the documents at issue because the Board has not met its "burden of showing that the information, other than the borrowers' names, in the Remaining Term Reports was obtained from a person." August 24 Order at *12. In reaching the contrary conclusion, Judge Hellerstein held that a borrower's name and loan amount is information "obtained from" the borrower and that "any responsive document qualifies as exempt because it contains information obtained from the borrower: names, amounts, and collateral." *Fox News*, 2009 WL 2345097 at *13. As Judge Hellerstein held, "[b]ecause the borrower's name, the amount it must borrow, and the property it volunteers to provide as collateral is information that originated with the borrower and is reflected in the data Fox seeks, I hold that it was 'obtained from' the borrower." *Id.* at *12.

### C. Disposition of this Action May Substantially Impair the Ability of Clearing House Members To Protect *Their* Confidential Information.

The Court's August 24 Order threatens to impair the ability of the Clearing House members to protect the Confidential Information that they have provided (or will provide) to the FRBs in connection with the Fed Lending Programs. In the August 24 Order, the Court held that the Board had not carried its burden of "showing that disclosure of the Remaining Term Reports will cause the borrowers to suffer *imminent competitive harm* from the affirmative use of the disclosed information by their competitors." *Bloomberg*, 2009 WL 2599336, at *13-*14 (emphasis added).

But "[p]arties opposing disclosure need not 'show actual competitive harm'; evidence revealing 'actual competition and the likelihood of substantial competitive injury' is sufficient to bring commercial information within the realm of confidentiality." *Public Citizen's*

*Health Research Group* v. *FDA*, 704 F.2d 1280, 1291 (D.C. Cir. 1983) (quoting *Gulf & Western Industries, Inc.* v. *United States*, 615 F.2d 527, 530 (D.C. Cir. 1979)); *see also Fox News*, 2009 WL 2345097 at *13 ("'Actual competition and the likelihood of substantial competitive injury is all that need be shown.'") (quoting *Gulf & Western*, 615 F.2d at 530). Moreover, the competitive harm need not originate directly from potential competitors. *See Nadler* v. *FDIC*, 92 F.3d 93, 97 (2d Cir. 1996) ("The fact that this [commercial] harm would result from active hindrance by the Plaintiffs rather than directly by potential competitors does not affect the fairness considerations that underlie Exemption Four.").

In *Fox News*, Judge Hellerstein found that the Board had "shown specific and substantial harms to borrowers if the information about Discount Window loans were disclosed," because borrowers are told that "[t]here will not be any public disclosure of the individual borrowers participating in [the Discount Window] or the amounts of individual advances made to the borrowers," and "[t]he institutions borrowing at the Discount Window, the Term Auction Facility, and the Asset-Backed Commercial Paper Money Market Mutual Fund Liquidity Facility compete for retail and commercial banking services in the marketplace." 2009 WL 2345097 at *14. Judge Hellerstein further stressed that "[a] primary dealer would suffer competitive and reputational harm if its name and the relevant collateral it posted were disclosed to the public, for the public is likely to draw inferences of its relative financial strength and viability." *Id.* (internal quotations omitted).

Here, the competitive harm to Clearing House members who have accessed the Fed Lending Programs from public disclosure of their participation in those programs is not "speculative," but is demonstrated by the recent multiple failures and near failures of financial institutions when information or even rumors about their funding difficulty was disclosed. (*See*

Giuffra Decl. Exs. B-F.)  For example, when rumors surfaced during the week of March 10, 2008, regarding Bear Stearns' liquidity position, Bear Stearns' counterparties "expressed increased concern regarding their ordinary course exposure to" Bear Stearns and "a significant number of counterparties and lenders [became] unwilling to make [even] secured funding available to Bear Stearns on customary terms, which resulted in a sharp deterioration in Bear Stearns' liquidity position."  (Giuffra Decl. Ex. F at 27.)

In the banking industry, banks evaluate each counterparty for financial soundness when determining to whom to extend credit, considering any available information and drawing any inferences therefrom.  An institution's borrowing from a "lender of last resort," such as the FRBs, may result in an inference that the institution faces a liquidity crisis.  (*See* Madigan Decl. at ¶ 29.)  If such an inference leads an institution's customers to flee, the institution will in fact suffer severe liquidity strains, potentially destroying not merely the institution's competitive position but its viability.  (Nelson Decl. at ¶ 5.)

As Judge Hellerstein emphasized, "[a]nonymity is crucial to primary dealers" and the disclosure of the borrowers' identity would not only cause the individual borrowers competitive harm, but the effects could reverberate throughout the economy.  *See Fox News*, 2009 WL 2345097, at *14 ("The Board's concerns, that rumors are likely to begin and runs on banks are likely to develop, cannot be dismissed.  Similarly, the Board's concern is real that disclosure would reveal proprietary trading information of borrowers, their trading strategies and the size and nature of their portfolios of assets.  The national economy is not so out of danger . . . as to make the Board's concern academic.").

**D. The Clearing House Members' Interests May Not Be Adequately Represented by the Existing Parties to this Action.**

An applicant for intervention has a "minimal" burden of showing that there "may be" inadequate representation of its interests by one of the parties. *Trbovich* v. *United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."). Here, while the Board is seeking the Solicitor General's approval to appeal this Court's August 24 Opinion and Order, that approval is not guaranteed, and, in any event, the Board may not exhaust all its appellate remedies, including to the Supreme Court.

Although the Board has a stake in protecting the confidential nature of the documents it has withheld from disclosure, the information at issue in this case belongs to the Clearing House members and other financial institutions. As a result, the Clearing House is in a better position than the Board to demonstrate the competitive harm its members will suffer from disclosure of their access to the Fed Lending Programs, including in the future. *See Regents*, 516 F.2d at 352 (finding that "the interests of the pharmacists and the association are not adequately represented by existing parties" and "there is a likelihood that the pharmacists will make a more vigorous presentation of the economic side of the argument than would the Regents."). Intervention for purposes of an appeal is thus appropriate under these circumstances.

**II. THIS COURT ALSO SHOULD PERMIT THE CLEARING HOUSE TO INTERVENE UNDER RULE 24(B).**

Even if a proposed intervenor does not satisfy each of the requirements of Rule 24(a), "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). "The words claim or defense are not to be read in a technical sense, but only require some

interest on the part of the applicant." *Dow Jones*, 161 F.R.D. at 254 (Sotomayor, J.) (also granting permissive intervention). "[T]he principal guide in deciding whether to grant permissive intervention is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *In re Initial Public Offering Securities Litigation*, 499 F. Supp. 2d 415, 418 (S.D.N.Y. 2007) (quoting *United States* v. *Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994)) (internal quotations omitted). This Court's discretion in granting a motion to intervene "under Rule 24(b) is very broad." *Dow Jones*, 161 F.R.D. at 254.

In ruling on permissive intervention, a court should consider "whether the applicant will significantly develop the original suit's underlying factual issues and contribute to an equitable adjudication of the legal issues presented." *In re Faleck & Margolies, Ltd.*, Nos. 89 Civ. 8548 & 90 Civ. 1356, 1995 WL 33631, at *15 (S.D.N.Y. Jan. 30, 1995) (granting permissive intervention to one of several parties seeking intervention); *see also Nat'l Resources Defense Council, Inc.* v. *Tenn. Valley Auth.*, 340 F. Supp. 400, 408-09 (S.D.N.Y. 1971) ("[ntervenor] demonstrates a longstanding interest in and familiarity with strip-mining, expertise that may be helpful in clarifying the facts and issues in this case").

As discussed *supra*, the members of the Clearing House have a significant interest in protecting their Confidential Information; the Clearing House's intervention will not cause undue delay or prejudice the existing parties; and the Clearing House is in the best position to protect the interests of its members in their Confidential Information. Indeed, the Clearing House has a unique perspective as the representative of the largest banking institutions in the U.S., (Nelson Decl. at ¶ 1), including as to the specific and imminent competitive harm that its members will suffer upon disclosure of their participation in the Fed Lending Programs.

## CONCLUSION

For the foregoing reasons, the Clearing House's motion to intervene in this action for purposes of an appeal should be granted.

Respectfully submitted,

s/ Robert J. Giuffra, Jr.
H. Rodgin Cohen
Michael M. Wiseman
Robert J. Giuffra, Jr.
William J. Snipes
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Attorneys for Proposed Intervenor
The Clearing House Association
L.L.C.*

September 9, 2009