Bloomberg L.P. v. Board of Governors of the Federal Reserve System
Doc. 41 Att. 9

# EXHIBIT F

Dockets.Justia.com

# JPMorgan  J P MORGAN CHASE & CO (JPM)

270 PARK AVE
38TH FL
NEW YORK, NY 10017
212. 270.6000
http://www.jpmorganchase.com/

# S-4

FORM S-4
Filed on 04/11/2008
File Number 333-150208



LIVEDGAR® Information Provided by Global Securities Information, Inc.
800.669.1154
www.gsionline.com

As filed with the Securities and Exchange Commission on April 11, 2008

Registration No. 333-[     ]

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## Form S-4
### REGISTRATION STATEMENT
*UNDER*
*THE SECURITIES ACT OF 1933*

# JPMORGAN CHASE & CO.
(Exact Name of Registrant as Specified in its Charter)

| Delaware | 6021 | 13-2624428 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Primary Standard Industrial Classification Code Number) | (I.R.S. Employer Identification Number) |

270 Park Avenue
New York, New York 10017
(212) 270-6000
(Address, including Zip Code, and Telephone Number, including Area Code, of Registrant's Principal Executive Offices)

Anthony J. Horan
Corporate Secretary
JPMorgan Chase & Co.
270 Park Avenue
New York, New York 10017
(212) 270-6000
(Name, Address, including Zip Code, and Telephone Number, including Area Code, of Agent for Service)

*With copies to:*

| Stephen M. Cutler, Esq.<br>Neila B. Radin, Esq.<br>JPMorgan Chase & Co.<br>270 Park Avenue<br>New York, NY 10017<br>(212) 270-6000 | Edward D. Herlihy, Esq.<br>Lawrence S. Makow, Esq.<br>Nicholas G. Demmo, Esq.<br>Wachtell, Lipton, Rosen & Katz<br>51 West 52nd Street<br>New York, NY 10019<br>(212) 403-1000 | Michael S. Solender, Esq.<br>Robert K. Kane, Esq.<br>The Bear Stearns Companies Inc.<br>383 Madison Avenue<br>New York, NY 10179<br>(212) 272-2000 | Dennis J. Block, Esq.<br>William P. Mills III, Esq.<br>Cadwalader, Wickersham & Taft LLP<br>One World Financial Center<br>New York, NY 10281<br>(212) 504-6000 | Peter Allan Atkins, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>4 Times Square<br>New York, NY 10036<br>(212) 735-3000 |
|---|---|---|---|---|

**Approximate date of commencement of the proposed sale of the securities to the public:** As soon as practicable after this Registration Statement becomes effective and upon completion of the merger described in the enclosed document.

If the securities being registered on this Form are being offered in connection with the formation of a holding company and there is compliance with General Instruction G, check the following box. ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act of 1933, as amended, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☒   Accelerated filer ☐   Non-accelerated filer ☐   Smaller reporting company ☐
(Do not check if a smaller reporting company)

| Title of each class of securities to be registered | Amount to be registered(1) | Proposed maximum offering price per unit | Proposed maximum aggregate offering price(2) | Amount of registration fee |
|---|---|---|---|---|
| Common stock, par value $1.00 | 32,003,254 shares | N/A | $1,513,876,180.74 | $59,495.34 |

(1) Represents the maximum number of shares of the Registrant's common stock estimated to be issuable upon the completion of the merger described herein. This number is based on the number of shares of The Bear Stearns Companies Inc. common stock outstanding and reserved for issuance under various plans as of April 8, 2008 (other than shares owned by the Registrant and its wholly owned subsidiaries) and the exchange of each such share of The Bear Stearns Companies Inc. common stock for shares of the Registrant's common stock pursuant to the formula set forth in the Agreement and Plan of Merger, dated as of March 16, 2008, by and between The Bear Stearns Companies Inc. and the Registrant, as amended by Amendment No. 1 dated March 24, 2008.

(2) Estimated solely for purposes of calculating the registration fee required by Section 6(b) of the Securities Act, and calculated pursuant to Rules 457(f)(1) and 457(c) under the Securities Act, the proposed maximum aggregate offering price of the Registrant's common stock was calculated based upon the market value of shares of The Bear Stearns Companies Inc. common stock (the securities to be cancelled in the merger) in accordance with Rule 457(c) under the Securities Act as follows: the product of (A) $10.29, the average of the high and low prices per share of The Bear Stearns Companies Inc. common stock on April 10, 2008, as quoted on the New York Stock Exchange, multiplied by (B) 147,121,106, the number of shares of The Bear Stearns Companies Inc. common stock outstanding and reserved for issuance under various plans as of April 8, 2008 (other than shares owned by the Registrant and its wholly owned subsidiaries).

The Registrant hereby amends this Registration Statement on such date or dates as may be necessary to delay its effective date until the Registrant shall file a further amendment which specifically states that this Registration Statement shall thereafter become effective in accordance with Section 8(a) of the Securities Act of 1933, as amended, or until the Registration Statement shall become effective on such dates as the

Commission, acting pursuant to said Section 8(a), may determine.

# THE MERGER

## Background of the Merger

On Monday, March 10, 2008, Moody's Investors Service (referred to as Moody's) downgraded certain series of mortgage-backed debt issued by the Bear Stearns Alt-A Trust, and rumors began to circulate in the market that there were significant liquidity problems at Bear Stearns itself. Later that day, Moody's clarified that it had not taken any rating action regarding Bear Stearns' corporate debt rating and that Bear Stearns' current ratings outlook was stable. Following the close of the market, Bear Stearns issued a press release denying the market rumors regarding its liquidity position.

On the morning of Tuesday, March 11, 2008, in an effort to alleviate liquidity pressures in funding markets, the New York Fed announced an expansion of its securities lending program under which, beginning on March 27, 2008, it would lend up to $200 billion of Treasury securities to primary dealers, which includes Bear Stearns, for a term of up to 28 days to be secured by a pledge of certain securities, including certain mortgage-related assets. Despite the New York Fed's announcement, the prior day's clarifying statement by Moody's and the press release issued by Bear Stearns, market speculation regarding Bear Stearns' liquidity position continued.

In light of these developments, late in the afternoon of March 11, 2008, senior management of Bear Stearns decided that Alan D. Schwartz, President and Chief Executive Officer of Bear Stearns, should address the market speculation regarding Bear Stearns' liquidity position in an interview with CNBC on Wednesday, March 12, 2008.

On the morning of Wednesday, March 12, 2008, Mr. Schwartz participated in the CNBC interview and addressed Bear Stearns' liquidity position as relatively unchanged since the beginning of the year as contrasted with the unwarranted market rumors and speculation. During the course of that day, however, an increased volume of customers expressed a desire to withdraw funds from, and certain counterparties expressed increased concern regarding maintaining their ordinary course exposure to, Bear Stearns, causing senior management of Bear Stearns to become concerned that if these circumstances accelerated Bear Stearns' liquidity could be negatively affected.

Later that evening, senior management of Bear Stearns discussed with representatives of Lazard issues raised by continued market speculation regarding Bear Stearns' liquidity position and the resulting customer withdrawals and counterparty concerns regarding maintaining ordinary course exposure to Bear Stearns. Lazard had been asked by Bear Stearns in late 2007 to assist Bear Stearns in exploring potential joint ventures and/or strategic business relationships in certain Bear Stearns business units.

On Thursday, March 13, 2008, *The Wall Street Journal* reported that, in reaction to the increasingly negative market perception regarding Bear Stearns' liquidity position, trading counterparties were becoming cautious about their dealings with, and exposure to, Bear Stearns. Also during that day, various reported events contributed to increased market concern regarding liquidity in the mortgage-backed securities markets. Over the course of the day, and at an increasing rate in the afternoon, an unusual number of customers withdrew funds from Bear Stearns and a significant number of counterparties and lenders were unwilling to make secured funding available to Bear Stearns on customary terms, which resulted in a sharp deterioration in Bear Stearns' liquidity position.

During the evening of March 13, 2008, Bear Stearns senior management met with its legal and financial advisors to review the events of the day, the sharp deterioration in its liquidity position, and options potentially available to Bear Stearns. Following this meeting, Mr. Schwartz contacted James Dimon, Chairman and Chief Executive Officer of JPMorgan Chase, to discuss Bear Stearns' liquidity position and seek funding assistance or a business combination. JPMorgan Chase and Bear Stearns have for many years had a number of commercial relationships, including JPMorgan Chase acting as Bear Stearns' collateral clearing agent. Bear Stearns' representatives also advised the New York Fed and the SEC of the situation.